# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SPECIALTY PRODUCTS HOLDING CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-_____ (___)<br><br>Joint Administration Requested |
| SPECIALTY PRODUCTS HOLDING CORP., and BONDEX INTERNATIONAL, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN and JANE DOES 1-1000,[2]<br><br>Defendants. | Adv. Pro. No. 10-_____ (___) |

**COMPLAINT OF THE DEBTORS SPECIALTY PRODUCTS HOLDING CORP. AND BONDEX INTERNATIONAL, INC. FOR INJUNCTIVE AND DECLARATORY RELIEF EXTENDING AND APPLYING THE AUTOMATIC STAY TO CERTAIN NON-DEBTOR AFFILIATES**

---

[1] Plaintiffs instituting this adversary proceeding are the debtors in the bankruptcy proceedings. The last four digits of the plaintiffs' taxpayer identification numbers follow in parentheses: Specialty Products Holding Corp. (0857) and Bondex International, Inc. (4125). The Debtors' address is 4515 St. Clair Avenue, Cleveland, Ohio 44103.

[2] The Defendants in this adversary proceeding are all plaintiffs or potential plaintiffs in lawsuits that seek to hold or may seek to hold International or any of International's non-debtor affiliates (hereinafter defined as "International Affiliates") derivatively liable based on asbestos-containing products manufactured, sold, or distributed by the Debtors Specialty Products Holding Corp. and Bondex International, Inc. (hereinafter "Debtors' Asbestos Products"). These Defendants, with the exception of the John and Jane Doe defendants, are listed in Appendix A to this motion. Appendix A also identifies the law firm representing each Defendant on their asbestos claims.

Plaintiffs Specialty Products Holding Corp. ("SPHC") and Bondex International, Inc. ("Bondex," and together with SPHC, the "Debtors"), debtors in the above-captioned chapter 11 cases, incorporate the statements contained in the Declaration of Stephen J. Knoop in Support of First Day Pleadings (the "Knoop Declaration") and the Declaration of John A. Fleming in Support of Debtors' Complaint to Extend and Apply the Automatic Stay and Related Motions (the "Fleming Declaration"), filed contemporaneously with this complaint and further aver as follows:

## Introduction

1. The Debtors filed for chapter 11 in order to finally and fairly resolve their asbestos liability through the consummation of a plan of reorganization that includes the establishment of an 11 U.S.C. § 524(g) trust.

2. While the Debtors are either direct (SPHC) or indirect (Bondex) subsidiaries of non-debtor RPM International Inc. ("International"), it is beyond dispute that International—a holding company that has never sold any of Debtors' Asbestos Products—has no direct asbestos liability for Debtors' Asbestos Products. Similarly, non-debtor affiliates of International (collectively, the "International Affiliates")[3] have never sold Debtors' Asbestos Products, with only one exception of which the Debtors are aware.[4] As such, they, too, have no direct liability for claims based on Debtors' Asbestos Products. Nonetheless, currently pending asbestos lawsuits seek to hold International or International Affiliates—for example, one of the International Affiliates, Republic Powdered Metals, Inc. has been sued on several occasions— derivatively liable for claims based on Debtors' Asbestos Products on theories of alter ego and

---

[3] The non-debtor affiliates of International are listed in Appendix B to this complaint.

[4] One of the International Affiliates, Republic Powdered Metals, Inc., for some period of time manufactured and sold certain asbestos-containing roofing products and sealants previously manufactured and sold by Specialty Products Holding Corp.

successor liability, most often together with one or both of the Debtors in the same complaint. The Debtors anticipate that, as a result of their filings in this Court and the accompanying automatic stay, many similar actions may be filed in the future.

3. Accordingly, this adversary proceeding seeks, pursuant to sections 105 and 362 of title 11 of the United States Code (the "Bankruptcy Code"), an order prohibiting Defendants from continuing or commencing derivative liability actions or claims against International or any of the International Affiliates based on Debtors' Asbestos Products during the pendency of this bankruptcy.

