# EXHIBIT A

[Proposed Interim Financing Order]

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| SPECIALTY PRODUCTS HOLDING CORP., | : Case No. 10-_____ (___) |
| *et al.,*[1] | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |

## ORDER (A) AUTHORIZING DEBTORS TO OBTAIN INTERIM POST-PETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105 AND 364(c); (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (C) AUTHORIZING DEBTORS TO ENTER INTO AGREEMENTS WITH WACHOVIA CAPITAL FINANCE CORPORATION (NEW ENGLAND); AND (D) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion (the "Motion"), dated May 31, 2010, of Specialty Products Holding Corp. ("Specialty" or "Parent") and Bondex International, Inc. ("Bondex" and together with Specialty, the "Debtors"), each as a Debtor and Debtor-in-Possession in the above-captioned Chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things:

(1)     authorization for Debtors to enter into, deliver and perform under the (a) Credit Agreement, dated of even date herewith (the "Credit Agreement"), by and among Parent, each of Parent's domestic operating subsidiaries from time to time party thereto as borrowers (each a "Non-Debtor Borrower "and collectively the "Non-Debtor Borrowers"), Wachovia Capital Finance Corporation (New England), in its capacity as agent (in such capacity,

---

[1]     The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Specialty Products Holding Corp. (0857); and Bondex International, Inc. (4125). The Debtors' address is 4515 St. Clair Avenue, Cleveland, Ohio 44103.

"Agent"), and the financial institutions from time to time party thereto as lenders (collectively with Agent, the "Lenders"), (b) General Continuing Guaranty, dated of even date herewith, by and among Debtors, and Agent (the "Guaranty"), (c) Security Agreement, dated of even date herewith, by and among Debtors, Non-Debtor Borrowers and Agent (the "Security Agreement") and (d) all other agreements, documents and/or instruments executed in connection with or related to the Credit Agreement (collectively with the Credit Agreement, Guaranty and Security Agreement, as all of the foregoing may from to time be amended, supplemented, modified, extended, renewed, restated and/or replaced, the "Loan Documents"). Copies of the Credit Agreement, Guaranty and Security Agreement are annexed hereto as Exhibits A - C, respectively, and are incorporated herein by reference;

(2)     authorization for Debtors to incur and guarantee the prompt payment and performance of the, indebtedness, liabilities and other Obligations (as defined in the Credit Agreement) of Non-Debtor Borrowers to Agent and Lenders, including, without limitation, all revolving advances and other financial accommodations extended by Agent and Lenders to the Non-Debtor Borrowers in accordance with all of the terms and conditions set forth in the Credit Agreement, the Guaranty, and the other Loan Documents, and in accordance with this Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

(3)     authorization for Debtors to utilize the proceeds of any loans, advances and other financial accommodations provided by Agent and Lenders to Non-Debtor Borrowers which are advanced to Debtors by Non-Debtor Borrowers in the form of loans, and which are guaranteed by Debtors under, and are subject to the terms and conditions of, the Loan Documents and this Order;

(4)     modification of the automatic stay to the extent hereinafter set forth;

DLI- 6308448v2
RLF1 3576595v. 2

(5)     the grant to Agent, for the benefit of itself and the other Lenders, of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Obligations of Debtors to Agent and Lenders; and

(6)     the setting of a final hearing on the Motion.

The initial hearing on the Motion having been held by this Court on June __, 2010 (the "Interim Hearing").

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "Notice") having been served by the Debtors in accordance with Rule 4001(c) on (i) Agent, (ii) Lenders, (iii) the United States Trustee for the District of Delaware (the "U.S. Trustee"), (iv) the holders of the twenty (20) largest unsecured claims against the Debtors' estates (the "20 Largest Unsecured Creditors"), (v); Richards, Layton & Finger and Jones Day, counsel for the Debtors, (vi) each of the Non-Debtor Borrowers, (vii) the Internal Revenue Service, (viii) PNC Bank, N.A. (the "Blocked Account Bank"), (ix) all appropriate state taxing authorities, (x) all landlords, owners, and/or operators of premises at which any of the Debtors' inventory and/or equipment is located, if any, and (xi) certain other parties, if any, identified in the certificate of service filed with the Court, including, without limitation, all creditors, who have filed or recorded pre-petition liens or security interests against any of the Debtors' assets (collectively, the "Noticed Parties").