4. Specifically, the Debtors seek: (i) preliminary and permanent injunctions prohibiting Defendants from filing or continuing to prosecute any derivative liability action or claim against International or International Affiliates based on Debtors' Asbestos Products while the bankruptcy cases remain pending; and/or (ii) a declaration that, while the Debtors' bankruptcy cases remain pending, the filing or continued prosecution of any derivative liability action or claim based on Debtors' Asbestos Products against International or International Affiliates constitutes a violation of section 362's automatic stay; and (iii) a temporary restraining order, issued without notice, that prohibits Defendants from filing or continuing to prosecute any derivative liability action or claim against International or International Affiliates based on Debtors' Asbestos Products pending a hearing on the Debtors' requests for injunctive and/or declaratory relief.

5. Contemporaneously with the filing of this complaint, the Debtors are also filing a combined motion and memorandum of law, accompanied by a declaration in support (collectively, the "Motion"), which requests the relief sought in this proceeding.

## Jurisdiction and Venue

6. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## Basis for Relief

8. The statutory bases for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code.

9. The Debtors have commenced this adversary proceeding in accordance with Bankruptcy Rule 7001.

10. No prior request for the relief requested herein has been made to this or any other court.

## Background

11. On May 31, 2010 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

12. The Debtors are direct and indirect wholly owned subsidiaries of non-debtor International. SPHC is a holding company with non-debtor operating subsidiaries that manufacture, market, and sell various specialty chemical product lines, including exterior insulating finishing systems, powder coatings, fluorescent colorants and pigments, cleaning and protection products, fuel additives, wood treatments and coatings and sealants, in both the

industrial and consumer markets. Bondex is a wholly owned subsidiary of SPHC and conducts no business and has no operations.

## The Parties

13. SPHC is an Ohio corporation with its principal place of business in Ohio. SPHC is a direct wholly-owned subsidiary of International.

14. Bondex is a Delaware corporation with its principal place of business in Missouri. Bondex is a wholly owned subsidiary of SPHC and a wholly owned indirect subsidiary of International.

15. Each named Defendant listed in Appendix A is a claimant in an action that seeks to impose liability on one or both of the Debtors and/or International and/or any of the International Affiliates for Debtors' Asbestos Products. Although some of these Defendants may not to date have sued International or any of the International Affiliates, the Debtors anticipate that the filing of the Debtors' chapter 11 cases may lead many to do so as an end-run around the automatic stay applicable to the Debtors.

16. Defendants John and Jane Does 1-1000 are each a prospective plaintiff who may at any time while the above-captioned chapter 11 cases are pending seek to impose derivative liability on International or International Affiliates for Debtors' Asbestos Products.

17. International and the International Affiliates are affiliates of the Debtors under section 101(2) of the Bankruptcy Code.

## Factual Background

*Asbestos-Related Actions Against the Debtors, International, and International Affiliates*

18. The Debtors' purported asbestos-related liabilities derive principally if not exclusively from the acquisition of the Reardon Company in March 1966. The Reardon Company manufactured and sold certain joint compound and related home patch and repair

products containing asbestos, and the Debtors continued to sell such products following the acquisition. The Debtors ceased selling asbestos-containing joint compound products in 1977 and halted sales of other asbestos-containing products in the early 1980s. In addition to the Reardon Company products, SPHC sold certain asbestos-containing roofing products and sealants until 1972.

19. Although International is the ultimate parent of the Debtors, it is merely a holding company that was formed in 2002 and never operated the Reardon business or otherwise sold any of Debtors' Asbestos Products. Accordingly, any purported liability of International for Debtors' Asbestos Products would be entirely derivative of the Debtors' purported liabilities. Similarly, because International Affiliates never sold any of Debtors' Asbestos Products, any purported liability of International Affiliates for Debtors' Asbestos Products would be entirely derivative of the Debtors' purported liabilities.

20. The Debtors have faced thousands of asbestos-related lawsuits since as early as 1980, primarily precipitated by the acquisition of the Reardon Company and production and sale of its line of products. Since 1980, Bondex has received over 20,000 such lawsuits, and, beginning in 1992, SPHC has been named in over 8,000 such lawsuits. Many of these lawsuits have also named International and/or International Affiliates as defendants, seeking to hold them derivatively liable for Debtors' Asbestos Products. Based on current filing rates, the Debtors expect to face many more lawsuits in the near future.

21. The Debtors likely have at least common-law obligations to indemnify International and International Affiliates for any derivative liability they may incur for Debtors' Asbestos Products.