Upon the record made by the Debtors at the Interim Hearing, including the Motion, and the filings and pleadings in the Chapter 11 Cases, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Petition. On May, 31, 2010 (the "Petition Date"), each Debtor filed a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.     Jurisdiction and Venue. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of the Chapter 11 Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Notice. Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

D.     Findings Regarding the Postpetition Financing.

(i)     *Postpetition Financing.* Subject to the terms and conditions of this Order and the Loan Documents, the Debtors seek to utilize the proceeds of, and to guarantee the prompt payment and performance of, the advances and other financial accommodations provided by Agent and Lenders to Non-Debtor Borrowers, including, without limitation, the proceeds of which are advanced by Non-Debtor Borrowers to Debtors in the form of loans under this Order and the Loan Documents. Based on Debtors' representations, Debtors and Non-Debtor Borrowers make up a related organization of various entities constituting a single economic and business enterprise such that Debtors and Non-Debtors Borrowers share an identity of interests such that any benefit received by any one of them benefit the others. Due consideration exists for the loans, advances and other financial accommodations extended by Agent and Lenders to Non-Debtor Borrowers, certain proceeds of which will be advanced in the form of loans to Debtors, and for the guaranty by Debtors in favor of Agent and Lenders of all of the Obligations due Agent and Lenders.

(ii)     *Need for Post-Petition Financing.* The Debtors do not have sufficient available sources of working capital, including cash collateral, to fund the administrative expenses of the Chapter 11 Cases in the ordinary course of their business without the financing requested under the Motion. The Debtors' ability to fund the expenses of the Chapter 11 Cases is essential because the Debtors will not be able to proceed with these Chapter 11 Cases or develop a comprehensive solution to their asbestos liabilities for the benefit of all

DLI- 6308448v2
RLF1 3576595v. 2

creditors of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements by and among Agent and Lenders, Non-Debtor Borrowers and Debtors as set forth in this Order and the Loan Documents is vital to the Debtors' reorganization efforts and the preservation and maintenance of the going concern values of the Debtors. Accordingly, the Debtors have an immediate need to obtain the post-petition financing in order to, among other things, assure sufficient liquidity for the Non-Debtor Borrowers, fund the expenses of the Chapter 11 Cases and preserve and maximize the value of the assets of the Debtors' bankruptcy estates (as defined under Section 541 of the Bankruptcy Code, the "Estates") in order to maximize the recovery to all creditors of the Estates.

(iii)    *No Credit Available on More Favorable Terms.* The Debtors are unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on assets. The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by Agent and Lenders pursuant to the Loan Documents.

(iv)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the Credit Agreement, the Guaranty, the other Loan Documents and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the Credit Agreement, the Guaranty, the other Loan Documents and this Order have been negotiated in good faith and at arms' length by and among the Debtors and Non-Debtor Borrowers, on one hand, and Agent and Lenders, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by Agent and Lenders as that term is used in Section 364(e) of the Bankruptcy Code.

(v)    *Good Cause.*  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Non-Debtor Borrowers' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(vi)    *Immediate Entry.*  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Chapter 11 Cases has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "Interim Financing Order."