22. To date, no court has issued a ruling or made a finding that International or any of the International Affiliates is responsible for any asbestos-containing products manufactured, sold, or distributed by the Debtors or that International or any of the International Affiliates should be treated as a successor-in-interest to one or both of the Debtors.

*The Debtors' Decision to Commence Their
Chapter 11 Cases and Need for the Requested Relief*

23. Following bankruptcy filings by co-defendants in asbestos-related actions, the Debtors began experiencing a substantial increase in the number of asbestos claims and the amounts of the settlement demands received from lawyers representing asbestos claimants. At or around the same time, the Debtors' insurers advised the Debtors that their insurance was exhausted and ceased making any payments with respect to asbestos claims, including for defense costs. Until that time, insurance had been funding a substantial percentage of the asbestos costs, which the Debtors expected to continue. The Debtors disputed and continue to dispute the insurers' actions, and the matter remains in litigation at the present time.

24. After facing substantial numbers of asbestos-related lawsuits and increasing costs to resolve such lawsuits over an extended period of time and with no available insurance, the Debtors analyzed the available alternatives and determined that a chapter 11 reorganization, utilizing section 524(g) of the Bankruptcy Code, provided the best avenue for the Debtors to globally and fairly resolve their asbestos liabilities.

25. The relief sought by these adversary proceedings—extending and/or applying the automatic stay to derivative claims against International and any of the International Affiliates based on Debtors' Asbestos Products—is necessary to preserve the Debtors' prospects of successfully implementing a section 524(g) trust, to protect the integrity of the automatic stay, and to prevent prejudice to the Debtors' estates.

26. As a holding company that has never sold any of Debtors' Asbestos Products, International has no direct asbestos liability. Its alleged liability, if any, for Debtors' Asbestos Products is entirely derivative of the Debtors' purported liability. Similarly, because International Affiliates have never sold Debtors' Asbestos Products, any liability for Debtors' Asbestos Products that International Affiliates may be alleged to have is entirely derivative of the Debtors' purported liabilities. Accordingly, where Defendants seek to impose liability on International or International Affiliates for Debtors' Asbestos Products, Defendants must first establish the Debtors' liability, which means that all claims against International or International Affiliates based on Debtors' Asbestos Products are effectively claims against the Debtors.

27. Given the fact that only the Debtors can be alleged to have direct liabilities for Debtors' Asbestos Products, any findings and judgments against International or International Affiliates could have a preclusive effect on the Debtors in future litigation and in the bankruptcy under the doctrines of res judicata and collateral estoppel. Notwithstanding the automatic stay, the Debtors could not stand by idly and watch Defendants effectively establish the Debtors' liabilities in suits against International or International Affiliates. Rather, the Debtors would be compelled to actively participate in each and every ongoing derivative action against International or International Affiliates for Debtors' Asbestos Products in order to protect their interests. National Coordinating Counsel, local counsel who are acting as ordinary course counsel in these proceedings, and key witnesses for Bondex including John Fleming, who will be participating on a continuing basis in the bankruptcy proceedings, would be significantly diverted from their duties in these proceedings. This result would undermine the spirit and purposes of the automatic stay and distract the Debtors from the important and socially beneficial task of reorganization.

28. Even in the absence of these collateral estoppel and res judicata concerns, continuing litigation against International or International Affiliates based on Debtors' Asbestos Products poses the legitimate risk that the holders of current asbestos-related claims could receive recoveries that differ from those realized by the holders of future asbestos-related claims under the trust, thereby violating section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code.

29. In addition to the risks of res judicata and collateral estoppel, judgments reached in ongoing derivative litigation against International or International Affiliates based on Debtors' Asbestos Products will be tantamount to judgments against the Debtors because the Debtors likely have common-law obligations to indemnify International and International Affiliates for any derivative liabilities that they incur based on Debtors' Asbestos Products. Like the res judicata and collateral estoppel concerns, these indemnification obligations would force the Debtors—in direct contravention of the purposes of the automatic stay—to actively participate in derivative suits against International and International Affiliates based on Debtors' Asbestos Products in order to protect their interests and the integrity of their estates.

30. The Debtors' common-law indemnification obligations also undermine section 524(g)'s goal of channeling all legitimate asbestos claims against the debtor into a single, consolidated proceeding in which the claims can be equitably and efficiently satisfied from a pool of pre-established funds.