1.2    Authorization to Use Loan Proceeds and to Guarantee Debt.  Debtors are hereby authorized and empowered to immediately utilize and guarantee the prompt payment and performance of, the proceeds of the Advances[2] up to a maximum amount of $5 million and Letters of Credit provided by Agent and Lenders to Non-Debtor Borrowers, which advances or any portion thereof, Non-Debtor Borrowers are authorized to advance to Debtors, and to incur

---

[2]    Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the Loan Documents.

and guarantee the prompt payment and performance of the indebtedness and obligations owing to Agent and Lenders, pursuant to the terms and conditions of this Interim Financing Order, the Credit Agreement, the Guaranty and the other Loan Documents commencing on the date of this Interim Financing Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Financing Order (the "Interim Financing Period"), in such amounts as may be made available by Agent and Lenders in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the Credit Agreement, the Guaranty the other Loan Documents and this Interim Financing Order. Subject to the terms and conditions contained in this Interim Financing Order and the Loan Documents, Debtors shall use the proceeds of the Advances and any other credit accommodations made available to them pursuant to this Interim Financing Order, the Credit Agreement, the Guaranty or the other Loan Documents for, inter alia, the payment of employee salaries, payroll and taxes, and for other operating and working capital purposes in the ordinary course of Debtors' (and Non-Debtor Borrowers') business in accordance with the Loan Documents, including the fees of the U.S. Trustee, the Clerk of this Court and, subject to Section 2.3 of this Interim Financing Order, Allowed Professional Fees (as defined below). Notwithstanding anything to the contrary contained herein or in the Loan Documents, Agent and Lenders shall have no obligation to provide any Advances or Letters of Credit directly to Debtors or any other Guarantors; provided, that, subject to the terms and conditions of this Interim Financing Order and the Loan Documents, Debtors shall be permitted, and are hereby authorized, to utilize the proceeds of any Advances and Letters of Credit provided by Agent and Lenders to Non-Debtor Borrowers.

1.3     Loan Documents

1.3.1   Authorization. Debtors are hereby authorized and directed to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Credit Agreement, the Guaranty, the Security Agreement, the other Loan Documents and all other agreements, documents and instruments executed or delivered in connection with or related to the Loan Documents or this Interim Financing Order, including, without limitation, the

_____, dated _____ __, ____, by and among _____, Blocked Account Bank and Agent (as amended, the "Blocked Account Agreement").

      1.3.2   Approval. The Loan Documents (including, without limitation, the Credit Agreement, the Guaranty and the Security Agreement, together in each case with the exhibits and schedules thereto) and each term set forth therein are approved to the extent necessary to implement the terms and provisions of this Interim Financing Order. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the financing arrangements by and among Debtors and Non-Debtor Borrowers, on the one hand, and Agent and Lenders, on the other hand, and of each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Credit Agreement, the Guaranty and the other Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, commissions, letter of credit fees, servicing fees, unused line fees, DIP facility fee, and other fees and expenses, including, without limitation, all of Agent's and Lenders' consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Loan Documents.

      1.3.3   Amendment. Subject to the terms and conditions of the Credit Agreement, the Guaranty and the other Loan Documents, Debtors, Non-Debtor Borrowers, Agent and Lenders may amend, modify, supplement or waive any provision of the Loan Documents (an "Amendment") without further approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean, any Amendment that operates to increase the interest rate other than as currently provided in the Loan Documents, increase the Maximum Revolver Amount (as defined in the Credit Agreement), add specific new events of default or enlarge the nature and extent of default remedies available to the Agent and Lenders following an event of default, or otherwise modify any terms and conditions in any Loan Document in a manner materially less favorable to Debtors) and is undertaken in good faith by Agent, Lenders, Non-Debtor Borrowers and

Debtors; (ii) the Debtors provide prior written notice of the Amendment (the "Amendment Notice") to (x) the U.S. Trustee and (y) counsel to any official committee appointed in the Chapter 11 Cases under Section 1102 of the Bankruptcy Code (collectively, the "Committee(s)"), or in the event no such Committee is appointed at the time of such Amendment, the 20 Largest Unsecured Creditors; (iii) the Debtors file the Amendment Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within two (2) business days from the later of the date the Amendment Notice is served or the date the Amendment Notice is filed with the Court in accordance with this Section. Any material Amendment to the Loan Documents must be approved by the Court to be effective.