31. Separate and apart from the risks of collateral estoppel and res judicata and the Debtors' indemnification obligations, ongoing litigation against International or International Affiliates based on Debtors' Asbestos Products creates the substantial risk that statements, testimony, and other evidence generated in those proceedings will be used to establish the Debtors' own liability, either in the bankruptcy or future litigation. These risks

would force the Debtors to actively participate in each and every ongoing action against International or International Affiliates based on Debtors' Asbestos Products, even as they simultaneously move forward with their goal of reorganizing to address these very issues. The automatic stay is designed to prevent this very dilemma.

32. Finally, ongoing derivative litigation against International or International Affiliates based on Debtors' Asbestos Products would divert key personnel from the Debtors' reorganization efforts. Not only would a Debtor be forced to actively participate in the defense of that litigation, its documents would have to be produced and its personnel would likely be called as a witness as Defendants attempt to establish the Debtors' direct liability based on Debtors' Asbestos Products as a necessary element of International's or any of the International Affiliates' derivative liability for Debtors' Asbestos Products.

33. In contrast, in the absence of ongoing derivative litigation against International or International Affiliates based on Debtors' Asbestos Products, the Debtors' prospects for a successful reorganization are high. The Debtors have entered bankruptcy in good faith and in an effort to equitably and efficiently satisfy their legitimate asbestos liabilities through the establishment of a section 524(g) trust. The Debtors are committed to engaging in good-faith negotiations to gain the creditor consent required to establish a section 524(g) trust. And the prospects of successful negotiations appear especially strong because the efficient and equitable compensation provided under a section 524(g) trust is in the best interests of both the Debtors and the asbestos claimants.

34. If the Debtors successfully negotiate a plan that implements a trust pursuant to section 524(g) of the Bankruptcy Code, all derivative actions against International and International Affiliates based on Debtors' Asbestos Products would be channeled to that

trust, and International and International Affiliates would be entitled to the benefits of the related channeling and discharge injunctions.

## Nature of Relief Requested

35. As a result of the automatic stay triggered by the Debtors' bankruptcy filing, and in the absence of an injunction or declaration that prohibits the filing or continued prosecution of any derivative liability action or claim against International or International Affiliates based on Debtors' Asbestos Products, the Debtors believe that:

   a. Defendants who have sued one or both of the Debtors and International or International Affiliates in an asbestos action will attempt to proceed with their litigation against International or International Affiliates based on Debtors' Asbestos Products while severing the Debtors from the cases;

   b. Defendants who have sued only one or both of the Debtors, and not International or International Affiliates, will seek to amend the applicable complaints to name International or International Affiliates, and may dismiss their claims against the Debtors;

   c. Defendants who have sued or threatened to sue International or International Affiliates will attempt to proceed with their litigation against International or International Affiliates based on Debtors' Asbestos Products; and

   d. Defendants John and Jane Does 1-1000 will sue International or International Affiliates, but not the Debtors, for derivative liability in the future based on Debtors' Asbestos Products.

36. To guard against the severe and irreparable harm that the Debtors would suffer in the event that derivative actions against International or International Affiliates based on Debtors' Asbestos Products are filed or otherwise permitted to proceed during the Debtors' bankruptcy proceedings, the Debtors seek: (i) preliminary and permanent injunctions prohibiting Defendants from filing or continuing to prosecute any derivative liability action or claim against International or any of the International Affiliates based on Debtors' Asbestos Products while the bankruptcy cases remain pending; and/or (ii) a declaration that, while the Debtors' bankruptcy

cases remain pending, the filing or continued prosecution of any derivative liability action or claim against International or any of the International Affiliates based on Debtors' Asbestos Products constitutes a violation of section 362's automatic stay; and (iii) a temporary restraining order, issued without notice, that prohibits Defendants from filing or continuing to prosecute any derivative liability action or claim against International or any of the International Affiliates based on Debtors' Asbestos Products pending a hearing on the Debtors' requests for injunctive and/or declaratory relief.

37. The Debtors request preliminary and permanent injunctions that extend section 362's automatic stay, or prohibit of their own force, Defendants from filing or continuing to prosecute any derivative liability action or claim against International or International Affiliates based on Debtors' Asbestos Products while the bankruptcy cases remain pending.