1.4     <u>Payments and Application of Payments</u>. The Debtors are authorized and directed to make all payments and transfers of Estate property to Agent and Lenders as provided, permitted and/or required under the Credit Agreement, the Guaranty and the other Loan Documents. Without limiting the generality of the foregoing, the Debtors are authorized and directed, without further order of this Court, to pay or reimburse Agent and Lenders for all present and future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by Agent and Lenders in connection with the financing transactions as provided in this Interim Financing Order and the Loan Documents, all of which shall be and are included as part of the principal amount of the Obligations and secured by the Collateral.

1.5     <u>Post-Petition Collection Procedures</u>. All practices and procedures by and among Debtors, Non-Debtor Borrowers, Agent and Lenders for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to Agent and Lenders and the funding of loans and advances, including the appointment of Parent as Administrative Loan Agent, pursuant to the Loan Documents, including the Blocked Account Agreement and any other similar lockbox or blocked depository bank account arrangements, are hereby approved.

DLI- 6308448v2
RLF1 3576595v. 2

Section 2.    Postpetition Lien; Superpriority Administrative Claim Status.

    2.1    Post-Petition Lien.

        2.1.1    Post-Petition Lien Granting.  To secure the prompt payment and performance of any and all Obligations of Debtors to Agent and Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Agent, for the benefit of itself and the other Lenders, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests, subject to Permitted Liens (as defined below), in and liens upon all of the Collateral (as defined in the Security Agreement), including, without limitation, all now existing and hereafter acquired real and personal property of each Debtor's estate, wherever located, of any kind, nature or description provided, however, that such first priority security interest and liens shall attach to claims or causes of action arising in or related to transfers or obligations avoided or actions maintained or taken pursuant to the Bankruptcy Code, applicable law or otherwise, including without limitation inter alia, sections 542, 544, 545, 547, 548, 549, 550, 552 and 553 of the Bankruptcy Code, including any property recovered or proceeds thereof (collectively, the "Avoidance Actions") upon entry of the Final Financing Order.

        2.1.2    Lien Priority.  The liens and security interests of Agent and Lenders granted under the Loan Documents and this Interim Financing Order in the Collateral (the Agent's and Lenders' liens and security interests in Avoidance Actions being subject to the entry of the Final Financing Order) shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law and any liens or security interests in favor of Non-Debtor Borrowers or any other affiliate of Debtors; provided, however, that Agent's and Lenders' liens on and security interests in the Collateral shall be subject only to (i) the Permitted Liens (as defined below) and (ii) the Carve Out Expenses (as defined below) solely to the extent

provided for in Sections 2.3, 2.4 and 2.5 of this Interim Financing Order (the foregoing clauses (i) and (ii) are collectively referred to herein as the "Permitted Liens and Claims"). For purposes of this Order, the term "Permitted Liens" shall mean the Permitted Liens (as defined in the Credit Agreement and the Security Agreement) to the extent such Permitted Liens are (a) valid, perfected, non-avoidable and existing as of the Petition Date, and (b) senior to and have not been or are subject to being subordinated to Agent's and Lenders' liens on and security interests in the Collateral or otherwise avoided, and, in each instance, only for so long as and to the extent that such Permitted Liens are and remain senior and outstanding.

   2.1.3  <u>Post-Petition Lien Perfection</u>. This Interim Financing Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with the Blocked Account Bank or with any other financial institution(s) holding a blocked account or other depository account consisting of Collateral (a "Perfection Act"). Notwithstanding the foregoing, if Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, Agent is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or required by Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Financing Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. Agent and Lenders may choose to file, record or present a certified copy of this Interim Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Financing Order in accordance with applicable law. Should Agent so choose and attempt to file, record or perform a

Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Financing Order.