38. Alternatively, the Debtors request a declaration that section 362(a) of the Bankruptcy Code has automatically stayed the filing or continued prosecution of any and all actions or claims that seek to hold International or International Affiliates derivatively liable based on Debtors' Asbestos Products.

### Count I: Preliminary and Final Injunctive Relief, Pursuant to Sections 105 and 362 of the Bankruptcy Code

39. Plaintiffs incorporate by reference paragraphs 1 through 38 as if fully set forth herein.

40. Section 105(a) of the Bankruptcy Code authorizes and empowers this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Debtors' bankruptcy cases, aid in the preservation of the assets of the Debtors' estates, and aid in the promulgation and confirmation of a chapter 11 plan that maximizes recovery to all of the Debtors' creditors.

41.   Pursuant to sections 362 and 105(a) of the Bankruptcy Code, this Court may enjoin creditor actions against third parties where necessary to prevent an adverse impact upon the Debtors' estates or to assure the orderly administration of the Debtors' chapter 11 estates and proceedings.

42.   The issuance of an injunction is appropriate to prohibit Defendants from filing or continuing to prosecute any derivative liability action or claim against International or International Affiliates based on Debtors' Asbestos Products while the bankruptcy cases remain pending, and it is necessary to protect the Debtors' ability to reorganize in a timely and effective manner.

43.   The Debtors are substantially likely to prevail upon the merits of their complaint. The injunctive relief sought by the Debtors is necessary to permit the Debtors an unobstructed opportunity to negotiate a plan of reorganization acceptable to themselves and Defendants.

44.   The Debtors' prospects of successful reorganization in bankruptcy are high. They have entered bankruptcy in good faith and are fully committed to negotiating with Defendants to obtain the consent required to establish a section 524(g) trust. If the Debtors successfully negotiate a plan that implements a trust pursuant to section 524(g), all derivative actions against International or International Affiliates based on Debtors' Asbestos Products would be channeled to that trust, and International and International Affiliates would be entitled to the benefits of the related channeling and discharge injunctions.

45.   Allowing Defendants to file or continue prosecuting derivative actions or claims against International or International Affiliates based on Debtors' Asbestos Products during the pendency of the Debtors' bankruptcy would result in irreparable harm to the Debtors

RLF1 3576565v. 1

because: (a) findings and judgments in ongoing litigation against International or any of the International Affiliates based on Debtors' Asbestos Products might bind the Debtors under the doctrines of res judicata and collateral estoppel; (b) the Debtors have at least common-law obligations to indemnify International and International Affiliates for all derivative liability that they incur based on Debtors' Asbestos Products; (c) statements, testimony, and other evidence generated in proceedings against International or International Affiliates based on Debtors' Asbestos Products could be used to establish the Debtors' own liability, either in the bankruptcy or in future litigation; and (d) the Debtors would be forced to actively participate in derivative litigation against International or International Affiliates based on Debtors' Asbestos Products, both through witnesses and as de facto parties. For these reasons, ongoing derivative litigation against International or International Affiliates based on Debtors' Asbestos Products would irreparably harm the Debtors by depriving them of the benefits of section 524(g), compromising the integrity of the automatic stay, and prejudicing the Debtors' estates.

46. The likelihood of irreparable harm to the Debtors and their creditors in the absence of injunctive relief far outweighs any harm that Defendants could plausibly suffer due to an injunction. Any delay in obtaining recovery would be outweighed by the efficiency and order of a global process, under the auspices of this Court, that will ultimately result in the establishment of a trust under section 524(g) that fairly compensates, in similar fashion, all claimants. Indeed, a section 524(g) trust is in both the Debtors' and Defendants' best interests. As such, an injunction would operate in the best interests of all Defendants, whereas ongoing derivative litigation against International or International Affiliates based on Debtors' Asbestos Products may benefit some Defendants, but only to the detriment of all others.

47. The injunctive relief requested herein will serve the public interest by promoting compliance with the congressional purposes underlying the automatic stay and furthering the Debtors' chances of successful reorganization by preserving the effectiveness of the automatic stay to permit, among other things, the parties an opportunity to negotiate a consensual plan of reorganization. Granting the requested relief will thereby prevent a race to the courthouse by those seeking to prosecute or commence derivative actions or claims against International or International Affiliates based on Debtors' Asbestos Products and permit the Debtors' key employees to focus their attention on the Debtors' reorganization.