2.1.4    <u>Nullifying Pre-Petition Restrictions to Post-Petition Financing.</u> Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Loan Documents, any provision that restricts, limits or impairs in any way any Debtor from granting Agent and Lenders security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Credit Agreement, the Guaranty, the other Loan Documents or this Interim Financing Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or the Loan Documents shall <u>not</u> (i) be effective and/or enforceable against any such Debtor(s), Agent and Lenders, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Agent and Lenders pursuant to this Interim Financing Order or the Loan Documents to the maximum extent permitted under the Bankruptcy Code and other applicable law.

2.2    <u>Superpriority Administrative Expense.</u> For all Obligations now existing or hereafter arising pursuant to this Interim Financing Order, the Loan Documents or otherwise, Agent, for the benefit of itself and the other Lenders, is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors, whether now in existence or hereafter incurred by Debtors, including, without limitation, any obligation, liability or indebtedness of Debtors to any Non-Debtor Borrower or other affiliate of Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a),

507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "<u>Superpriority Claim</u>"), <u>provided, however</u>, the Superpriority Claim shall be subject only to the Permitted Liens and Claims as and to the extent expressly set forth in this Interim Financing Order.

    2.3    <u>Carve Out Expenses</u>.

    2.3.1    <u>Carve Out Expenses</u>.  Upon the written notice by Agent of the occurrence of an Event of Default (the "Carve-Out Notice"), Agent's and Lenders' liens, claims and security interests in the Collateral and their Superpriority Claim shall be subject only to the right of payment of the following expenses (the "<u>Carve Out Expenses</u>"):

    a.    statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

    b.    fees payable to the Clerk of this Court; and

    c.    subject to the terms and conditions of this Interim Financing Order, the unpaid and outstanding reasonable fees and expenses of attorneys, accountants and other professionals retained by the Debtors and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "<u>Professionals</u>"), which fees and expenses are approved by a final order of the Court pursuant to Sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "<u>Allowed Professional Fees</u>"), and which are actually (i) incurred before the delivery date of a Carve-Out Notice, in a cumulative, aggregate sum not to exceed $2,500,000 (the "<u>Pre-Default Carve Out</u>"), and (ii) incurred on or after the delivery date of the Carve-Out Notice, which Allowed Professional Fees, less the amount of any retainers, if any, then held by such Professionals, in a cumulative aggregate sum not to exceed $2,500,000 (the "<u>Post-Default Carve-Out</u>" together with the Pre-Default Carve-Out, collectively, the "<u>Professional Fee Carve-Out</u>").

    2.3.2    <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary in this Interim Financing Order, neither the Professional Fee Carve Out nor the proceeds of any Advances, Letters of Credit or Collateral shall be used to pay any Allowed Professional

DLI- 6308448v2
RLF1 3576595v. 2

Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Agent's and Lenders' liens on and security interests in the Collateral, including without limitation, the Debtors' guarantee of the Obligations of Non-Debtor Borrowers and the dividends or advances by Non-Debtor Borrowers to Debtors, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or Agent's and Lenders' liens on and security interests in the Collateral, or (iii) preventing, hindering or delaying Agent's or Lenders' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of this Interim Financing Order, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Agent in accordance with the terms and conditions of this Interim Financing Order, (c) a request for authorization to obtain Debtor-in-Possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code that would not indefeasibly repay the Obligations due Agent and Lenders in full in cash, other than from Agent or Lenders, without the prior written consent of Agent, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Agent, any Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Agent or any Lender, or (e) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Agent or any Lender, or which is contrary, in a manner that is material and adverse to Agent or any Lender, to any term or condition set forth in or acknowledged by the Loan Documents or this Interim Financing Order and which results in the occurrence of an Event of Default under the Loan Documents or this Interim Financing Order.