48. Given these competing interests, an injunction barring Defendants from filing or continuing to prosecute any derivative liability action or claim against International or International Affiliates based on Debtors' Asbestos Products while the bankruptcy cases remain pending is appropriate and essential to the orderly and effective administration of the Debtors' estates. Accordingly, good cause exists for the entry of injunctive relief pursuant to sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rule 7065.

WHEREFORE, the Debtors respectfully request that this Court: (i) after notice and a hearing, issue a preliminary injunction and, in due course, issue a permanent injunction prohibiting the filing or continued prosecution of any derivative liability action or claim against International or any of the International Affiliates based on Debtors' Asbestos Products while the bankruptcy cases remain pending, pursuant to sections 105 and 362 of the Bankruptcy Code; and (ii) grant such other and further relief as the Court may deem proper.

**Count II: Declaratory Relief Pursuant to Section 362 of the Bankruptcy Code**

49. The Debtors incorporate by reference paragraphs 1 through 48 as if fully set forth herein.

50. Upon the filing of a bankruptcy petition, section 362(a) of the Bankruptcy Code operates automatically to stay, among other actions, "the commencement or continuation ... of a ... proceeding against the debtor ... or to recover a claim against the debtor." 11 U.S.C. § 362(a)(1).

51. Application or extension of the automatic stay to derivative asbestos liability actions or claims against International or any of the International Affiliates based on Debtors' Asbestos Products while the bankruptcy cases remain pending is warranted in this case because those actions or claims are inextricably intertwined with asbestos liability claims against the Debtors, and hence constitute actions that are "against the debtor" or that seek "to recover a claim against the debtor" within the meaning of section 362(a)(1) of the Bankruptcy Code. The inextricably intertwined nature of the Debtors' and International's or International Affiliates' purported liability based on Debtors' Asbestos Products also makes the Debtors the real-party defendant in any derivative action or claim against International or International Affiliates based on Debtors' Asbestos Products, a circumstance that likewise warrants application or extension of the automatic stay.

WHEREFORE, Defendants respectfully request that this Court: (i) after notice and a hearing, enter a preliminary order and, in due course, enter a final order and judgment declaring that the filing or continued prosecution of any derivative liability action or claim against International or any of the International Affiliates based on Debtors' Asbestos Products while the bankruptcy cases remain pending violates the automatic stay imposed by section 362(a)(1) of the Bankruptcy Code; and (ii) grant such other and further relief as the Court may deem proper.

## Count III: Application for Temporary Restraining Order

52. The Debtors incorporate by reference paragraphs 1 through 51 as if fully set forth herein.

53. To preserve the effectiveness of the automatic stay prior to the Court's hearing on the Debtors' request for preliminary declaratory and/or injunctive relief, and to prevent the foregoing harmful effects upon the Debtors' reorganization, the Debtors request that, without notice, the Court issue a temporary restraining order prohibiting and enjoining Defendants from filing or continuing to prosecute any derivative liability action against International or any of the International Affiliates based on Debtors' Asbestos Products until this Court has issued a ruling on the Debtors' request for preliminary declaratory and/or injunctive relief.

54. The issuance of a temporary restraining order is warranted for the reasons already set forth herein and as more fully set forth in the Motion for Order Extending or Applying the Automatic Stay to Certain Non-Debtor Affiliates that is being filed contemporaneously herewith and is incorporated herein by reference.

WHEREFORE, the Debtors respectfully request that this Court enter an order: (i) prohibiting Defendants from filing or continuing to prosecute any derivative liability action or claim against International or any of the International Affiliates based on Debtors' Asbestos Products until the Court decides whether to grant the Debtors' request for a preliminary injunction or preliminary declaratory relief; and (ii) grant such other and further relief as the Court may deem just and proper.

Dated: May 31, 2010

Respectfully submitted,

_____
Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
Zachary I. Shapiro (DE 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street, P.A.
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
Robert J. Jud (TX 24041217)
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

ATTORNEYS FOR PLAINTIFFS