DLI- 6308448v2
RLF1 3576595v. 2

2.4    Carve Out Reserve.  At Agent's sole discretion, Agent may, at any time and in any increment in accordance with the Credit Agreement, establish a reserve against the amount of Advances or other credit accommodations that would otherwise be made available to the Non-Debtor Borrowers pursuant to the lending formulae contained in the Credit Agreement in respect of the Professional Fee Carve Out and the other Carve Out Expenses.

2.5    Payment of Carve Out Expenses.

2.5.1    Prior to the occurrence of an Event of Default, Debtors shall be permitted to pay Allowed Professional Fees of the Professionals and any such amounts paid prior to the occurrence of an Event of Default shall not reduce the Professional Fee Carve-Out.

2.5.2    Any payment or reimbursement made either directly by Agent or any Lender at any time, or by or on behalf of the Debtors on or after the occurrence of an Event of Default, in respect of any Allowed Professional Fees or any other Carve Out Expenses (exclusive of the application of any retainers by any of the Professionals) shall, in either case, permanently reduce the Professional Fee Carve Out on a dollar-for-dollar basis.  Agent's and Lenders' obligation to fund or otherwise pay the Professional Fee Carve Out and the other Carve Out Expenses shall be added to and made a part of the Obligations, secured by the Collateral, and entitle Agent and Lenders to all of the rights, claims, liens, priorities and protections under this Interim Financing Order, the Loan Documents, the Bankruptcy Code or applicable law. Payment of any Carve Out Expenses, whether by or on behalf of Agent or any Lender, shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of Agent's and Lenders' liens and security interests in the Collateral or their Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Except as otherwise provided herein with respect to the Professional Fee Carve and the other Carve Out Expenses, Agent and Lenders shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Chapter 11 Cases under any chapter of the Bankruptcy Code, and nothing in Section 2.3, 2.4 or 2.5 of this Interim Financing Order shall be construed to obligate

DLI- 6308448v2
RLF1 3576595v. 2

Agent or any Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

Section 3.    Default; Rights and Remedies; Relief from Stay.

3.1    Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Financing Order:

a.    Any Debtor's failure to perform any of the terms, conditions or covenants or their obligations under this Interim Financing Order; or

b.    An "Event of Default" under the Credit Agreement, the Guaranty or any of the other Loan Documents.

3.2    Rights and Remedies Upon Event of Default. Upon the occurrence of and during the continuance of an Event of Default, (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Financing Order, the Credit Agreement, the Guaranty and the other Loan Documents, and (ii) Agent shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Financing Order or any Loan Document, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to make Advances or provide or arrange for Letters of Credit, setting off any Obligations with Collateral or proceeds in Agent's or any Lender's possession, and enforcing any and all rights with respect to the Collateral. Agent and Lenders shall have no obligation to lend or advance any additional funds to Non-Debtor Borrowers for the benefit of Debtors, or provide any other financial accommodations to or for the benefit of Debtors, immediately upon or after the occurrence of an Event of Default.

3.3    Expiration of Commitment. Upon the expiration of Non-Debtor Borrowers' authority to borrow and obtain other credit accommodations from Agent and Lenders pursuant to the terms of this Interim Financing Order and the Loan Documents (except if such authority shall be extended with the prior written consent of Agent, which consent shall not be

implied or construed from any action, inaction or acquiescence by Agent or any Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Financing Order, all of the Obligations shall immediately become due and payable and Agent and Lenders shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to Agent and Lenders pursuant to the terms and conditions of the Loan Documents or this Interim Financing Order, and Agent, acting on behalf of itself and the other Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Interim Financing Order, the Loan Documents or applicable law which Agent may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtors' Estates.

      3.4     <u>Relief from Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Agent and Lenders to perform any act authorized or permitted under or by virtue of this Interim Financing Order or the Loan Documents, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Financing Order and pursuant to the terms of the Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Loan Documents, and apply such payments to the Obligations pursuant to the Loan Documents and this Interim Financing Order. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days prior written notice (the "<u>Enforcement Notice</u>") to counsel for the Debtors and Non-Debtor Borrowers, counsel for the Committee (if appointed), and the U.S. Trustee, Agent, acting on

behalf of itself and the other Lenders, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Financing Order, the Loan Documents or applicable law as Agent may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral or any other assets or properties of Debtors' Estates upon which Agent, for the benefit of itself and the other Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations, provided that the Debtors shall have the right to seek a continuance of the automatic stay from the Court during such five (5) day period.

Section 4.      Representations; Covenants; and Waivers.

4.1      Debtors' Waivers.  At all times during the Chapter 11 Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to seek authority (i) to use Cash Collateral of Agent and Lenders or Non-Debtor Borrowers under Section 363 of the Bankruptcy Code, (ii) to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code that would not indefeasibly repay the Obligations due Agent and Lenders in full in cash,, other than from Agent and Lenders or as may be otherwise expressly permitted pursuant to the Credit Agreement, (iii) to challenge the application of any payments authorized by this Interim Financing Order as pursuant to Section 506(b) of the Bankruptcy Code, provided that the application of such payments is in accordance with the terms of this Interim Financing Order and the Loan Documents, or (iv) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Loan Documents, or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Agent and Lenders as provided in this Interim Financing Order and the Loan Documents or Agent's and Lenders' exercise of such rights or remedies; provided,

*however*, that Agent may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Agent or any Lender.

    4.2    <u>Section 506(c) Claims</u>. No costs or expenses of administration which have or may be incurred in the Chapter 11 Cases at any time during the Interim Financing Period (and subject to the entry of a Permanent Financing Order, any time after the expiration of the Interim Financing Period) shall be charged against Agent or any Lender, their respective claims or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Agent, and no such consent shall be implied from any other action, inaction or acquiescence by Agent or any Lender.

    4.3    <u>Collateral Rights</u>. Until all of the Obligations shall have been indefeasibly paid in cash and satisfied in full:

    4.3.1    no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral; and

    4.3.2    upon and after the occurrence of an Event of Default, and subject to Agent obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtors, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses. Agent and Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Agent actually occupies or uses such assets or properties).

4.4     Release. Upon the repayment in full of all Obligations owed to Agent and Lenders by Debtors and termination of the rights and obligations arising under the Loan Documents and either a Final Financing Order or extended Interim Financing Order, as the case may be (which payment and termination shall be on terms and conditions acceptable to Agent), Agent and Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Loan Documents or the applicable Financing Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out Expenses), on terms and conditions acceptable to Agent.

Section 5.     Other Rights and Obligations.

5.1     No Modification or Stay of This Interim Financing Order. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Financing Order, the Loan Documents or any term hereunder or thereunder, (ii) the failure to obtain a Permanent Financing Order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of one or more of the Chapter 11 Cases (each, a "Subject Event"), (x) the acts taken by Agent and Lenders in accordance with this Interim Financing Order, and (y) the Obligations incurred or arising prior to Agent's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Financing Order, and the acts taken by Agent and Lenders in accordance with this Interim Financing Order, and the liens granted to Agent and Lenders in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Agent and Lenders pursuant to this Interim Financing Order and the Loan Documents shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code. For purposes of this Interim Financing Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any

proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Financing Order by this Court or any other tribunal.

5.2     Power to Waive Rights; Duties to Third Parties.  Agent and Lenders shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Financing Order in respect of Agent and Lenders (the "Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by Agent or any Lender of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Agent or any Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to Agent or any Lender.

5.3     Reserved.

5.4     Inventory.  Debtors shall not, without the consent of Agent, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5     Reservation of Rights.  The terms, conditions and provisions of this Interim Financing Order are in addition to and without prejudice to the rights of Agent and Lenders to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

5.6    Binding Effect.

5.6.1    The provisions of this Interim Financing Order and the Loan Documents, the Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Agent and Lenders provided or acknowledged in this Interim Financing Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Financing Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order entered in the Chapter 11 Cases, including without limitation, any order which may be entered confirming any plan of reorganization, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Chapter 11 Cases.

5.6.2    Any order dismissing one or more of the Chapter 11 Cases under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and Agent's and Lenders' liens on and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens in the Collateral.

5.6.3    In the event this Court modifies any of the provisions of this Interim Financing Order or the Loan Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of Agent and Lenders pursuant to this Interim Financing Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and (b) this Interim Financing Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

5.6.4    This Interim Financing Order shall be binding upon Debtors, all parties in interest in the Chapter 11 Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Chapter 11 Cases or any subsequently converted

bankruptcy case(s) of any Debtor. This Interim Financing Order shall also inure to the benefit of Agent, Lenders, Debtors and their respective successors and assigns.

      5.7    Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment. All post-petition advances and other financial accommodations under the Credit Agreement, the Guaranty and the other Loan Documents are made in reliance on this Interim Financing Order and there shall not at any time be entered in the Chapter 11 Cases, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order (other than the Permanent Financing Order) which (a) authorizes the use of cash collateral of Debtors in which Agent or Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which Agent or Lenders have a lien or security interest, except as expressly permitted hereunder or in the Loan Documents, (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Agent or Lenders hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Agent and Lenders herein or (c) authorizes any such other relief which alters, modifies, amends or otherwise affects the rights and benefits granted in favor of Agent and Lenders in this Interim Financing Order; unless, in each instance (i) Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Agent or any Lender, or (ii) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement, the Guaranty and the other Loan Documents, including, without limitation, all debts and obligations of Debtors to Agent and Lenders which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Agent. The security interests and liens granted to or for the benefit of Agent and Lenders hereunder and the rights of Agent and Lenders pursuant to this Interim Financing Order and the Loan Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by

any plan of reorganization or liquidation of Debtors and, if Agent shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

      5.8    <u>No Owner/Operator Liability</u>. In determining to make any loan under the Credit Agreement, the other Loan Documents or any Financing Order, or in exercising any rights or remedies as and when permitted pursuant to the Loan Documents or any Financing Order, Agent and Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

      5.9    <u>Marshalling</u>. In no event shall Agent or any Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral. The Agent and Lenders shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to Agent and Lenders with respect to proceeds, products, offspring or profits of any of the Collateral.

      5.10    <u>Term; Termination</u>. Notwithstanding any provision of this Interim Financing Order to the contrary, the term of the financing arrangements among Debtors, Agent and Lenders authorized by this Interim Financing Order may be terminated pursuant to the terms of the Credit Agreement and the Guaranty.

      5.11    <u>Limited Effect</u>. Unless the Interim Financing Order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Loan Documents and this Interim Financing Order, the terms and provisions of this Interim Financing Order shall govern, interpreted as most consistent with the terms and provisions of the Loan Documents.

5.12   <u>Objections Overruled</u>.  All objections to the entry of this Interim Financing Order are, to the extent not withdrawn, hereby overruled.

Section 6.   <u>Final Hearing and Response Dates.</u>  The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for June, _____, at _____ before this Court (the "<u>Final Hearing</u>").  *The Debtors shall promptly mail copies of this Interim Financing Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Creditors' Committee after same has been appointed, or Creditors' Committee counsel, if same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Richards Layton & Finger, One Rodney Square, Wilmington, DE., Attn: Daniel DeFranceschi, Fax No. 302-651-7701, and Jones Day, 2727 North Harwood Street, Dallas, TX 75201-1515, Attn: Gregory M. Gordon, Fax: (214) 969-5100; (b) counsel for the Agent, Ashby & Geddes 222 Delaware Avenue, Wilmington, DE 19899, Attn; William P. Bowden, Fax No: 302-654-2067 , Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Andrew M. Kramer, Fax: (212) 682-6104; (c) counsel to any Committee; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than _____, prevailing Eastern time.*

Dated: _____, 2010


                                         _____

                                         UNITED STATES BANKRUPTCY JUDGE