**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SPECIALTY PRODUCTS HOLDING | : | Case No. 10-11780 (JKF) |
| CORP., *et al.*,[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

**JOINT PLAN PROPOSED BY THE
OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
CLAIMANTS AND THE FUTURE CLAIMANTS' REPRESENTATIVE FOR
SPECIALTY PRODUCTS HOLDING CORP. AND BONDEX INTERNATIONAL, INC.**

| | |
|---|---|
| MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP<br><br>By:   Natalie D. Ramsey, Esquire<br>        Laurie A. Krepto, Esquire<br>        1105 North Market Street, Suite 1500<br>        Wilmington, DE  19801<br>        302-504-7800 (Phone)<br><br>          and<br><br>        Mark B. Sheppard, Esquire<br>        123 South Broad Street<br>        Philadelphia, PA  19109<br>        215-772-1500 (Phone)<br><br>*Counsel for the Official Committee of Asbestos Personal Injury Claimants* | Young Conaway Stargatt & Taylor, LLP<br><br>By:   James L. Patton, Jr., Esquire<br>        Edwin J. Harron, Esquire<br>        Edmon Morton, Esquire<br>        Sharon Zieg, Esquire<br>        Erin Edwards, Esquire<br>        Rodney Square<br>        1000 North King Street<br>        Wilmington, DE  19801<br>        302-571-6600 (Phone)<br><br>*Counsel to the Future Claimants' Representative* |

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Specialty Products Holding Corp. (0857); and Bondex International, Inc. (4125).  The Debtors' address is 4515 St. Clair Avenue, Cleveland, Ohio 44103.

## TABLE OF CONTENTS

**Page**

ARTICLE I       DEFINITIONS AND INTERPRETATIONS ................................................. 3

1.1     Administrative Claims Bar Date ........................................................................ 3

1.2     Administrative Expense Claim .......................................................................... 3

1.3     Administrative Expense Request ....................................................................... 3

1.4     Administrative Services Agreement ................................................................. 3

1.5     Allowed ............................................................................................................. 4

1.6     Alternative A ..................................................................................................... 4

1.7     Alternative B ..................................................................................................... 4

1.8     Asbestos PI Claim ............................................................................................. 4

1.9     Asbestos PI Trust .............................................................................................. 4

1.10    Asbestos PI Trust Advisory Committee ........................................................... 4

1.11    Asbestos PI Trust Agreement ........................................................................... 4

1.12    Asbestos PI Trust Assets .................................................................................. 4

1.13    Asbestos PI Trust Bylaws ................................................................................. 5

1.14    Asbestos PI Trust Contributions ...................................................................... 5

1.15    Asbestos PI Trust Distribution Procedures ...................................................... 5

1.16    Asbestos PI Trust Documents .......................................................................... 5

1.17    Asbestos PI Trust Expense ............................................................................... 5

1.18    Asbestos PI Trustee .......................................................................................... 5

1.19    Avoidance Action ............................................................................................. 5

1.20    Ballot ................................................................................................................ 5

1.21    Bankruptcy Code .............................................................................................. 5

1.22    Bankruptcy Court .............................................................................................. 6

1.23    Bankruptcy Rules ............................................................................................. 6

1.24    Bondex .............................................................................................................. 6

1.25    Bondex Equity Interest ..................................................................................... 6

1.26    Business Day ..................................................................................................... 6

1.27    Cash .................................................................................................................. 6

1.28    Cause of Action ................................................................................................ 6

1.29    Chapter 11 Cases .............................................................................................. 7

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 1.30 | Claim | 7 |
| 1.31 | Claims and Balloting Agent | 7 |
| 1.32 | Class | 7 |
| 1.33 | Committee | 7 |
| 1.34 | Commencement Date | 7 |
| 1.35 | Confirmation Date | 7 |
| 1.36 | Confirmation Hearing | 7 |
| 1.37 | Confirmation Notice | 7 |
| 1.38 | Confirmation Order | 7 |
| 1.39 | Control | 8 |
| 1.40 | Cure Amount | 8 |
| 1.41 | Debtors | 8 |
| 1.42 | Debtors in Possession | 8 |
| 1.43 | Demand | 8 |
| 1.44 | DIP Agreement | 8 |
| 1.45 | DIP Claim | 8 |
| 1.46 | DIP Lender | 8 |
| 1.47 | Disallowed | 8 |
| 1.48 | Disclosure Statement | 8 |
| 1.49 | Disputed | 8 |
| 1.50 | Distribution Record Date | 9 |
| 1.51 | Distribution | 9 |
| 1.52 | Distribution Date | 9 |
| 1.53 | District Court | 9 |
| 1.54 | Docket | 9 |
| 1.55 | Effective Date | 9 |
| 1.56 | Effective Date Notice | 9 |
| 1.57 | Encumbrance | 9 |
| 1.58 | Entity | 10 |
| 1.59 | Equity Interests | 10 |

# TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---|
| 1.60 | Estates | 10 |
| 1.61 | Exculpated Parties | 10 |
| 1.62 | Executory Contract | 10 |
| 1.63 | Exit Financing | 10 |
| 1.64 | Federal Judgment Rate | 10 |
| 1.65 | File, Filed, or Filing | 10 |
| 1.66 | Final Judgment or Final Order | 10 |
| 1.67 | Future Claimants' Representative | 11 |
| 1.68 | Future Demand Holder | 11 |
| 1.69 | General Unsecured Claim | 11 |
| 1.70 | Impaired | 11 |
| 1.71 | Indirect Asbestos PI Claim | 11 |
| 1.72 | Intercompany Claim | 12 |
| 1.73 | International | 12 |
| 1.74 | International-Related Alter Ego Claims | 12 |
| 1.75 | Lien | 12 |
| 1.76 | Liquidate | 12 |
| 1.77 | Motion to Prosecute | 12 |
| 1.78 | New SPHC Stock | 12 |
| 1.79 | Ordinary Course of Business | 12 |
| 1.80 | Payment Percentage | 12 |
| 1.81 | Plan | 12 |
| 1.82 | Plan Documents | 13 |
| 1.83 | Plan Proponents | 13 |
| 1.84 | Priority Claim | 13 |
| 1.85 | Priority Tax Claim | 13 |
| 1.86 | Professional | 13 |
| 1.87 | Proof of Claim | 13 |
| 1.88 | Protected Parties | 13 |
| 1.89 | Rejection Claim | 13 |

# TABLE OF CONTENTS
### (continued)

**Page**

| | | |
|---|---|---|
| 1.90 | Reorganized Bondex | 13 |
| 1.91 | Reorganized Debtors | 14 |
| 1.92 | Reorganized SPHC | 14 |
| 1.93 | Schedules | 14 |
| 1.94 | Secured Claim | 14 |
| 1.95 | Settled Asbestos PI Claims | 14 |
| 1.96 | Solicitation Procedures Order | 14 |
| 1.97 | SPHC | 14 |
| 1.98 | SPHC Equity Interest | 14 |
| 1.99 | SPHC or Bondex Affiliate | 14 |
| 1.100 | SPHC or Bondex Asbestos PI Claim | 14 |
| 1.101 | SPHC or Bondex Asbestos PI Demand | 15 |
| 1.102 | Stay Extension Order | 15 |
| 1.103 | Trust Distribution Effective Date | 15 |
| 1.104 | Unimpaired | 15 |
| 1.105 | United States Trustee | 16 |
| ARTICLE II | MODIFICATION OR REVOCATION | 16 |
| 2.1 | Modification of Plan | 16 |
| 2.2 | Revocation or Withdrawal of the Plan | 16 |
| ARTICLE III | MISCELLANEOUS PROVISIONS | 16 |
| 3.1 | Governing Law | 16 |
| 3.2 | Administrative Expense Claims Bar Date | 17 |
| 3.3 | Notices | 17 |
| 3.4 | Plan Supplement | 18 |
| 3.5 | Inconsistencies | 18 |
| 3.6 | Reservation of Rights | 18 |
| 3.7 | Tax Reporting and Compliance | 19 |
| 3.8 | Exemption from Transfer Taxes | 19 |
| 3.9 | Binding Effect | 19 |
| 3.10 | Severability | 19 |

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 3.11 | Further Authorizations | 19 |
| 3.12 | Payment of Statutory Fees | 19 |
| 3.13 | Prepayment | 20 |
| 3.14 | Effective Date Actions Simultaneous | 20 |
| 3.15 | General Statements | 20 |
| 3.16 | Effective Date Notice | 20 |

**ALTERNATIVE A**

| | | |
|---|---|---|
| ARTICLE IV | ADMINISTRATIVE EXPENSE, PRIORITY TAX AND DIP CLAIMS | 1 |
| 4.1 | Administrative Expense Claims | 1 |
| 4.2 | Priority Tax Claims | 2 |
| 4.3 | DIP Claim | 2 |
| ARTICLE V | CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | 2 |
| 5.1 | Classification | 3 |
| 5.2 | Class 1 – Priority Claims | 3 |
| 5.3 | Class 2 – Secured Claims | 3 |
| 5.4 | Class 3 – General Unsecured Claims | 4 |
| 5.5 | Class 4 – Settled Asbestos PI Claims | 4 |
| 5.6 | Class 5 – Asbestos PI Claims | 4 |
| 5.7 | Class 6 – Intercompany Claims | 5 |
| 5.8 | Class 7 – Claims of International | 5 |
| 5.9 | Class 8 – Bondex Equity Interests | 5 |
| 5.10 | Class 9 – SPHC Equity Interests | 5 |
| ARTICLE VI | ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS | 6 |
| 6.1 | Classes Entitled to Vote | 6 |
| 6.2 | Class Acceptance Requirement | 6 |
| 6.3 | Acceptance by Unimpaired Classes | 6 |
| 6.4 | Rejection by Rejecting Classes | 6 |

# TABLE OF CONTENTS
(continued)

**Page**

ARTICLE VII    DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS OTHER THAN ASBESTOS PI CLAIMS ..................................... 6

7.1    Distributions ................................................................................... 6

7.2    Date of Distributions ...................................................................... 7

7.3    Postpetition Interest on Claims ....................................................... 7

7.4    Means of Cash Payment .................................................................. 7

7.5    Delivery of Distributions ................................................................ 7

7.6    Time Bar to Cash Payments ............................................................ 7

7.7    Record Date for Holders of Claims .................................................. 8

7.8    Transfers of Claims ........................................................................ 8

7.9    Distributions after Effective Date ................................................... 8

7.10    Fractional Cents ........................................................................... 8

7.11    Setoff .......................................................................................... 8

ARTICLE VIII    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................................. 9

8.1    General Treatment .......................................................................... 9

8.2    Cure of Payments and Release of Liability ....................................... 9

8.3    Bar to Rejection Damages ............................................................... 9

8.4    Administrative Services Agreement ................................................. 9

8.5    Insurance Policies ......................................................................... 10

ARTICLE IX    PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS OTHER THAN ASBESTOS PI CLAIMS .................................. 10

9.1    Disputed Claims ........................................................................... 10

9.2    Objection to Claims ...................................................................... 10

9.3    Payments and Distributions with Respect to Disputed Claims ........... 10

9.4    Estimation of Claims ..................................................................... 10

ARTICLE X    MEANS FOR IMPLEMENTATION OF THE PLAN ................................ 11

10.1    Generally .................................................................................... 11

10.2    Transactions on the Effective Date ............................................... 11

10.3    The Asbestos PI Trust ................................................................. 11

# TABLE OF CONTENTS
(continued)

Page

ARTICLE XI    EFFECT OF CONFIRMATION ................................................................. 13

11.1    Preservation of Certain Causes of Action; Defenses ........................................... 13

11.2    Terms of Injunction and Automatic Stay ............................................................ 14

11.3    Title to Asbestos PI Trust Assets ........................................................................ 14

11.4    Dissolution of the Committee; Continuation of Future Claimants' Representative; Creation of the Asbestos PI Trust Advisory Committee............ 14

ARTICLE XII    DISCHARGE, INJUNCTION, AND EXCULPATION ............................... 15

12.1    Discharge .............................................................................................................. 15

12.2    Injunction ............................................................................................................. 15

12.3    Third Party Injunction .......................................................................................... 16

12.4    Injunction Reservation ......................................................................................... 16

12.5    Exculpation ........................................................................................................... 16

12.6    No Benefit to International .................................................................................... 17

ARTICLE XIII    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............................................................... 17

13.1    Conditions Precedent to Confirmation of the Plan .............................................. 17

13.2    Conditions Precedent to the Effective Date of the Plan....................................... 19

13.3    Conditions Precedent to the Trust Distribution Effective Date ........................... 20

13.4    Waiver of Conditions Precedent .......................................................................... 20

13.5    Effect of Failure of the Effective Date of the Plan .............................................. 20

13.6    Retention of Jurisdiction ...................................................................................... 20

**ALTERNATIVE B**

ARTICLE IV    ADMINISTRATIVE EXPENSE, PRIORITY TAX AND DIP CLAIMS .............................................................................................................. 1

4.1    Administrative Expense Claims............................................................................... 1

4.2    Priority Tax Claims.................................................................................................. 2

4.3    DIP Claim ................................................................................................................ 2

ARTICLE V    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS.................................................................................... 2

5.1    Classification............................................................................................................ 3

5.2    Class 1 – Priority Claims ......................................................................................... 3

# TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---|
| 5.3 | Class 2 – Secured Claims | 3 |
| 5.4 | Class 3 – General Unsecured Claims | 4 |
| 5.5 | Class 4 – Settled Asbestos PI Claims | 4 |
| 5.6 | Class 5 – Asbestos PI Claims | 4 |
| 5.7 | Class 6 – Intercompany Claims | 4 |
| 5.8 | Class 7 – Claims of International | 5 |
| 5.9 | Class 8 – Bondex Equity Interests | 5 |
| 5.10 | Class 9 – SPHC Equity Interests | 5 |
| ARTICLE VI | ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS | 5 |
| 6.1 | Classes Entitled to Vote | 5 |
| 6.2 | Class Acceptance Requirement | 6 |
| 6.3 | Acceptance by Unimpaired Classes | 6 |
| 6.4 | Rejection by Rejecting Classes | 6 |
| ARTICLE VII | DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS OTHER THAN ASBESTOS PI CLAIMS | 6 |
| 7.1 | Distributions | 6 |
| 7.2 | Date of Distributions | 6 |
| 7.3 | Postpetition Interest on Claims | 6 |
| 7.4 | Means of Cash Payment | 6 |
| 7.5 | Delivery of Distributions | 6 |
| 7.6 | Time Bar to Cash Payments | 7 |
| 7.7 | Record Date for Holders of Claims | 7 |
| 7.8 | Transfers of Claims | 7 |
| 7.9 | Distributions after Effective Date | 7 |
| 7.10 | Fractional Cents | 7 |
| 7.11 | Setoff | 8 |
| ARTICLE VIII | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 8 |
| 8.1 | General Treatment | 8 |

**TABLE OF CONTENTS**
(continued)

| | | |
|---|---|---|
| 8.2 | Cure of Payments and Release of Liability | 8 |
| 8.3 | Bar to Rejection Damages | 8 |
| 8.4 | Insurance Policies | 9 |
| ARTICLE IX | PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS OTHER THAN ASBESTOS PI CLAIMS | 9 |
| 9.1 | Disputed Claims | 9 |
| 9.2 | Objection to Claims | 9 |
| 9.3 | Payments and Distributions with Respect to Disputed Claims | 9 |
| 9.4 | Estimation of Claims | 9 |
| ARTICLE X | MEANS FOR IMPLEMENTATION OF THE PLAN | 10 |
| 10.1 | Generally | 10 |
| 10.2 | Transactions on the Effective Date | 10 |
| ARTICLE XI | EFFECT OF CONFIRMATION | 10 |
| 11.1 | Preservation of Certain Causes of Action; Defenses | 10 |
| 11.2 | Terms of Injunction and Automatic Stay | 10 |
| 11.3 | Dissolution of the Committee and Future Claimants' Representative | 10 |
| ARTICLE XII | DISCHARGE, INJUNCTION, AND EXCULPATION | 11 |
| 12.1 | Discharge | 11 |
| 12.2 | Injunction | 11 |
| 12.3 | Exculpation | 11 |
| ARTICLE XIII | CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN | 12 |
| 13.1 | Conditions Precedent to Confirmation of the Plan | 12 |
| 13.2 | Conditions Precedent to the Effective Date of the Plan | 13 |
| 13.7 | Waiver of Conditions Precedent | 13 |
| 13.8 | Effect of Failure of the Effective Date of the Plan | 13 |
| 13.9 | Retention of Jurisdiction | 13 |

# INTRODUCTION[2]

The Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative jointly propose the following plan pursuant to section 1121(a) of title 11 of the United States Code.

This Plan contemplates two basic scenarios contingent upon the asbestos claims estimation process in the Chapter 11 Cases. The two possible scenarios are generally referred to as Alternative A and Alternative B.

<u>Alternative A</u>

In the event the Court determines that the Debtors' liabilities exceed the value of the Debtors' assets, then pursuant to the Plan: (i) Bondex will be dissolved; (ii) current SPHC Equity Interests will be cancelled, annulled and extinguished; (iii) New SPHC Stock, the Causes of Action, and all other Asbestos PI Trust Assets will be transferred to an Asbestos PI Trust responsible for liquidating and resolving all Settled Asbestos PI Claims and Asbestos PI Claims; (iv) the holders of Settled Asbestos PI Claims may elect to either: (a) receive an amount equal to the payment percentage established under the Asbestos PI Trust Distribution Procedures multiplied by the Allowed amount of the holder's claim as settled prior to the Commencement Date, or (b) forego any agreed settlement and be bound by Asbestos PI Trust Distribution Procedures in determining the amount of the Allowed Claim; (v) Intercompany Claims will be cancelled; (vi) Claims held by International will be subordinated, and therefore, International will receive nothing on account of its alleged Claims; and (vii) the Stay Extension Order, to the extent it has not been vacated by the Court prior to the Effective Date, will be vacated and the rights of all holders of Claims that may have been stayed by that order shall be unaffected allowing those holders to pursue their Claims in the tort system.

Prior to, and as a condition of the Effective Date, the Plan Proponent will take all steps necessary to fully separate and make independent the Debtors and the SPHC or Bondex Affiliates from International and all other entities within the International business structure. Among other things, the Plan Proponents will identify Exit Financing, implement their own free standing accounting system, and engage a chief restructuring officer to facilitate the separation and implement the Plan. The Plan Proponents contemplate that only certain executive level employees of the Debtors and the SPHC or Bondex Affiliates need to be replaced. The new executives and their positions will be identified in the Plan Supplement. These individuals will perform the day-to-day management of the Debtors while the Asbestos PI Trustee determines the best way to maximize the value of the SPHC or Bondex Affiliates for the benefit of the holders of Allowed Claims under the Plan.

<u>Alternative B</u>

In the event the Court determines at a contested estimation hearing that the Debtors' liabilities do not exceed the value of SPHC, then the Plan Proponents will seek to confirm a Plan

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them herein.

that allows for payment of the Settled Asbestos PI Claims without interest by the Reorganized Debtors on the Distribution Date. All other Classes of Claims and Equity Interests will be unimpaired by the Plan and pass-through the Cases with all of their rights in tact. In other words, for all Classes except the Settled Asbestos PI Claims, the Plan will be litigation neutral and will not increase or decrease the rights that any party had prior to the Commencement Date.

The Plan does not require that an estimation hearing be scheduled, conducted or concluded prior to soliciting votes thereon. Creditors may vote on the Plan now based on the two scenarios set forth herein. The Plan may be confirmed and then either Alternative A or Alternative B applied based on the result of the estimation hearing.

Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of: (i) the Debtors' history, businesses, properties, and operations; (ii) a summary and analysis of this Plan; and (iii) certain related matters, including risk factors relating to the consummation of this Plan. [3]

All holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entireties before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation. The Committee and the Future Claimants' Representative are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan is being proposed as a joint plan for administrative and procedural purposes. The treatment for Holders of Claims and Interests in the Debtors is set forth in Article III of this Plan.

## SUMMARY OF PLAN[4]

An estimation hearing is tentatively scheduled for January 7 – 11, 2013 but the estimation hearing does not need to be conducted or concluded in order for creditors to vote on the Plan and for the Court to conduct a Confirmation Hearing.

The Plan calls for two potential alternatives to be applied based on the result of the estimation trial. If, as the Debtors allege, the Bankruptcy Court concludes that the Debtors are solvent, then no Claims or Equity Interests will be affected by the Plan except for the Settled Asbestos PI Claims which will be paid without interest by the Debtors on the Effective Date of the Plan. If, as the Plan Proponents expect, the Court ultimately concludes that the Debtors' assets are outweighed by their liabilities, then the Debtors will be separated from their non-

---

[3] The Disclosure Statement, as well as a motion seeking approval of the Disclosure Statement and seeking, among other things, procedures for solicitation of the Plan are being filed contemporaneously with the Plan.

[4] This Summary is intended solely to provide an overview of the Plan. The Summary shall not be binding on any of the Plan Proponents, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

Debtor parents and managed for the benefit of holders of all claims that are not either paid immediately in Cash, subordinated or cancelled by the Plan.

# ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

In the Plan, the definitions provided in this Article I shall apply. Not all definitions are used in each of Alternative A and Alternative B. However, to the extent a definition is used in each of Alternative A and Alternative B, that definition shall have the same meaning in both Alternative A and Alternative B. Unless otherwise specified, all Article, schedule or exhibit references in the Plan are to the respective Article of or schedule or exhibit to the Plan or the Plan Supplement, as the same may be amended or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Article, subsection or clause. A term used but not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

1.1     **Administrative Claims Bar Date.** Administrative Claims Bar Date means the deadline to file an Administrative Expense Request which shall be the date that is sixty (60) days after the Effective Date. If the date that is 60 days after the Effective Date does not fall on a Business Day, the Effective Date will be the 1st Business Day immediately following such date.

1.2     **Administrative Expense Claim.** Administrative Expense Claim means any Claim for any cost or expense of administration of the Chapter 11 Cases under section 503(b) of the Bankruptcy Code incurred up through and including the Effective Date including, but not limited to: (a) any actual and necessary post-petition cost or expense of preserving the Estates or operating the businesses of the Debtors; (b) any payment to be made under the Plan to cure a default on an executory contract or unexpired lease assumed during the Chapter 11 Cases; (c) post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of business; (d) any Fee Clam, including any Claim for compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 328, 330(a) or 331 of the Bankruptcy Code or the provision of the Plan; and (e) any fee or charge assessed against the Estates pursuant to 28 U.S.C. § 1930.

1.3     **Administrative Expense Request.** Administrative Expense Request means a request for payment of an Administrative Expense Claim.

1.4     **Administrative Services Agreement.** Administrative Services Agreement means that agreement dated as of June 1, 2010 by and between SPHC and International governing certain administrative services provided by International to SPHC and its Affiliates.

1.5     **Allowed.** Allowed means, when used with respect to any Claim against SPHC or Bondex, including Administrative Expense Claims (but excluding Asbestos PI Claims), such Claim or portion thereof: (a) as to which no objection or request for estimation has been filed,

no litigation has commenced, and the Plan Proponents otherwise have assented to the validity thereof (and as to which proof of such Claim has been properly and timely filed to the extent required by the Plan or any order of the Bankruptcy Court); (b) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn or denied by a Final Order; or (c) that is allowed (i) pursuant to the terms of a Final Order, (ii) pursuant to the terms of an agreement by and among the holder(s) of such Claim and the Plan Proponents under Alternative A or the Reorganized Debtors under Alternative B, or (iii) under the terms of the Plan; provided, however, that for the purposes of determining the status (i.e., Allowed or Disallowed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or the Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Plan Proponents, acting jointly, as being an Allowed Claim.

       **1.6**     **Alternative A.**  Alternative A means the Plan as it applies if the Bankruptcy Court concludes that the Debtors' liabilities outweigh their assets.

       **1.7**     **Alternative B.**  Alternative B means the Plan as it applies if the Bankruptcy Court concludes that the Debtors assets outweigh their liabilities.

       **1.8**     **Asbestos PI Claim.**  Asbestos PI Claim means each of the following:  (a) a SPHC or Bondex Asbestos PI Claim that is not a Settled Asbestos PI Claim; and (b) an Indirect Asbestos PI Claim.  For the purpose of this definition, Asbestos PI Claims are mutually exclusive from and separate to the Settled Asbestos PI Claims.

       **1.9**     **Asbestos PI Trust.**  Asbestos PI Trust means the asbestos personal injury trust that is to be established in accordance with the Plan, the Confirmation Order and the Asbestos PI Trust Agreement, which trust shall be treated as a "qualified settlement fund" under section 468B of the Internal Revenue Code.

       **1.10**     **Asbestos PI Trust Advisory Committee.**  Asbestos PI Trust Advisory Committee means the advisory committee established pursuant to the terms of the Plan and the Asbestos PI Trust Agreement.  The initial members will be identified in the Plan Supplement.

       **1.11**     **Asbestos PI Trust Agreement.**  Asbestos PI Trust Agreement means the agreement, to be dated as of the Effective Date, by and among the Asbestos PI Trustee, the Future Claimants' Representative and the Asbestos PI Trust Advisory Committee, governing the creation and terms of the Asbestos PI Trust, in substantially the form annexed hereto as Exhibit A.

       **1.12**     **Asbestos PI Trust Assets.**  Asbestos PI Trust Assets means, collectively:  (a) the Asbestos PI Trust Contributions; (b) all other assets, rights, and benefits assigned, transferred or conveyed to the Asbestos PI Trust in connection with the Plan or any Plan Documents; and (c) all proceeds of the foregoing.

       **1.13**     **Asbestos PI Trust Bylaws.**  Asbestos PI Trust Bylaws means the bylaws, effective as of the Effective Date, substantially in the form annexed hereto as Exhibit B, as such

bylaws may be amended or modified from time to time in accordance with the terms of the Asbestos PI Trust Agreement.

**1.14    Asbestos PI Trust Contributions.**  Asbestos PI Trust Contributions means, collectively:  (i) 100% of the stock of each SPHC or Bondex Affiliate in the Control of SPHC or Bondex; (ii) all assets of the Debtors, wherever located and in whatever form, including, but not limited to, any Claims or Cause of Action held against third parties, provided however that the Asbestos PI Trust Contribution will exclude any asset, Claim, or Cause of Action necessary to reduce, defend against, or pay all Claims asserted against the Debtors that are not Asbestos PI Claims.

**1.15    Asbestos PI Trust Distribution Procedures.**  Asbestos PI Trust Distribution Procedures means the trust distribution procedures for the Asbestos PI Trust, in substantially the form annexed hereto as Exhibit C, and such additional procedures as subsequently may be adopted by the Asbestos PI Trust, which provide for the liquidation and satisfaction of Asbestos PI Claims.

**1.16    Asbestos PI Trust Documents.**  Asbestos PI Trust Documents means, collectively:  (a) the Asbestos PI Trust Agreement; (b) the Asbestos PI Trust Distribution Procedures; (c) the Asbestos PI Trust Bylaws; and (d) the other agreements, instruments and documents governing the establishment and administration of the Asbestos PI Trust, as the same may be amended or modified from time to time, in accordance with the terms thereof.

**1.17    Asbestos PI Trust Expense.**  Asbestos PI Trust Expense means any of the liabilities, costs, or expenses incurred by the Asbestos PI Trust (excluding liabilities to holders of Asbestos PI Claims), in carrying out the terms of the Asbestos PI Trust Agreement which expenses, along with any post-Effective Date costs of administration will be paid before any amounts owed to holders of Allowed Settled Asbestos PI Claims or Allowed Asbestos PI Claims.

**1.18    Asbestos PI Trustee.**  Asbestos PI Trustee means the individual to be identified in the Plan Supplement and appointed pursuant to the Confirmation Order to serve as the trustee for the Asbestos PI Trust in accordance with the terms of the Plan and the Asbestos PI Trust Agreement or any successors thereof.

**1.19    Avoidance Action.**  Avoidance Action means any avoidance or recovery action under any of the sections of the Bankruptcy Code including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, whether or not litigation has been commenced with respect to such cause of action as of the Effective Date.

**1.20    Ballot.**  Ballot means each of the ballots and/or master ballots distributed with the Disclosure Statement to holders of Impaired Claims against or Equity Interests in SPHC or Bondex on which ballot such holder of a Claim or Equity Interest may, among other things, vote to accept or reject the Plan.

**1.21    Bankruptcy Code.**  Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Commencement Date, together with all amendments,

modifications and replacements of the foregoing, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

1.22    **Bankruptcy Court.**  Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases.

1.23    **Bankruptcy Rules.**  Bankruptcy Rules means, collectively:  (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as amended from time to time and applicable to the Chapter 11 Cases.

1.24    **Bondex.**  Bondex means Bondex International, Inc., a Delaware Corporation.

1.25    **Bondex Equity Interest.**  Bondex Equity Interest means any right, title and interest in Bondex existing as of the Commencement Date, 100% of which is owned by SPHC.

1.26    **Business Day.**  Business Day means any day except:  (a) Saturday; (b) Sunday; (c) any other day on which banking institutions in Wilmington, Delaware are required or authorized to be closed by law or executive order; and (d) the Friday immediately after Thanksgiving.

1.27    **Cash.**  Cash means legal tender of the United States of America.

1.28    **Cause of Action.**  Cause of Action means any and all of the actions, claims, rights, remedies, defenses, counterclaims, suits and causes of action of the Debtors and their Estates, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including without limitation (a) all defenses to any Asbestos PI Claim, including, but not limited to, all defenses under section 502 of the Bankruptcy Code, (b) with respect to any Asbestos PI Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted, (c) subject to the provisions of the Plan, any other claims or rights with respect to Asbestos PI Claims that the Debtors would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Asbestos PI Claim had asserted it by initiating civil litigation against any such Debtor, (d) any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract or otherwise arising from or relating to any payments made by the Debtors on account of the Asbestos PI Claims prior to the Commencement Date, (e) causes of action for breach of contract, receipt of illegal dividends, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtors and their respective Estates, including actions that constitute property of the Estates under section 541 of the Bankruptcy Code that may be pursued by a representative of the Estates, including pursuant to section 323 of the Bankruptcy Code, the International-Related Alter Ego Claims, and actions that may be commenced by a representative of the Estates under

section 502(d), 542, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code seeking relief in the form of damages (actual or punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief against: (i) any or all of the Debtors' current or former Affiliates; (ii) International; (iii) any of the Debtors' former professionals or the professionals of any of its current or former Affiliates or International. Without limitation of the foregoing, Causes of Action includes any actions commenced on behalf of the Debtors by the Committee and/or the Future Claimants' Representative pending before the Bankruptcy Court or the District Court or as set forth in the Motion to Prosecute.

  **1.29** **Chapter 11 Cases.** Chapter 11 Cases means the bankruptcy cases of SPHC and Bondex under Chapter 11 of the Bankruptcy Code, administratively consolidated by the Bankruptcy Court and captioned as In re SPHC, Inc. *et al.*, Case No. 10 11780 (JKF) (Jointly Administered).

  **1.30** **Claim.** Claim shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code as it pertains to "claims" against one or both Debtors.

  **1.31** **Claims and Balloting Agent.** Claims and Balloting Agent means Logan & Company, Inc., the claims, noticing and balloting agent in the Chapter 11 Cases.

  **1.32** **Class.** Class means a category of holders of Claims or Equity Interests described in Article IV below.

  **1.33** **Committee.** Committee means the official committee of asbestos personal injury claimants appointed in the Chapter 11 Cases, as such committee may be reconstituted from time to time.

  **1.34** **Commencement Date.** Commencement Date means May 31, 2010, the date on which each of the Debtors commenced their respective Chapter 11 Cases.

  **1.35** **Confirmation Date.** Confirmation Date means the date the Confirmation Order is entered on the Docket.

  **1.36** **Confirmation Hearing.** Confirmation Hearing means the hearing to be held by the Bankruptcy Court and/or District Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

  **1.37** **Confirmation Notice.** Confirmation Notice means the notice of entry of the Confirmation Order, a copy of the notice will be included in a substantially finalized form as part of the Confirmation Order.

  **1.38** **Confirmation Order.** Confirmation Order means, as the context requires, an order or orders of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code or affirming an order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code. The Confirmation Order includes any exhibits thereto, including but not limited to the Confirmation Notice and the Effective Date Notice.

**1.39    Control.**  Control means the possession, directly or indirectly, of the power to direct or cause the direction of management, policies, or activities of an Entity, whether through ownership of voting securities, by contract, or otherwise.

**1.40    Cure Amount.**  Cure Amount means any amount required to be paid as a condition for the assumption of an Executory Contract pursuant to section 365(b) of the Bankruptcy Code.

**1.41    Debtors.**  Debtors means collectively, SPHC and Bondex in the Chapter 11 Cases.

**1.42    Debtors in Possession.**  Debtors in Possession means SPHC and Bondex, as debtors in possession in the Chapter 11 Cases pursuant to section 1101(1) of the Bankruptcy Code.

**1.43    Demand.**  Demand means any demand for payment, present or future, within the meaning of section 524(g)(5) of the Bankruptcy Code, that:  (a) was not a Claim during the Chapter 11 Cases; (b) arises out of same or similar conduct or events that gave rise to the Asbestos PI Claims; and (c) pursuant to the Plan, is to be paid by the Asbestos PI Trust.

**1.44    DIP Agreement.**  DIP Agreement means the credit agreement entered into in connection with the order of the Bankruptcy Court entitled Final Order (A) Authorizing Debtors to Obtain Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§105 and 364(c); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. §352; and (C) Authorizing Debtors to Enter into Agreements with Wachovia Capital Finance Corporation (New England), as such credit agreement may be modified or amended by the parties or order of the Bankruptcy Court.

**1.45    DIP Claim.**  DIP Claim means any claim of the DIP Lender arising out of the DIP Agreement.

**1.46    DIP Lender.**  DIP Lender means the lender under the DIP Agreement.

**1.47    Disallowed.**  Disallowed means, when used with respect to a Claim against SPHC or Bondex, (other than an Asbestos PI Claim), a Claim that:  (a) is disallowed in whole or in part (but solely to the extent of such disallowance) by Final Order; or (b) has been withdrawn, in whole or in part, by the holder thereof.

**1.48    Disclosure Statement.**  Disclosure Statement means the written disclosure statement that relates to the Plan, including the exhibits and schedules thereto, as approved by the Bankruptcy Court on [_____] as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

**1.49    Disputed.**  Disputed means, with respect to a Claim (including any Administrative Claim but excluding all Settled Asbestos PI Claims and Asbestos PI Claims) or Interest, a Claim or Interest, or any portion thereof:  (a) that is neither Allowed pursuant to the Plan or a Final Order nor deemed Allowed pursuant to section 502, 503 or 1111 of the

Bankruptcy Code, (b) that is listed in the Schedules as disputed, contingent, or unliquidated and which has not been resolved by written agreement with the Plan Proponents or a Final Order, (c) for which a proof of Claim or Interest has been timely Filed or deemed timely Filed with the Bankruptcy Court as to which any party in interest has timely filed an objection or request for estimation in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or resolved or determined by a Final Order; or (d) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim or Interest has been determined by Final Order in such other forum and Allowed by Final Order.  Prior to the expiration of the time within which to object to such Claim or Interest set forth herein or otherwise established by order of the Bankruptcy Court, a Claim or Interest shall be considered Disputed to the extent that (i) the amount of the Claim or Interest specified in a proof of Claim or Interest exceeds the amount listed in the Schedules and/or (ii) the Claim or Interest is classified differently in the proof of Claim or Interest than in the Schedules. To the extent an objection to the allowance of only a portion of a Claim or Interest has been timely filed, such Claim or Interest shall be a Disputed only to the extent of the portion subject to objection.

**1.50    Distribution Record Date.**  Distribution Record Date means the record date for determining an entitlement to receive Distributions under the Plan on account of Allowed Claims, which shall be the Confirmation Date.

**1.51    Distribution.**  Distribution means any:  (a) Cash; (b) property; or (c) interest in property to be paid or distributed hereunder to the holders of Allowed Claims or Equity Interests, not including the Asbestos PI Claims.

**1.52    Distribution Date.**  Distribution Date means the date which is as soon as reasonably practicable after the later of:  (i) the Effective Date; or (ii) in the case of a Impaired Claim (other than an or a Settled Asbestos PI Claim or Asbestos PI Claim) that is not yet Allowed as of the Effective Date, the date that such Claim becomes Allowed.

**1.53    District Court.**  District Court means the United States District Court for District of Delaware.

**1.54    Docket.**  Docket means the docket in the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court.

**1.55    Effective Date.**  Effective Date means a date jointly selected by the Plan Proponents, which date shall be a Business Day and shall occur on or as soon as practicable after the first Business Day on which all conditions to the consummation of the Plan set forth in Section 13.2 have been satisfied or waived.

**1.56    Effective Date Notice.**  Effective Date Notice means the notice to be delivered after it is determined by a Final Order whether the Debtors' liabilities exceed their assets and if Alternative A or Alternative B of the Plan will be implemented.  The Effective Date Notice will be included in a substantially finalized form as part of the Confirmation Order.

**1.57    Encumbrance.**  Encumbrance means, with respect to any property (whether real or personal, or tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property (including any

conditional sale or other title retention -agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

**1.58    Entity.**  Entity means any person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

**1.59    Equity Interests.**  Equity Interests means Bondex Equity Interests and SPHC Equity Interests.

**1.60    Estates.**  Estates means the estates created under section 541 of the Bankruptcy Code in the Chapter 11 Cases.

**1.61    Exculpated Parties.**  Exculpated Parties means the Committee and the Future Claimants' Representative, and with respect to each of the foregoing, their current or former members, Professionals, employees, directors, officers, agents, attorneys, accountants, financial advisors, representatives or other professionals, solely in their capacity as such.

**1.62    Executory Contract.**  Executory Contract means any unexpired lease or executory contract of SPHC or Bondex that is subject to treatment under section 365 of the Bankruptcy Code.

**1.63    Exit Financing.**  Exit Financing means one or more financing agreement(s), or commitment(s) as the Debtors shall obtain (1) to provide the Reorganized Debtors with a letter of credit and working capital availability sufficient to implement the Plan; (2) to satisfy any and all outstanding obligations, existing as of the Effective Date, arising out of post-petition financing agreements of the Debtors; and (3) to Plan obligations to the extent permitted by the lenders under such financing agreement(s) or commitment(s).

**1.64    Federal Judgment Rate.**  Federal Judgment Rate means the federal judgment rate of interest in existence on the Commencement Date of 0.36%.

**1.65    File, Filed, or Filing.**  File, Filed, or Filing each means file, filed or filing on the Docket of the Bankruptcy Court or with the Bankruptcy Court's authorized representative.

**1.66    Final Judgment or Final Order.**  Final Judgment or Final Order means a judgment or an order, as the case may be, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, that if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought; (a)(i) such judgment or order shall have been affirmed by the highest court to which such judgment or order was appealed; or (ii) certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; or (b) such appeal, writ of certiorari, or request for reargument or rehearing shall have been dismissed with prejudice by the filing or seeking party.

**1.67    Future Claimants' Representative.**  Future Claimants' Representative means Eric D. Green (or any court-appointed alternative or successor), in his capacity as the court-appointed legal representative for all Future Demand Holders for the purpose of protecting their interests.

**1.68    Future Demand Holder.**  Future Demand Holder means a holder of a Demand, whether now known or hereafter discovered.

**1.69    General Unsecured Claim.**  General Unsecured Claim means a claim against SPHC or Bondex that is not secured by a valid and enforceable Lien against property of SPHC or Bondex and that is not an Administrative Expense Claim, a Priority Claim, a DIP Claim, a Priority Tax Claim, an Intercompany Claim, a Settled Asbestos PI Claim, or an Asbestos PI Claim.

**1.70    Impaired.**  Impaired means, when used with respect to a Claim or an Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.71    Indirect Asbestos PI Claim.**  Indirect Asbestos PI Claim means those cross-claims, contribution claims, subrogation claims, reimbursement claims, indemnity claims, and other similar direct or indirect Claims, Demands, or allegations against SPHC or Bondex, whether or not any such Claim, Demand, debt, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether or not the facts of or legal bases therefore are known or unknown, and whether in the nature of or sounding in tort, or under contract or implied by law (as defined by the applicable nonbankruptcy law of the relevant jurisdiction), warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law, equity, or admiralty for, arising out of, resulting from, or relating to directly or indirectly, death, bodily injury, sickness, disease, or other personal or emotional injuries to persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos - including asbestos-containing products, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any way used by SPHC or Bondex or any Entity for whose products or operations SPHC or Bondex has liability or is alleged to have liability - to the extent arising, directly or indirectly from acts, omissions, business or operations of SPHC or Bondex (including the acts, omissions, business or operations of any other Entity for whose products or operations SPHC or Bondex has liability, to the extent of SPHC or Bondex's liability for such acts, omissions, business, or operations) (including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of SPHC or Bondex or any other Entity for whose products or operations SPHC or Bondex has liability or is alleged to have liability or any conduct for which SPHC or Bondex, or any other Entity for whose products or operations SPHC or Bondex has liability or is alleged to have liability, may be deemed to have strict liability under any applicable law) including claims, debts, obligations, or liabilities for compensatory damages, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages.

**1.72    Intercompany Claim.**  Intercompany Claim means any Claim held between the Debtors, by an SPHC or Bondex Affiliate against SPHC or Bondex, or by SPHC or Bondex against an SPHC or Bondex Affiliate.

**1.73    International.**  International means RPM International, Inc., the non-debtor parent of SPHC and any of its affiliates that are not a Debtor in the Chapter 11 Cases.

**1.74    International-Related Alter Ego Claims.**  International-Related Alter Ego Claims means any and all actions, claims, rights, remedies, suits and causes of action, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, to the extent such claims may exist now or in the future, seeking to hold International liable, including claims based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, waste, conspiracy or otherwise, upon which International is liable, or is allegedly liable.  For purposes of this definition, "veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, waste, conspiracy or otherwise" shall include, but not be limited to, (a) fraudulent transfer or fraudulent conveyance claims under applicable state or federal law, (b) denuding the corporation claims, (c) continuation of business enterprise claims, (d) single business enterprise claims, (e) claims that SPHC or Bondex was the predecessor, and (f) trust fund claims.

**1.75    Lien.**  Lien means any charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.76    Liquidate.**  Liquidate means to determine a payable value for a Settled Asbestos PI Claim or an Asbestos PI Claim in accordance with the provisions governing the Asbestos PI Trust, but not to pay such a claim.

**1.77    Motion to Prosecute**.  Motion to Prosecute means the Motion of the Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative for Entry of an Order Granting Leave, Standing and Authority to Prosecute Claims on Behalf of the Debtors' Estates Filed as well as any amendments, supplements, or addendums thereto.

**1.78    New SPHC Stock.**  New SPHC Stock means the stock of Reorganized SPHC that will be issued to the Asbestos PI Trust pursuant to Section 10.1 of Alternative A the Plan in connection with the Effective Date of the Plan.  The Asbestos PI Trust will be the owner of 100% of the New SPHC Stock.

**1.79    Ordinary Course of Business.**  Ordinary Course of Business shall have the meaning provided under section 363 of the Bankruptcy Code and judicial interpretations thereof.

**1.80    Payment Percentage.**  Payment Percentage means the percentage of the Liquidated value that holders of Settled Asbestos PI Claims and Asbestos PI Claims will be entitled to receive from the Asbestos PI Trust pursuant to the Asbestos PI Trust Distribution Procedures.

**1.81    Plan.**  Plan means this plan proposed by the Plan Proponents under Chapter 11 of the Bankruptcy Code, including any supplements, schedules and exhibits hereto, either in its

present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof.

**1.82    Plan Documents.** Plan Documents means, collectively, (a) the Disclosure Statement, (b) any document contained in the Plan Supplement, (c) all of the exhibits and schedules attached to the Plan, the Disclosure Statement and/or the Plan Supplement; (d) the Asbestos PI Trust Documents; and (e) any other document necessary to implement the Plan.

**1.83    Plan Proponents.** Plan Proponents means the Committee and the Future Claimants' Representative working together jointly.

**1.84    Priority Claim.** Priority Claim means any Claim entitled to priority pursuant to section 507 of the Bankruptcy Code other than an Administrative Expense Claim, a DIP Claim, a General Unsecured Claim, or a Priority Tax Claim.

**1.85    Priority Tax Claim.** Priority Tax Claim means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.86    Professional.** Professional means any person retained or to be compensated pursuant to section 327, 328, 330, 503(b), 506(b), or 1103 of the Bankruptcy Code, including the Future Claimants' Representative and any Entity retained thereby.

**1.87    Proof of Claim.** Proof of Claim means any proof of claim or interest filed with the Bankruptcy Court or the Claims and Balloting Agent pursuant to Bankruptcy Code section 501 and Rule 3001 or 3002 of the Bankruptcy Rules that asserts a Claim against SPHC or Bondex

**1.88    Protected Parties.** Protected Parties means any the following parties: the Debtors; the Reorganized Debtors; any SPHC or Bondex Affiliate, any Entity that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any of the Debtors, the Reorganized Debtors, any SPHC or Bondex Affiliate or any of their assets; any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to the Debtors, the Reorganized Debtors, any SPHC or Bondex Affiliate, or the Asbestos PI Trust or to a successor to, or transferee of, any assets of the Debtors, the Reorganized Debtors, any SPHC or Bondex Affiliate, or the Asbestos PI Trust (but only to the extent that liability is asserted to exist by reason of such Entity becoming such a lender or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired); or any employee or officer of the Reorganized Debtors or any SPHC or Bondex Affiliate, to the extent he, she, or it is alleged to be directly or indirectly liable for any Asbestos PI Trust Claim.

**1.89    Rejection Claim.** Rejection Claim means any Claim for damages under section 502(g) of the Bankruptcy Code resulting from the rejection of an executory contract or unexpired lease by SPHC or Bondex.

**1.90    Reorganized Bondex.** Reorganized Bondex means Bondex on and after the Effective Date.

**1.91    Reorganized Debtors.**  Reorganized Debtors means, collectively, Reorganized Bondex and Reorganized SPHC.

**1.92    Reorganized SPHC.**  Reorganized SPHC means SPHC on and after the Effective Date.

**1.93    Schedules.**  Schedules means, the schedules of assets and liabilities and the statements of financial affairs of SPHC or Bondex as filed with the Bankruptcy Court by SPHC or Bondex on July 19, 2010 in accordance with section 521 of the Bankruptcy Code, as such schedules and statements may be amended or supplemented from time to time.

**1.94    Secured Claim.**  Secured Claim means a Claim that is: (a) secured in whole or in part as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable law, or (b) subject to setoff under section 553 of the Bankruptcy Code or other applicable law, but, with respect to both (a) and (b) above, only to the extent of the value of the holder of such Claim's interest in the particular Estate's interest in the property securing any such Claim or the amount subject to setoff, as the case may be.

**1.95    Settled Asbestos PI Claims.**  Settled Asbestos PI Claims means those claims in which one or both of the Debtors agreed to a settlement amount to resolve an asserted asbestos-related liability but which amount remained unpaid as of the Commencement Date.  For the purpose of this definition, Settled Asbestos PI Claims are mutually exclusive from and separate to the Asbestos PI Claims.

**1.96    Solicitation Procedures Order.**  Solicitation Procedures Order means the Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Procedures to Solicit Acceptances of the Proposed Plan; (III) Scheduling a Confirmation Hearing and (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan, entered by the Bankruptcy Court on [_____].

**1.97    SPHC.**  SPHC means Specialty Products Holding Corp., an Ohio corporation and holding company parent of Bondex.

**1.98    SPHC Equity Interest.**  SPHC Equity Interest means any right, title and interest in SPHC existing as of the Commencement Date, 100% of which is owned by International.

**1.99    SPHC or Bondex Affiliate.**  SPHC or Bondex Affiliate means each of the Entities listed on Exhibit [] hereto, as may be amended from time to time prior to the Effective Date.

**1.100    SPHC or Bondex Asbestos PI Claim.**  SPHC or Bondex Asbestos PI Claim means any Claim, Demand, or allegation or portion thereof against, or any debt, liability, or obligation of, SPHC or Bondex, whether now existing or hereafter arising, whether in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty for, arising out of, or resulting from, directly or indirectly, death, bodily injury, sickness, disease, or any other actual or alleged personal injury, physical, emotional or otherwise, to persons, caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to

asbestos—including, without limitation, asbestos-containing products, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any other way used by SPHC or Bondex or any other Entity for whose products or operations SPHC or Bondex has liability or is alleged to have liability - to the extent arising, directly or indirectly, from acts, omissions, business, or operations of SPHC or Bondex (including the acts, omissions, business, or operations of any other Entity for whose products or operations SPHC or Bondex has liability, to the extent of SPHC or Bondex's liability for such acts, omissions, business, or operations) (including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of SPHC or Bondex or any other Entity for whose products or operations SPHC or Bondex has liability or is alleged to have liability, or any conduct for which SPHC or Bondex, or any other Entity for whose products or operations SPHC or Bondex has liability or is alleged to have liability, may be deemed to have strict liability under any applicable law) including all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages). Notwithstanding the foregoing, a Claim, Demand, allegation, debt, liability or obligation shall only be a SPHC or Bondex Asbestos PI Claim to the extent of SPHC or Bondex's liability for that Claim, Demand, allegation, debt, liability or obligation.  For the purpose of this definition, SPHC or Bondex Asbestos PI Claim does not include any Claim by any present or former employee of a Debtor for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer; provided further that the SPHC or Bondex Asbestos PI Claims do not include any Settled Asbestos PI Claims which claims are separately classified and treated under the Plan.

**1.101   SPHC or Bondex Asbestos PI Demand.**  SPHC or Bondex Asbestos PI Demand means a demand against either SPHC and/or Bondex, as "demand" is used and defined in section 524(g)(5) of the Bankruptcy Code, including a demand for payment, present or future, that (i) was not a Claim prior to the Effective Date; (ii) arises out of the same or similar conduct or events that gave rise to an Asbestos PI Claim; and (iii) pursuant to the Plan, is to be satisfied by the Asbestos PI Trust.

**1.102   Stay Extension Order.**  Stay Extension Order means the order entered by the Bankruptcy Court in adversary proceeding number 10-51085 extending the automatic stay provided pursuant to section 362(a) of the Bankruptcy Code as such order is modified.

**1.103   Trust Distribution Effective Date.**  Trust Distribution Effective Date means a date selected by the Plan Proponents, acting jointly, which date shall be on or as soon as practicable after the first Business Day on which all conditions to the consummation of the Plan set forth in Section 13.3 of Alternative A have been satisfied or waived.

**1.104   Unimpaired.**  Unimpaired means a Claim or Equity Interest, or a Class of Claims or Equity Interests, as appropriate, that is not Impaired under the Plan.

**1.105   United States Trustee.**  United States Trustee means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the District of Delaware.

## ARTICLE II

## MODIFICATION OR REVOCATION

**2.1     Modification of Plan.**  The Plan Proponents, acting jointly, may alter, amend, or modify the Plan or any Schedules or Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended Schedules or Exhibits in the Plan or the Plan Supplement, <u>provided</u>, that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with section 1125 of the Bankruptcy Code, to the extent necessary.  Further, the Plan Proponents, acting jointly, may alter, amend, or modify the Plan or any Schedules or Exhibits thereto at any time after entry of the Confirmation Order and before the Plan's substantial consummation, <u>provided</u>, that:  (a) the Plan, as modified, altered, or amended, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and finds that the circumstances warrant such modification.  A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, if any, such holder changes its previous acceptance or rejection.

**2.2     Revocation or Withdrawal of the Plan.**  The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan Proponents, acting jointly, revoke or withdraw the Plan, or if confirmation of the Plan does not occur, then the Plan shall be null and void in all respects; any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Equity Interest or Class of Claims or Equity Interests), any assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall prejudice in any manner the rights of any Entity in any proceedings involving the Debtors; or constitute an admission of any sort by the Plan Proponents, or any other Entity.

## ARTICLE III

## MISCELLANEOUS PROVISIONS

This Section applies to both Alternative A and Alternative B of the Plan.

**3.1     Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or a Schedule or Exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, the rights, duties and obligations arising under the Plan, and the instruments agreements and other documents executed in connection with the Plan, shall be governed by, and construed and

enforced in accordance with, the internal laws of the State of Delaware without giving effect to the principles of conflicts of law thereof.

3.2    **Administrative Expense Claims Bar Date.**  All Administrative Expense Requests must be made by application filed with the Bankruptcy Court and served no later than the Administrative Expense Claims Bar Date.  In the event that any party with standing objects to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim.  Notwithstanding the foregoing, (a) no application seeking payment of an Administrative Expense Claim need be filed with respect to an undisputed post-petition obligation which was paid or is payable by a Debtor in the Ordinary Course of Business; provided, however, that in no event shall a post-petition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the Ordinary Course of Business; and (b) no application seeking payment of an Administrative Expense Claim need be filed with respect to Cure owing under an executory contract or unexpired lease if the amount of Cure is fixed by Final Order.

3.3    **Notices.**  To be effective, all notices, requests and demands to or upon the Committee, or, as applicable, the Plan Proponents, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and addressed as follows:

> If to the Debtors:
>
> [ TBD ]

with a copy (which alone will not constitute notice) to:

> Gregory M. Gordon, Esquire
> Jones Day
> 2727 North Harwood Street
> Dallas, TX 75201-1515

If to the Future Claimants' Representative:

> Professor Eric D. Green (ret.)
> Resolutions, LLC
> 222 Berkeley Street, Suite 1060
> Boston, MA 02116

with a copy (which alone will not constitute notice) to:

> James L. Patton, Esquire
> Edwin J. Harron, Esquire
> Young Conaway Stargatt & Taylor, LLP
> Rodney Square
> 1000 North King Street
> Wilmington, DE 19801

If to the Committee:

> Natalie D. Ramsey, Esq.
> Montgomery, McCracken, Walker & Rhoads LLP
> 1105 North Market Street
> 15th Floor
> Wilmington, DE  19801

**3.4     Plan Supplement.**  Any and all Exhibits, lists, or Schedules referred to herein or in the Disclosure Statement but not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the deadline established by the Bankruptcy Court for the filing and service of objections to the Plan. Thereafter, the Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours and at an internet site maintained by the Claims and Balloting Agent, with the web address set forth in the Disclosure Statement.  Claimants also may obtain a copy of the Plan Supplement, once filed, from the Plan Proponents by written request sent to the following address:

> Logan & Company, Inc.
> 546 Valley Road
> Upper Montclair, NJ 07043

**3.5     Inconsistencies.**  To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.  To the extent the Plan is inconsistent with the Confirmation Order, the provisions of the Confirmation Order shall be controlling.

**3.6     Reservation of Rights.**  If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Cases are and shall be reserved in full.  Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Cases shall be bound or deemed prejudiced by any such concession or settlement.  Moreover, if the Plan does not become effective, no party in interest in the Chapter 11 Cases shall be bound or prejudiced by any representation, written or oral, made by any party in connection with the Plan or the negotiation or prosecution of the Plan, including without limitation the representations made in the Plan, the Disclosure Statement or the Confirmation Order.

**3.7     Tax Reporting and Compliance.**  In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Debtors and/or the Asbestos PI Trustee, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  No holder of an Allowed Claim against the Debtors shall effectuate any withholding with respect to the cancellation or satisfaction of such Allowed Claim under the Plan.

**3.8     Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes as provided in such section 1146(a).

**3.9     Binding Effect.**  The rights, benefits and obligations of any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity (including, but not limited to, any trustee appointed for either Debtor under Chapters 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Chapter 11 Cases to one or more cases under Chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

**3.10     Severability.**  Upon the agreement of the Plan Proponents any provision of the Plan, the Confirmation Order, or any of the Exhibits to the Plan that is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction may be deemed ineffective as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated to the extent of such prohibition, unenforceability, or invalidation, without invalidating the effectiveness of the remaining provisions of the Plan, the Plan Documents, the Confirmation Order, and the Exhibits to the Plan or affecting the validity or enforceability of such provision and such remaining provisions in any other jurisdiction.

**3.11     Further Authorizations.**  The Plan Proponents, acting jointly, and, after the Effective Date, the Asbestos PI Trustee under Alternative A (or the Reorganized Debtors under Alternative B), if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings as each deems necessary to carry out, further the intentions and purposes of, and to give full effect to the provisions of, the Plan.

**3.12     Payment of Statutory Fees.**  All fees due and owing under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, as pro-rated to the Effective Date, shall be paid on or before the Effective Date.  The Asbestos PI Trustee under Alternative A (or the Reorganized Debtors under Alternative B) shall pay all such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases, as pro-rated to the closing of the Chapter 11 Cases.

**3.13    Prepayment.**  Except as otherwise provided in the Plan, the Plan Documents, or the Confirmation Order, any Allowed Claims may be prepaid; provided, that any such prepayment shall not violate or otherwise prejudice the relative priorities and parities among the Classes of Claims.

**3.14    Effective Date Actions Simultaneous.**  Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  Actions required to be taken after the Effective Date or as soon as thereafter as is reasonably practicable shall be deemed to have been made on the Effective Date.

**3.15    General Statements.**  Statements of a general nature set forth in this Plan shall not be construed to limit or restrict the specific provisions herein.

**3.16    Effective Date Notice**.  The Plan Proponents will file and serve an Effective Date Notice after it is concluded by Final Order whether Alternative A or Alternative B of the Plan will be implemented.


**THE OFFICIAL COMMITTEE OF
ASBESTOS PERSONAL INJURY
CLAIMANTS**


Dated:  May 14, 2012          By:    /s/ John Cooney
                                      John Cooney, Esq., Chairperson


**THE FUTURE CLAIMANTS'
REPRESENTATIVE**


Dated:  May 14, 2012          By:    /s/ Eric D. Green
                                      Eric D. Green

**ALTERNATIVE A**

**ARTICLE IV**

**ADMINISTRATIVE EXPENSE, PRIORITY TAX AND DIP CLAIMS**

In the event the Court determines that SPHC's and Bondex's asbestos liabilities exceed the value of SPHC's assets, the following subsections shall govern the Plan and no part of Alternative B will govern the Plan.

**4.1    Administrative Expense Claims.**  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, or as otherwise provided for in the Plan, in full satisfaction, settlement and discharge of and in exchange for such Claims, each Allowed Administrative Expense Claim shall be paid in full and in Cash on, or as soon thereafter as is reasonably practicable, the latest of:  (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date the Administrative Expense Claim becomes an Allowed Administrative Expense Claim; and (c) the date the Allowed Administrative Expense Claim becomes due and payable according to its terms; provided however, that the Allowed Administrative Expense Claims representing liabilities incurred by a Debtor in Possession in the Ordinary Course of Business or liabilities under loans or advances to or other obligations incurred by a Debtor in Possession may be paid in the Ordinary Course of Business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

From and after the Effective Date, the Asbestos PI Trustee, the Committee, the FCR and Trust Advisory Committee may collectively agree, in their sole and absolute discretion, may collectively settle Administrative Expense Claims without Bankruptcy Court approval.  The Asbestos PI Trustee, the Committee, the FCR and Trust Advisory Committee shall each have the right to object to any Administrative Expense Claim by the later of:  (a) 180 days after the Effective Date, subject to such extensions as may be granted from time to time by the Bankruptcy Court; and (b) 30 days after the date such Administrative Expense Claim is filed, subject to such extensions as may be granted from time to time by the Bankruptcy Court.  Unless the Committee and/or or the Asbestos PI Trustee timely objects to an Administrative Expense Claim, such Claim shall be deemed Allowed in the amount requested.  In the event that the Committee and/or the Asbestos PI Trustee timely objects to an Administrative Expense Claim, the parties may confer in an attempt to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

All entities seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330 or 503 of the Bankruptcy Code (the "Professional Fee Claims") shall (a) file no later than sixty days (60) days after the Effective Date, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the first Business Day after the date that is thirty (30) calendar days after the date such Professional Fee Claim becomes an Allowed Administrative Expense Claim; or (ii) upon such other terms as may be mutually agreed upon by such holder

and the Committee. Objections to any applications for Professional Fee Claims can be filed by the United States Trustee and any party in interest so long as such objections are filed within the time frame set forth in the notice served with the application seeking payment of Professional Fee Claims, unless an extension is granted by the applicant. The Asbestos PI Trustee is authorized to pay compensation for services of Professionals rendered and reimbursement of expenses incurred after the Effective Date in the Ordinary Course of Business and without the need for Bankruptcy Court approval.

      **4.2**    **Priority Tax Claims.** Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by SPHC or Bondex prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim, if any, shall, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, receive in full satisfaction, settlement and discharge of and in exchange for such Allowed Priority Tax Claim, either of the following, at the sole and absolute discretion of the Committee and/or the Asbestos PI Trustee:  (a) Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim, on the later of:  (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable; and (iii) the date such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy law; or (b) regular installment payments in Cash (i) of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim; (ii) over a period ending not later than five (5) years after the Effective Date; and (iii) in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors under section 1122(b)).

      **4.3**    **DIP Claim.** The DIP Agreement will be terminated. In the event any sums are due and owing under the DIP Agreement, such Claim shall be paid, in full, in Cash on or before the Effective Date.

**ARTICLE V**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

      All Claims and Interests, except Administrative Claims, Priority Tax Claims, and DIP Claims are placed in the Classes and set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and DIP Claims have not been classified.

      Except for the unclassified Claims discussed in Article IV above, Section 5.1 of the Plan sets forth a designation of Classes of all Claims and Interests in accordance with section 1122(a) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent any portion of the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim or Interest qualifies within the description of that different Class. If a Claim or Interest is acquired or transferred, the Claim or Interest shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim or Interest. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, satisfied or released before the Effective Date.

**5.1    Classification.**  The categories of Claims and Equity Interests listed below, other than Administrative Expense Claims, Priority Tax Claims and the DIP Claim, are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | General Unsecured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 4 | Settled Asbestos PI Claims | Impaired | Yes |
| Class 5 | Asbestos PI Claims | Impaired | Yes |
| Class 6 | Intercompany Claims | Impaired | No (conclusively presumed to reject) |
| Class 7 | Claims Held by International | Impaired | No (conclusively presumed to reject) |
| Class 8 | Bondex Equity Interests | Impaired | No (conclusively presumed to reject) |
| Class 9 | SPHC Equity Interests | Impaired | No (conclusively presumed to reject) |

**5.2**    Class 1 – Priority Claims

(a)    Classification:  Class 1 consists of all Priority Claims against the Debtors.

(b)    Treatment:  On the Distribution Date, each holder of a Class 1 Allowed Priority Claim shall receive Cash equal to the Allowed amount of such Priority Claim.

(c)    Voting:  Class 1 is Unimpaired and each holder of an Allowed Class 1 Claim is not entitled to vote to accept or reject the Plan.

**5.3**    Class 2 – Secured Claims

(a)    Classification:  Class 2 consists of all Secured Claims against the Debtors.

(b)    Treatment:  At the option of the Plan Proponents and in accordance with section 1124 of the Bankruptcy Code, all Allowed Secured Claims in Class 2 will be treated pursuant to one of the following alternatives:  (i) the Plan will leave unaltered the legal, equitable, and contractual rights to which each Allowed Secured Claim in Class 2 entitles the holder; (ii) the holder of an Allowed Secured Claim shall receive such other treatment as the Plan Proponents and the holder shall agree; or (iii) all of the collateral for such Allowed Secured Claim will be surrendered to the holder of such Claim on the Effective Date or as soon as practicable thereafter.

(c)      Voting:  Class 2 is Unimpaired and each holder of an Allowed Class 2 Claim is not entitled to vote to accept or reject the Plan.

**5.4**      Class 3 – General Unsecured Claims

(a)      Classification:  Class 3 consists of all General Unsecured Claims against the Debtors.

(b)      Treatment:  Each holder of an Allowed Class 3 General Unsecured Claim shall receive:  (i) Cash equal to the Allowed amount of such General Unsecured Claim plus interest at the Federal Judgment Rate on the Distribution Date; or (ii) the holder of an Allowed General Unsecured Claim shall receive such other treatment as the Plan Proponents and the holder shall agree.

(c)      Voting:  Class 3 is Unimpaired and each holder of an Allowed Class 3 Claim is not entitled to vote to accept or reject the Plan.

**5.5**      Class 4 – Settled Asbestos PI Claims

(a)      Classification:  Class 4 consists of all Settled Asbestos PI Claims.

(b)      Treatment:  As of the Effective Date, liability for all Class 4 Settled Asbestos PI Claims shall be automatically and without further act, deed or order, assumed by the Asbestos PI Trust.  Except as expressly provided in any agreements entered into among a holder of a Class 4 Settled Asbestos PI Claim and the Asbestos PI Trust, the holders of Settled Asbestos PI Claims may elect to either: (a) receive an amount equal to the payment percentage established under the Asbestos PI Trust Distribution Procedures multiplied by the Allowed amount of the holder's claim as settled prior to the Commencement Date, or (b) forego any agreed settlement and be bound by Asbestos PI Trust Distribution Procedures in determining the amount of the Allowed Claim.

(c)      Voting:  Class 4 is Impaired and each holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

**5.6**      Class 5 – Asbestos PI Claims

(a)      Classification:  Class 5 consists of all Asbestos PI Claims.

(b)      Treatment:  As of the Effective Date, liability for all Class 5 Asbestos PI Claims shall be automatically and without further act, deed or order, assumed by the Asbestos PI Trust.  Except as expressly provided in any agreements entered into among a holder of a Class 4 Asbestos PI Claim and the Asbestos PI Trust, each Asbestos PI Claim shall be liquidated and, as appropriate, paid by the Asbestos PI Trust pursuant to and in accordance with the Asbestos PI Trust Distribution Procedures.

(c)      Voting:  Class 5 is Impaired and each holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

**5.7**    Class 6 – Intercompany Claims

(a)    Classification:  Class 6 consists of all Intercompany Claims.

(b)    Treatment:  As of the Effective Date, all Class 6 Intercompany Claims shall be cancelled and holders of Class 6 Intercompany Claims shall not be entitled to, and shall not receive or retain, any property or interest on account of such claims under the Plan.

(c)    Voting:  Class 6 is Impaired and is conclusively presumed to have rejected the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.8**    Class 7 – Claims of International

(a)    Classification:  Class 7 consists of all Claims held by International against one or more Debtors.

(b)    Treatment:  As of the Effective Date, all Class 7 Claims held by International against one or more of the Debtors shall be subordinated to the Claims of all other creditors and shall not be entitled to, and shall not receive or retain, any property or interest on account of such Claims under the Plan.

(c)    Voting:  Class 7 is Impaired and International is conclusively presumed to have rejected the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.9**    Class 8 – Bondex Equity Interests.

(a)    Classification:  Class 8 consists of all outstanding Bondex Equity Interests.

(b)    Treatment:  On the Effective Dave, all existing shares of outstanding Bondex Equity Interests shall be cancelled, annulled and extinguished.  The holder of the Class 8 Bondex Equity Interests shall not receive or retain any distribution on account of such Bondex Equity Interests under the Plan.

(c)    Voting:  Class 8 is Impaired and as each holder of a Bondex Equity Interest will not receive any distribution on account of its Bondex Equity Interests. Class 8 is conclusively presumed to have rejected the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.10**    Class 9 – SPHC Equity Interests.

(a)    Classification:  Class 9 consists of all outstanding SPHC Equity Interests.

(b)    Treatment:  On the Effective Dave, all existing shares of outstanding SPHC Equity Interests shall be cancelled, annulled and extinguished and the New SPHC Stock shall be issued to the Asbestos PI Trust pursuant to Section 10.1 of the Plan.  The holder of the Class 9 SPHC Equity Interests shall not receive or retain any distribution on account of such SPHC Equity Interests under the Plan.

(c)      Voting:  Class 9 is Impaired and as each holder of a SPHC Equity Interest will not receive any distribution on account of its SPHC Equity Interests. Class 9 is conclusively presumed to have rejected the Plan pursuant to section 1126 of the Bankruptcy Code.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
## REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

**6.1     Classes Entitled to Vote.**  Except as set forth below, each holder of an Allowed Claim, and each holder of a Claim that has been temporarily allowed for voting purposes, including each holder of a Settled Asbestos PI Claim or an Asbestos PI Claim, in each Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan unless such Impaired Class shall receive no distribution under the Plan, in which case, such Impaired Class shall be deemed to reject the Plan and shall not be entitled to vote to accept or reject the Plan.

Any holder of a Claim in an Unimpaired Class of Claims shall not be entitled to vote to accept or reject the Plan as each such holder is deemed to accept the Plan.

**6.2     Class Acceptance Requirement.**  Acceptance of the Plan by any Impaired Class of Claims shall be determined in accordance with section 1126 of the Bankruptcy Code and the terms of the Solicitation Procedures Order.

**6.3     Acceptance by Unimpaired Classes.**  Class 1 (Priority Claims), Class 2 (Secured Claims), and Class 3 (General Unsecured Claims), are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**6.4     Rejection by Rejecting Classes.**  Class 6 (Intercompany Claims), Class 7 (Claims held by International), Class 8 (Bondex Equity Interests), and Class 9 (SPHC Equity Interests) are Impaired and are conclusively presumed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code.

Solicitation of votes of holders of Claims in each of Class 1, Class 2, Class 3, Class 6 and Class 7 is not required.  Solicitation of votes of holders of Equity Interests in each of Class 8 and Class 9 is not required.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS
## OTHER THAN SETTLED ASBESTOS PI CLAIMS AND ASBESTOS PI CLAIMS

**7.1     Distributions.**  The Plan Proponents or their designee shall make all Distributions required to be made under the Plan as provided under this Article VII other than Distributions to be made to holders of Allowed Settled Asbestos PI Claims and Allowed Asbestos PI Claims.  All distributions to be made on account of Asbestos PI Claims shall be made in accordance with the terms of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures,

subject to the conditions for the Trust Distribution Effective Date as set forth in Section 13.3 having been previously satisfied.

      **7.2**    **Date of Distributions.**  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder on account of Allowed Claims (other than Settled Asbestos PI Claims and Asbestos PI Claims) shall be made by the Effective Date or as soon thereafter as is practicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

      **7.3**    **Postpetition Interest on Claims.**  Unless expressly provided for in the Plan, the Plan Documents and the Confirmation Order, or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or unless required by applicable bankruptcy law (including the fair and equitable rule), interest shall not accrue on or after the Commencement Date on account of any Claim.

      **7.4**    **Means of Cash Payment.**  At the option of the Plan Proponents or their designee, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in any applicable agreement.

      **7.5**    **Delivery of Distributions.**  Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed, as may be required, with the Bankruptcy Court, or on the books and records of SPHC, Bondex or their agents, or in a letter of transmittal, unless the Plan Proponents have been notified in writing of a change of address.

      If any mailing to a holder is returned as undeliverable, then no Distributions to such holder shall be made unless and until the Plan Proponents are notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder without interest.  A Cash Distribution that is not claimed by the expiration of six (6) months from the date that such Distribution would have been first attempted if a valid address were available shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Asbestos PI Trust, and the Claim of any holder to such Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Plan Proponents or their designee to attempt to locate any holder of an Allowed Claim.

      **7.6**    **Time Bar to Cash Payments.**  Checks issued by the Asbestos PI Trustee (to the extent it pertains to a Settled Asbestos PI Claim or an Asbestos PI Claim) in respect of Distributions on Allowed Claims shall be null and void if not presented for payment within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing to the issuer by the holder of the Allowed Claim or Allowed Asbestos PI Claim (to the extent it pertains to a Settled Asbestos PI Claim or an Asbestos PI Claim) to whom such check originally was issued on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check.  After expiration of the thirty (30) day period, all funds held on account of such void check shall, in the discretion of the issuer be used to satisfy the costs of administering and fully consummating the Plan or will become the

property of the Asbestos PI Trust (to the extent it pertains to a Settled Asbestos PI Claims or an Asbestos PI Claim), and the Claim of any holder to such Distributions shall be discharged and forever barred.

**7.7    Record Date for Holders of Claims.**  Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Rule 3001 of the Bankruptcy Rules, on or prior to the Distribution Record Date, shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Rule 3001 of the Bankruptcy Rules for objecting to such transfer has not expired by the Distribution Record Date.  If there is any dispute regarding the identity of the Entity entitled to receive a Distribution in respect of a Claim under the Plan, no Distribution need be made in respect of such Claim until such dispute has been resolved.

**7.8    Transfers of Claims.**  In the event that the holder of a Claim shall transfer such Claim on and after the Distribution Record Date, it shall immediately advise the Plan Proponents or the Asbestos PI Trust (to the extent it pertains to a Settled Asbestos PI Claim or an Asbestos PI Claim) in writing of such transfer.  The Asbestos PI Trust, as the case may be, shall be entitled to assume that no transfer of any Claim has been made unless and until written notice of a transfer has been actually received by the Asbestos PI Trust.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan, and, except as provided in a notice of transfer, the Asbestos PI Trust, as the case may be, shall be entitled to assume conclusively that the transferee named in any notice of transfer shall thereafter be vested with all rights and powers of the transferor of such Claim.

**7.9    Distributions after Effective Date.**  Distributions made after the Effective Date shall be deemed to have been made on the Effective Date.

**7.10    Fractional Cents.**  Notwithstanding any other provision in the Plan to the contrary, no payment of fractional cents will be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made will reflect a rounding of such fraction to the nearest whole penny (up or down), with fractions of more than half a penny being rounded up and fractions of half of a penny or less being rounded down.

**7.11    Setoff.**  The Plan Proponents (or the Asbestos PI Trust to the extent it pertains to a Settled Asbestos PI Claim or an Asbestos PI Claim) may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the applicable Debtor (or the Trust to the extent it pertains to a Settled Asbestos PI Claims or an Asbestos PI Claim) may hold against the holder of such Allowed Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, causes of action, debts or liabilities.

## ARTICLE VIII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    General Treatment.**  The Plan constitutes and incorporates a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to (a) assume, as of the Effective Date, all Executory Contracts to which a Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) reject all Executory Contracts identified in the Schedule of Rejected Contracts that will be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date.  Notice of the Confirmation Hearing shall constitute notice of any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection of such Executory Contract and any proposed Cure Amount.

**8.2    Cure of Payments and Release of Liability.**  Except as otherwise provided in a Final Order, pursuant to sections 365(a), (b), (c) and (f) of the Bankruptcy Code, all Cure Amounts that may require payment under section 365(b)(1) of the Bankruptcy Code under any Executory Contract that is assumed pursuant to a Final Order shall be paid within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Amounts that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Amount is Allowed by agreement of the parties or a Final Order.  If a party to an assumed Executory Contract has not filed an appropriate paper on or before the date of the Confirmation Hearing disputing any proposed Cure Amount, the cure of any other defaults, the promptness of the Cure Amount payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.  Any party to an assumed Executory Contract that receives full payment of a Cure Amount shall waive the right to receive any payment on a Class 3 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

**8.3    Bar to Rejection Damages.**  In the event that the rejection of an Executory Contract pursuant to the Plan results in damages to the non-Debtor party or parties to such Executory Contract, a claim for such damages shall be forever barred and shall not be enforceable against the Asbestos PI Trust, Reorganized SPHC, or their respective properties or interests in property, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for the Plan Proponents on or before (a) if such Executory Contract is rejected pursuant to Section 9.1 above, the later of:  (i) thirty (30) days after entry of the Confirmation Order; and (ii) thirty (30) days after the non-Debtor party receives notice of the rejection of such Executory Contract pursuant to Section 8.1 above; and (b) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion to reject, thirty (30) days after entry of such order.

**8.4    Administrative Services Agreement.**  The Administration Services Agreement shall be terminated on or prior to the Effective Date.  The Asbestos PI Trustee shall be

empowered to enter into any transition services agreement or other agreements as necessary to ensure the orderly transition of services set forth in the Administrative Services Agreement.

**8.5    Insurance Policies.**  All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, if any, to the extent necessary, are treated as executory contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of Claims covered by those insurance policies, subject to all rights, remedies and defenses of the Debtors under any agreements, insurance policies and applicable law.  To the extent any such policies provide coverage for Asbestos PI Claims, or Settled Asbestos PI Claims, the Debtors shall assign any rights under these policies to the Asbestos PI Trust.

## ARTICLE IX

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS OTHER THAN SETTLED ASBESTOS PI CLAIMS AND ASBESTOS PI CLAIMS

**9.1    Disputed Claims.**  All Disputed Claims against SPHC and Bondex shall be subject to the provisions of this Article IX.  All Settled Asbestos PI Claims and Asbestos PI Claims shall be resolved by the Asbestos PI Trust in accordance with Section 10.3 below, the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures; only the Asbestos PI Trust will have the right to object to and/or resolve Settled Asbestos PI Claims and Asbestos PI Claims; and all Settled Asbestos PI Claims and Asbestos PI Claims must be submitted solely to the Asbestos PI Trust for payment, which shall be in accordance with the Asbestos PI Trust Distribution Procedures.

**9.2    Objection to Claims.**  The Asbestos PI Trustee shall be entitled to file objections to Claims that have been or properly should have been brought in the Bankruptcy Court (other than Settled Asbestos PI Claims and Asbestos PI Claims), on or before the first (1st) anniversary of the Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same date may be extended from time to time by the Bankruptcy Court, and shall be authorized to settle, compromise, withdraw or litigate to judgment such objections without further approval of the Bankruptcy Court.

**9.3    Payments and Distributions with Respect to Disputed Claims.** Notwithstanding any other provision hereof, if any portion of a Claim (other than a Settled Asbestos PI Claim or an Asbestos PI Claim) is a Disputed Claim, no payment or Distribution provided for herein shall be made on account of such Claim, unless and until such Claim becomes an Allowed Claim.

**9.4    Estimation of Claims.**  The Plan Proponents and/or Asbestos PI Trustee, as the case may be, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim (not including any Settled Asbestos PI Claims or Asbestos PI Claims) for any reason pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or any party of the withstanding previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate such Claim at any time, including, without limitation, during the

pendency of litigation concerning any objection to any Claim or of any appeal relating thereto. Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE X

## MEANS FOR IMPLEMENTATION OF THE PLAN

**10.1    Generally.**  On the Confirmation Date, the Plan Proponents, acting jointly, shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement the provisions of the Plan, including, without limitation, the creation of the Asbestos PI Trust.

The Plan Proponents, acting jointly, will identify those executives who will be replaced on the Effective Date as well as their replacements.  These replacement individuals will be responsible for ensuring that the Debtors are fully and completely separated from their non-Debtor direct or indirect parent International, including, but not limited to separation of all administrative, bookkeeping, technological and other connections which exist between them.  As a condition of the Effective Date the Plan Proponents will also negotiate any necessary Exit Facility to provide capital for, among other things, implementation of the Plan.

From and after the Effective Date, Bondex shall be dissolved, the New SPHC Stock shall be issued to the Asbestos PI Trust and SPHC shall be governed pursuant to the Amended Certificate of Incorporation and the Asbestos PI Trust shall be governed by the Asbestos PI Trust Agreement.

**10.2    Transactions on the Effective Date.**  Immediately on the Effective Date, the Asbestos PI Trust shall be established and the events set forth in this Article X shall be deemed for all purposes to have occurred simultaneously.

**10.3    The Asbestos PI Trust.**

(a)    <u>Creation of the Asbestos PI Trust</u>.  On the Effective Date, the Asbestos PI Trust shall be created in accordance with the Plan Documents.  The Asbestos PI Trust is intended to constitute a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code and the regulations issued thereunder.

(b)    <u>Purpose of the Asbestos PI Trust</u>.  The purpose of the Asbestos PI Trust shall be to assume, Liquidate and, after the Trust Distribution Effective Date, resolve all liabilities determined to arise from, or relate to, the Settled Asbestos PI Claims and the Asbestos PI Claims (whether existing as of the Effective Date or arising at any time thereafter) and, after the Trust Distribution Effective Date, to use the Asbestos PI Trust Assets to pay holders of Asbestos PI Claims in accordance with the terms of the Asbestos PI Trust Agreement, the Asbestos PI Trust Distribution Procedures, the Plan and the Confirmation Order, in such a way as to provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, present Settled Asbestos PI Claims and Asbestos PI Claims and future Demands in substantially the same manner, and to otherwise comply in all respects with the requirements of section 524(g)(2)(B) of the Bankruptcy Code, but without extending any injunction provided

in this Plan to International or any other third party.  The Asbestos PI Trust shall have no liability for any Claim other than the Settled Asbestos PI Claims and the Asbestos PI Claims, which shall be resolved in accordance with the terms, provisions and procedures of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.  On the Effective Date, all right, title and interest in and to the Asbestos PI Trust Assets, and any proceeds thereof, will be transferred to, and vested in, the Asbestos PI Trust, free and clear of all Claims, Demands, Equity Interests, Encumbrances and other interests of any Entity without any further action of the Bankruptcy Court or any Entity, but subject to the remaining provisions of this Section 10.3.

(c)     Appointment of Asbestos PI Trustee.  The initial Asbestos PI Trustee of the Asbestos PI Trust shall be identified in the Plan Supplement.

(d)     Appointment of Future Claimants' Representative.  Eric D. Green shall serve as the Future Claimants' Representative.

(e)     Appointment of the Asbestos PI Trust Advisory Committee.  The Asbestos PI Trust Advisory Committee shall be established pursuant to the Asbestos PI Trust Agreement.  The Asbestos PI Trust Advisory Committee shall have three (3) members and shall have the functions, duties and rights provided in the Asbestos PI Trust Agreement.  The Committee shall select the initial members of the Asbestos PI Trust Committee and disclose the names thereof in the Plan Supplement.

(f)     Limitation on Incurrence of Costs Prior to Trust Distribution Effective Date.  During the period on and after the Effective Date but prior to the Trust Distribution Effective Date, the Asbestos PI Trust shall not incur costs (defined broadly to include all obligations, including salaries, disbursements, expenses, and all other costs) in an aggregate total amount no greater than $300,000.

(g)     Payment of Settled Asbestos PI Claims and Asbestos PI Claims.  Prior to the Trust Distribution Effective Date, the Asbestos PI Trust shall not pay any Settled Asbestos PI Claims or Asbestos PI Claims.  After the Trust Distribution Effective Date, the Asbestos PI Trust shall pay Settled Asbestos PI Claims and Asbestos PI Claims that have been determined to be payable pursuant to the provisions governing the Asbestos PI Trust.

(h)     Contributions to the Asbestos PI Trust.  On the Effective Date, the Asbestos PI Trust Contribution and the New SPHC Stock shall be conveyed to the Asbestos PI Trust.

(i)     Transfer of Claims and Demands to the Asbestos PI Trust.  On the Effective Date, all liabilities, obligations, and responsibilities relating to the Settled Asbestos PI Claims, Asbestos PI Claims and Demands shall be transferred and channeled to the Asbestos PI Trust and shall be satisfied solely by the assets held by the Asbestos PI Trust.  The Asbestos PI Trust shall have no liability for any Claims other than the Settled Asbestos PI Claims and Asbestos PI Claims, and no Claims other than the Settled Asbestos PI Claims and Asbestos PI Claims shall be transferred and channeled to the Asbestos PI Trust.

(j)     Discharge of Liabilities to Holders of the Asbestos PI Claims.  The transfer to, vesting in, and assumption by the Asbestos PI Trust of the Asbestos PI Trust Assets,

on or after the Effective Date, as contemplated by the Plan, and the occurrence of the Trust Distribution Effective Date shall, among other things, discharge all obligations and liabilities of the Debtors, their Estates, and the SPHC or Bondex Affiliates for and in respect of all the Settled Asbestos PI Claims, Asbestos PI Claims as of the Trust Distribution Effective Date.

(k)     <u>Investment Policy</u>.  Prior to the Trust Distribution Effective Date, except as otherwise authorized by prior written consent of each of the Asbestos PI Trustee, the Asbestos PI Trust Advisory Committee, and the Future Claimants' Representative, funds shall be invested in money market funds (a) the managers of which have a long term issuer rating of at least Aa3 or AA-, respectively, by Moody's Investor Services and Standard & Poor's, and (b) that invest exclusively in securities that (i) are issued by the United States Treasury or are directly and fully guaranteed or insured by the United States Government or any agency or instrumentality thereof, (ii) have maturities of not more than three (3) years from the date of acquisition, and (iii) are rated Aaa and AAA, respectively, by Moody's Investor Services and Standard & Poor's.  After the Trust Distribution Effective Date, investment of monies held in the Asbestos PI Trust shall be administered in the manner consistent with the standards set forth in the Uniform Prudent Investor Act drafted by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995, subject to such limitations and provisions as set forth in the Asbestos PI Trust Agreement.

(l)     <u>Transfers to the Asbestos PI Trust</u>.  On the Effective Date, all right, title, and interest in and to the Asbestos PI Trust Assets shall be automatically, and without further act or deed, transferred to, vested in and assumed by the Asbestos PI Trust.

(m)     <u>Preservation of Claims</u>.  The Asbestos PI Trust is, and shall be deemed to be for all purposes, including, but not limited to for purposes of insurance and indemnity, the successor to the Debtors in respect of all Settled Asbestos PI Claims and Asbestos PI Claims.

(n)     <u>Excess Asbestos PI Trust Assets</u>.  To the extent there are any Asbestos PI Trust Assets remaining at such time as the Asbestos PI Trust is terminated, such excess shall be transferred to a charity or charities for such purpose as the Asbestos PI Trustee, in his reasonable discretion, shall determine, provided that, if practicable, the charity or charities to which such excess Asbestos PI Trust Assets are transferred shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from disorders caused by asbestos.

## ARTICLE XI

## EFFECT OF CONFIRMATION

**11.1    Preservation of Certain Causes of Action; Defenses.**  To the extent not otherwise made part of the Asbestos PI Trust Contribution, the Asbestos PI Trustee shall retain and may enforce any and all rights, Claims, and Causes of Action accruing to or that are property of the Debtors or their Estates pursuant to the Bankruptcy Code or any statute or legal theory, including any International-Related Alter Ego Claims, Avoidance Action, any rights to, Claims or Causes of Action for recovery under any policies of insurance issued to or on behalf of the Debtors, and any rights, Claims, and Causes of Action against third parties related to or arising out of Allowed Claims, and the Debtors shall retain and may enforce all defenses and

counterclaims to all Claims asserted against the Debtors or their Estates, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code. The Asbestos PI Trustee may pursue such Claims, rights, or Causes of Action, as appropriate, in accordance with the Asbestos PI Trust Agreement.

Notwithstanding anything in this Section 11.1 to the contrary, but subject to Section 10.3 above, on the Effective Date all Claims, defenses, rights and Causes of Action of the Debtors relating to the Asbestos PI Claims, shall be transferred and assigned to the Asbestos PI Trust. Except as otherwise provided in Section 9.2 of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Asbestos PI Trustee shall retain and may enforce such Claims, defenses, rights and Causes of Action and shall retain and may enforce all defenses and counterclaims to all Claims or Demands asserted against the Asbestos PI Trust with respect to such Settled Asbestos PI Claims, Asbestos PI Claims or Demands, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code. The Asbestos PI Trust shall be deemed to be the appointed representative to, and may, pursue, litigate, compromise and settle any rights, Claims, or Causes of Action transferred to it, as appropriate, in accordance with its and its beneficiaries' best interests.

**11.2    Terms of Injunction and Automatic Stay.**  All of the injunctions and/or stays in existence immediately prior to the Confirmation Date provided for or in connection with the Chapter 11 Cases, whether pursuant to section 105, 362, or any other provision of the Bankruptcy Code, the Bankruptcy Rules or other applicable law, including, but not limited to, the relief provided for by the Stay Extension Order shall become null and void.

**11.3    Title to Asbestos PI Trust Assets.**  On the Effective Date, title to all of the Asbestos PI Trust Assets shall vest in the Asbestos PI Trust free and clear of all Claims, Equity Interests, Encumbrances and other interests of any Entity, subject to the provisions of Sections 10.3 and 11.1 above. The Asbestos PI Trust shall be empowered and entitled to process and, after the Trust Distribution Effective Date, pay Allowed Asbestos PI Claims in accordance with the Asbestos PI Trust Distribution Procedures and the Asbestos PI Trust Agreement.

**11.4    Dissolution of the Committee; Continuation of Future Claimants' Representative; Creation of the Asbestos PI Trust Advisory Committee.**  Effective on the Effective Date, any committee appointed in the Chapter 11 Cases shall be dissolved automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to applications for compensation by Professionals or reimbursement of expenses incurred as a member of an official committee, requests for payment of asserted Administrative Claims, and any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of any other order entered in the Chapter 11 Cases, including any appeal of the Confirmation Order. The Committee may, at its option, participate in any appeals, in resolution of asserted Administrative Claims and in resolution of all Professional Fee Claims. The Debtors shall pay the reasonable fees and costs incurred by the Committee in connection with these permitted activities.

As provided in Section 10.3(d) above, the Confirmation Order shall provide for the appointment of the Asbestos PI Trust Advisory Committee effective as of the Effective Date.

The Confirmation Order shall also provide that, from and after the Effective Date, the Future Claimants' Representative shall continue to serve as provided in the Plan and the Asbestos PI Trust Agreement, to perform the functions specified and required therein.  The Future Claimants' Representative also may, at his option, participate in any:  (a) appeal of the Confirmation Order; (b) hearing on a claim for compensation or reimbursement of a Professional; or (c) adversary proceeding pending on the Effective Date in which the Future Claimants' Representative is a party.  The Debtors shall pay the reasonable fees and costs incurred by the Future Claimants' Representative in connection with these permitted activities.

Upon termination of the Asbestos PI Trust:  (a) the members of the Asbestos PI Trust Advisory Committee and the Future Claimants' Representative shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Cases; and (b) the Asbestos PI Trust Advisory Committee shall be deemed dissolved and the Future Claimants' Representative's employment shall be deemed terminated.

All reasonable and necessary post-Effective Date fees and expenses of the professionals retained by the Asbestos PI Trust Advisory Committee and the Future Claimants' Representative shall be paid exclusively by the Asbestos PI Trust in accordance with the terms of the Asbestos PI Trust Agreement.  The parties shall attempt to resolve any dispute regarding the payment of such fees and expenses in good faith, and if they shall fail to resolve such dispute, they shall submit the dispute to the Bankruptcy Court for resolution.

## ARTICLE XII

## DISCHARGE, INJUNCTION, AND EXCULPATION

**12.1    Discharge.**  Except as specifically provided for herein, pursuant to section 1141(d)(1)(A) of the Bankruptcy Code, confirmation of the Plan shall discharge the Debtors from any and all Claims of any nature whatsoever, including, without limitation, all Claims and liabilities that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not:  (a) a Proof of Claim based on such Claim was filed under section 501 of the Bankruptcy Code, or such Claim was listed on any Schedules; (b) such Claim is or was Allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has voted on or accepted the Plan.  Except as specifically provided for herein, as of the Effective Date the rights provided in the Plan shall be in exchange for and discharge of all Claims against the Debtors or any of their respective assets and properties.

**12.2    Injunction.**  Except as specifically provided for in the Plan, all persons or Entities who have held, hold or may hold Claims or Demands are permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors with respect to such Claim or Demand; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the Debtors with respect to such Claim or Demand; (c) creating, perfecting, or enforcing any Encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors with respect to such Claim or Demand; and (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtors or

against the property or interests in property of the Debtors, with respect to such Claim or Demand.

**12.3    Third Party Injunction.**  In order to preserve and promote the settlements contemplated by and provided for in the Plan and the agreements previously or concurrently approved by the Bankruptcy Court, and pursuant to the exercise of equitable jurisdiction and power of the Bankruptcy Court under section 524(g) of the Bankruptcy Code, all Entities which have held or asserted, which hold or assert or which may in the future hold or assert any claim, demand or cause of action  (including, but not limited to, any Settled Asbestos PI Claim or Asbestos Claim or Demand), or any claim or demand for Asbestos PI Trust Expense directly or indirectly against the Protected Parties (or any of them) (i) based upon, attributable to, or arising out of any Settled Asbestos PI Claim or Asbestos PI Claim, whenever and wherever arising or asserted, whether in the United States of America, or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admirality, shall be permanently stayed, restrained and enjoined, from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments or recovery with respect to any such claim, including, but not limited to

> (i)    commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim against any Protected Party with respect to any such claim;

> (ii)    enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any Protected Party or against the property of any Protected Party with respect to any such claim

> (iii)    creating, perfecting or enforcing any Lien of any kind against any Protected Party or the property of a Protected Party on the basis of such claim;

> (iv)    except as otherwise provided in the Plan, asserting, implementing or effectuating any setoff, right of subrogation or contribution or recoupment of any kind against any obligation due any Protected Party or against the property of any Protected Party with respect to any such claim;

> (v)    taking any act relating to such claim in any manner and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan and the Plan Documents.

**12.4    Injunction Reservation.**  Notwithstanding anything to the contrary in Sections 12.2 or 12.3 of the Plan, the Injunction shall not impair: (i) the rights of holders of Settled Asbestos PI Claims and Asbestos PI Claims to assert such Settled Asbestos PI Claims and Asbestos PI Claims solely against the Asbestos PI Trust or otherwise in accordance with the Asbestos PI Trust Distribution Procedures; or (ii) the rights of entities to assert any claim, debt, obligation, or liability for payment of an Asbestos PI Trust Expense solely against the Asbestos PI Trust or otherwise in accordance with the Asbestos PI Trust Distribution Procedures.

**12.5    Exculpation.**  None of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Equity Interest, including, without limitation, the Asbestos PI Claims,

for any act or omission in connection with, related to, or arising out of:  (a) the Chapter 11 Cases; (b) pursuit of confirmation of the Plan; (c) consummation of the Plan, or administration of the Plan or the property to be distributed under the Plan or the Asbestos PI Trust Distribution Procedures; (d) the Plan; or (e) the negotiation, formulation and preparation of the Plan, the Plan Documents, and any of the terms and/or settlements and compromises reflected in the Plan and the Plan Documents, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects, each of the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the Plan Documents.

**12.6    No Benefit to International.**  The discharge, injunction and exculpation provided in the Plan, including but not limited to the channeling injunction which is sought pursuant to section 524(g) of the Bankruptcy Code, are each solely and exclusively for the benefit of the Debtors and their Estates.  Nothing contained in the Plan is intended to nor does it provide any benefit to International, its subsidiaries or affiliates who are not Debtors.  Any Entity with any claim against International or its affiliates may pursue its state law rights against those entities.

## ARTICLE XIII

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**13.1    Conditions Precedent to Confirmation of the Plan.**  The following are conditions precedent to confirmation of the Plan that must be satisfied, unless waived in accordance with Section 13.4 below:

(a)    The Confirmation Order shall be acceptable in form and substance to the Plan Proponents.

(b)    At least two-thirds (2/3) in amount and seventy-five percent (75%) in number of those holders of Class 4 Settled Asbestos PI Claims and Class 5 Asbestos PI Claims actually voting on the Plan shall have voted to accept the Plan.

(c)    The Confirmation Order shall, among other things:

(i)    order that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

(ii)    provide that, except with respect to obligations specifically preserved in the Plan, SPHC and Bondex are discharged effective on the Effective Date (in accordance with the Plan) from any Claims and Demands, and the Debtors' liability in respect thereof, whether reduced to judgment or contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, that arose from any agreement of the Debtors entered into or obligation of the Debtors incurred before the Effective Date, or from any conduct of the Debtors prior to the Effective Date, or whether such interest accrued before or after the Commencement Date, is extinguished completely;

(iii)    provide that, subject to the limitations expressly set forth herein, all transfers of assets of the Debtors contemplated under the Plan shall be free and clear of all Claims and Encumbrances against or on such assets;

(iv)    authorize the implementation of the Plan in accordance with its terms and provide that, on the Effective Date, all of the transactions listed in Article X shall have occurred, as set forth therein;

(v)    provide that any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt under section 1146(a) of the Bankruptcy Code from any state, city or other municipality transfer taxes, mortgage recording taxes and any other stamp or similar tax;

(vi)    approve in all respects the other settlements, transactions and agreements to be effected pursuant to the Plan, including, without limitation, the Asbestos PI Trust Agreement, and the Asbestos PI Trust Distribution Procedures;

(vii)    provide that all Executory Contracts assumed or assumed and assigned by the Debtors during the Chapter 11 Cases or under the Plan shall remain in full force and effect notwithstanding any provision in such contract or lease (including those provisions described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease;

(viii)    provide that the transfers of property to the Asbestos PI Trust (A) are and will be legal, valid, and effective transfers of property; (B) do not and will not constitute avoidable transfers under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law; and (C) do not and will not subject the Asbestos PI Trustee to any liability by reason of such transfer under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, any laws affecting or effecting successor or transferee liability; and

(ix)    provide that any attorney-client, work product or other privilege that applies to the Asbestos Records shall be subject to the terms of the Asbestos Records Cooperation Agreement.

(d)    in addition to the foregoing, the Confirmation Order shall contain the following findings of fact and conclusions of law, among others:

(i)    The Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, those requiring that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(ii)    As of the Commencement Date, one or both of the Debtors had been named as defendants in personal injury and wrongful death actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(iii)    The Asbestos PI Trust is to be funded by the Asbestos PI Trust Contribution;

(iv)     The Asbestos PI Trust is to use its assets and income to pay Settled Asbestos PI Claims and Asbestos PI Claims;

(v)     The Plan separately classifies Class 4 Settled Asbestos PI Claims and Class 5 Asbestos PI Claims, and at least two-thirds (2/3) in amount and seventy-five percent (75%) of the members in each such Class that voted on the Plan have voted to accept the Plan;

(vi)     Pursuant to:  (A) the Asbestos PI Trust Distribution Procedures; (B) court order; or (C) otherwise, the Asbestos PI Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos PI Claims or other comparable mechanisms, that provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, similar Asbestos PI Claims in substantially the same manner;

(vii)     The Asbestos PI Trust will make payments to holders of Settled Asbestos PI Claims and Asbestos PI Claims pursuant to the Asbestos PI Trust Distribution Procedures as funds become available and as the Settled Asbestos PI Claims and the Asbestos PI Claims are liquidated, while maintaining sufficient resources to pay future valid Settled Asbestos PI Claims and Asbestos PI Claims on a substantially equivalent basis;

(viii)     The Future Claimants' Representative was appointed by the Bankruptcy Court pursuant to section 524(g) of the Bankruptcy Code as part of the proceedings for the purpose of protecting the interests of Future Demand Holders who do not currently hold asbestos-related Claims arising out of the Debtors conduct or products;

(ix)     In light of the benefits provided, or to be provided, by the Asbestos PI Trust, the Asbestos PI Trust is fair and equitable to all creditors and holders of Demands;

(x)     The Plan and its acceptance otherwise comply with the Bankruptcy Code, and confirmation of the Plan is in the best interests of all creditors;

(xi)     The Asbestos PI Trust will have the sole and exclusive authority as of the Effective Date to satisfy or defend against all Asbestos PI Claims;

**13.2    Conditions Precedent to the Effective Date of the Plan.**  The following are conditions precedent to occurrence of the Effective Date of the Plan that must be satisfied, unless waived in accordance with Section 13.4 below:

(a)     The Confirmation Order, in form and substance acceptable to the Plan Proponents, shall have been entered by the Bankruptcy Court and accepted and affirmed by the District Court or issued by the District Court;

(b)     All authorization, consents and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained;

(c)     All Plan Documents shall have been executed and delivered; and

(d)      All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

(e)      Any necessary Exit Facility has been negotiated and will be binding pending the Effective Dates.

(f)      Any necessary transitions services agreement or other agreement to ensure the organized, efficient and timely separation of the Debtors and the SPHC or Bondex Affiliate from International has been negotiated and binding pending the Effective Date.

**13.3    Conditions Precedent to the Trust Distribution Effective Date.**  The following are conditions precedent to occurrence of the Trust Distribution Effective Date that must be satisfied, unless waived in accordance with Section 13.4 below:

(a)      All of the conditions set forth in Section 13.1 above have been and still are satisfied; and

(b)      The Confirmation Order, as entered by the Bankruptcy Court and accepted and confirmed by the District Court or issued by the District Court, has become a Final Order without modification.

**13.4    Waiver of Conditions Precedent.**  To the fullest extent permitted by law, any of the conditions precedent set forth in Sections 13.1, 13.2 and 13.3 above may be waived or modified, in whole or in part, by the Plan Proponents.  Any such waiver or modification may be effected at any time without leave or order of the Bankruptcy Court or District Court, and without any other formal action.

**13.5    Effect of Failure of the Effective Date of the Plan.**  In the event that the Plan Proponents determine it is appropriate, prior to the Effective Date, upon notification submitted by the Plan Proponents to the Bankruptcy Court:  (A) the Confirmation Order shall be vacated; (B) no Distributions under the Plan shall be made; and (C) the Debtors and all holders of Claims against and Equity Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred. If the Confirmation Order is vacated pursuant to this Section 13.5, nothing contained in the Plan shall:  (A) constitute or be deemed a waiver or release of any Claims or Equity Interests by, against, or in the Debtors or any other Entity; or (B) prejudice in any manner the rights of the Debtors, the Plan Proponents, or any other Entity in the Chapter 11 Cases or any other or further proceedings involving the Debtors.

## ARTICLE XIV

## JURISDICTION OF BANKRUPTCY COURT

**14.1    Retention of Jurisdiction.**  The Bankruptcy Court shall, to the fullest extent permitted by law, retain and have exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Cases and the Plan, including, among other things, jurisdiction to:

(a)     hear and determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims that have been or properly should have been brought in the Bankruptcy Court (other than Settled Asbestos PI Claims and Asbestos PI Claims);

(b)     hear and determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Asbestos PI Trust after the Effective Date, including any proceedings with respect to any Avoidance Actions or otherwise to recover assets for the benefit of the Estates or the Asbestos PI Trust;

(c)     hear and determine all objections to the termination of the Asbestos PI Trust;

(d)     hear and determine such other matters that may be set forth in or arise in connection with the Plan, the Confirmation Order, or the Asbestos PI Trust Agreement;

(e)     hear and determine any conflict or other issues that may arise in the Chapter 11 Cases and the administration of the Asbestos PI Trust;

(f)     hear and determine any and all applications pursuant to section 330 or 503 of the Bankruptcy Code for allowance of any compensation for services rendered and reimbursement of expenses incurred by Professionals in connection therewith any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(g)     enter such orders authorizing non-material modifications to the Plan as may be necessary to comply with section 468B of the Internal Revenue Code;

(h)     hear and determine any applications pending on the Effective Date for the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts to which a Debtor was a party, and to hear and determine and, if necessary, liquidate any and all Claims arising therefrom;

(i)     hear and determine any and all applications, Claims, Causes of Action, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or commenced by any party in interest subsequent to the Effective Date;

(j)     consider any technical modifications of the Plan, and remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code; provided, that there shall be no modification made at any time that would reduce or eliminate any of the protections provided herein to the Exculpated Parties;

(k)     issue orders in aid of confirmation, consummation and execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code, including but not limited to compelling the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

(l)     hear and determine any proposed compromise and settlement of any Claim against or cause of action by or against the Debtors that has been or properly should have been brought in the Bankruptcy Court;

(m)     hear and determine any timely objections to Administrative Expense Claims asserted or to Proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to Allow or Disallow any Disputed Claim, in whole or in part;

(n)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     hear and determine such other matters as may be set forth in the Confirmation Order or other orders of the Bankruptcy Court, or which may arise in connection with the Plan, the Confirmation Order, or the Effective Date, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(p)     hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder;

(q)     enforce remedies upon any default under the Plan;

(r)     hear and determine any other matter not inconsistent with the Bankruptcy Code;

(s)     hear and determine any claim that in any way challenges or is related to any provision in the Confirmation Order; and

(t)     enter a final decree closing the Chapter 11 Cases.

If and to the extent that the Bankruptcy Court is not permitted under applicable law to exercise jurisdiction over any of the matters specified above, the reference to the "Bankruptcy Court" in the preamble to this Section 14.1 shall be deemed to be a reference to the "District Court."  Notwithstanding anything in this Section 14.1 to the contrary, the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures shall govern the satisfaction of Asbestos PI Claims and the forum in which Settled Asbestos PI Claims and Asbestos PI Claims shall be determined.

**ALTERNATIVE B**

## ARTICLE IV

## ADMINISTRATIVE EXPENSE, PRIORITY TAX AND DIP CLAIMS

In the event the Court determines that SPHC's and Bondex's assets exceed the value of their asbestos liabilities, the following subsections shall govern the Plan.

**4.1    Administrative Expense Claims.**  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, or as otherwise provided for in the Plan, in full satisfaction, settlement and discharge of and in exchange for such Claims, each Allowed Administrative Expense Claim shall be paid in full and in Cash on, or as soon thereafter as is reasonably practicable, the latest of:  (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date the Administrative Expense Claim becomes an Allowed Administrative Expense Claim; and (c) the date the Allowed Administrative Expense Claim becomes due and payable according to its terms; provided however, that the Allowed Administrative Expense Claims representing liabilities incurred by a Debtor in Possession in the Ordinary Course of Business or liabilities under loans or advances to or other obligations incurred by a Debtor in Possession may be paid in the Ordinary Course of Business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

From and after the Effective Date, the Reorganized Debtors, in their sole and absolute discretion, may collectively settle Administrative Expense Claims without Bankruptcy Court approval.  The Reorganized Debtors shall have the right to object to any Administrative Expense Claim by the later of:  (a) 180 days after the Effective Date, subject to such extensions as may be granted from time to time by the Bankruptcy Court; and (b) 30 days after the date such Administrative Expense Claim is filed, subject to such extensions as may be granted from time to time by the Bankruptcy Court.  Unless the Reorganized Debtors timely object to an Administrative Expense Claim, such Claim shall be deemed Allowed in the amount requested. In the event that the Reorganized Debtors timely object to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

All entities seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330 or 503 of the Bankruptcy Code (the "Professional Fee Claims") shall (a) file no later than sixty days (60) days after the Effective Date, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the first Business Day after the date that is thirty (30) calendar days after the date such Professional Fee Claim becomes an Allowed Administrative Expense Claim; or (ii) upon such other terms as may be mutually agreed upon by such holder and the Reorganized Debtors.  Objections to any applications for Professional Fee Claims can be filed by the United States Trustee and any party in interest so long as such objections are filed within the time frame set forth in the notice served with the application seeking payment of

Professional Fee Claims, unless an extension is granted by the applicant.  The Reorganized Debtors are authorized to pay compensation for services of Professionals rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

      **4.2**     **Priority Tax Claims.**  Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by SPHC or Bondex prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim, if any, shall, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, receive in full satisfaction, settlement and discharge of and in exchange for such Allowed Priority Tax Claim, either of the following, at the sole and absolute discretion of the Reorganized Debtors:  (a) Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim, on the later of:  (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable; and (iii) the date such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy law; or (b) regular installment payments in Cash (i) of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim; (ii) over a period ending not later than five (5) years after the Effective Date; and (iii) in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors under section 1122(b)).

      **4.3**     **DIP Claim.**  The DIP Agreement will be terminated.  In the event any sums are due and owing under the DIP Agreement, such Claim shall be paid, in full, in Cash on or before the Effective Date.

**ARTICLE V**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

      All Claims and Interests, except Administrative Claims, Priority Tax Claims, and DIP Claims are placed in the Classes and set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and DIP Claims have not been classified.

      Except for the unclassified Claims discussed in Article IV above, Section 5.1 of the Plan sets forth a designation of Classes of all Claims and Interests in accordance with section 1122(a) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent any portion of the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim or Interest qualifies within the description of that different Class. If a Claim or Interest is acquired or transferred, the Claim or Interest shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim or Interest. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, satisfied or released before the Effective Date.

**5.1    Classification.**  The categories of Claims and Equity Interests listed below, other than Administrative Expense Claims, Priority Tax Claims and the DIP Claim, are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | General Unsecured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 4 | Settled Asbestos PI Claims | Impaired | Yes |
| Class 5 | Asbestos PI Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 6 | Intercompany Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 7 | Claims Held by International | Unimpaired | No (conclusively presumed to accept) |
| Class 8 | Bondex Equity Interests | Unimpaired | No (conclusively presumed to accept) |
| Class 9 | SPHC Equity Interests | Unimpaired | No (conclusively presumed to accept) |

**5.2    Class 1 – Priority Claims**

(a)    Classification:  Class 1 consists of all Priority Claims against the Debtors.

(b)    Treatment:  On the Distribution Date, each holder of a Class 1 Allowed Priority Claim shall receive Cash equal to the Allowed amount of such Priority Claim.

(c)    Voting:  Class 1 is Unimpaired and each holder of an Allowed Class 1 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.3    Class 2 – Secured Claims**

(a)    Classification:  Class 2 consists of all Secured Claims against the Debtors

(b)    Treatment:  At the option of the Reorganized Debtors and in accordance with section 1124 of the Bankruptcy Code, all Allowed Secured Claims in Class 2 will be treated pursuant to one of the following alternatives:  (i) the Plan will leave unaltered the legal, equitable, and contractual rights to which each Allowed Secured Claim in Class 2 entitles the holder; (ii) the holder of an Allowed Secured Claim shall receive such other treatment as the Reorganized Debtors and the holder shall agree; or (iii) all of the collateral for such Allowed Secured Claim will be surrendered to the holder of such Claim on the Effective Date or as soon as practicable thereafter.

(c)      Voting:  Class 2 is Unimpaired and each holder of an Allowed Class 2 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.4**      Class 3 – General Unsecured Claims

(a)      Classification:  Class 3 consists of all General Unsecured Claims against the Debtors.

(b)      Treatment:  Each holder of an Allowed Class 3 General Unsecured Claim shall receive:  (i) Cash equal to the Allowed amount of such General Unsecured Claim plus interest at the Federal Judgment Rate on the Distribution Date; or (ii) the holder of an Allowed General Unsecured Claim shall receive such other treatment the Reorganized Debtors and the holder shall agree.

(c)      Voting:  Class 3 is Unimpaired and each holder of an Allowed Class 3 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.5**      Class 4 – Settled Asbestos PI Claims

(a)      Classification:  Class 4 consists of all Settled Asbestos PI Claims.

(b)      Treatment:  Each holder of a Settled Asbestos PI Claim shall receive: (i) Cash equal to the Allowed amount of such Settled Asbestos PI Claim without interest on the Effective Date; or (ii) such other treatment as the holder of the Allowed Settled Asbestos PI Claim and the Reorganized Debtors shall agree.

(c)      Voting:  Class 4 is Impaired and each holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

**5.6**      Class 5 – Asbestos PI Claims

(a)      Classification:  Class 5 consists of all Asbestos PI Claims.

(b)      Treatment:  As of the Effective Date, all holders of Asbestos PI Claims may pursue their legal remedies to seek redress for damages arising from their alleged injuries.

(c)      Voting:  Class 5 is Unimpaired and each holder of a Class 5 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.7**      Class 6 – Intercompany Claims

(a)      Classification:  Class 6 consists of all Intercompany Claims.

(b)      Treatment:  As of the Effective Date, all Class 6 Intercompany Claims shall be reinstated.

-4-

(c)     Voting:  Class 6 is Unimpaired and each holder of a Class 6 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.8**     Class 7 – Claims of International

(a)     Classification:  Class 7 consists of all Claims held by International against one or more Debtors.

(b)     Treatment:  As of the Effective Date, all Class 7 Claims held by International against one or more of the Debtors shall be reinstated.

(c)     Voting:  Class 7 is Unimpaired and each holder of a Class 7 Claim is conclusively presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.9**     Class 8 – Bondex Equity Interests.

(a)     Classification:  Class 8 consists of all outstanding Bondex Equity Interests.

(b)     Treatment:  On the Effective Date, all existing shares of outstanding Bondex Equity Interests shall be reinstated.

(c)     Voting:  Class 8 is Unimpaired and each holder of a Class 8 Equity Interest is conclusively presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**5.10**     Class 9 – SPHC Equity Interests.

(a)     Classification:  Class 9 consists of all outstanding SPHC Equity Interests.

(b)     Treatment:  On the Effective Date, all existing shares of outstanding SPHC Equity Interests shall be reinstated.

(c)     Voting:  Class 9 is Unimpaired and each holder of a Class 9 Equity Interest is conclusively presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

**6.1     Classes Entitled to Vote.**  Except as set forth below, each holder of an Allowed Settled Asbestos PI Claim, and each holder of a Settled Asbestos PI Claim which is temporarily allowed for voting purposes shall be entitled to vote separately to accept or reject the Plan.

Any holder of a Claim or Equity Interest in an Unimpaired Class shall not be entitled to vote to accept or reject the Plan as each such holder is deemed to accept the Plan.

**6.2    Class Acceptance Requirement.**  Acceptance of the Plan by any Impaired Class of Claims shall be determined in accordance with section 1126 of the Bankruptcy Code and the terms of the Solicitation Procedures Order.

**6.3    Acceptance by Unimpaired Classes.**  Each class except Class 4 (Settled Asbestos PI Claims) is Unimpaired under the Plan and is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**6.4    Rejection by Rejecting Classes.**  There are no classes in Alternative B which are deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code.

Solicitation of votes of holders of Claims in each of Classes 1-3 and Classes 5-7 is not required. Solicitation of votes of holders of Equity Interests in each of Class 8 and Class 9 is not required.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN

**7.1    Distributions.**  The Reorganized Debtors or their designee shall make all Distributions required to be made under the Plan as provided under this Article VII.

**7.2    Date of Distributions.**  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder on account of Allowed Settled Asbestos PI Claims shall be made by the Effective Date or as soon thereafter as is practicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**7.3    Postpetition Interest on Claims.**  No interest will not accrue following the Commencement Date on any Allowed Settled Asbestos PI Claims.

**7.4    Means of Cash Payment.**  At the option of the Reorganized Debtors or their designee, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in any applicable agreement.

**7.5    Delivery of Distributions.**  Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Settled Asbestos PI Claim shall be made at the address of such holder as set forth on the Schedules filed, as may be required, with the Bankruptcy Court, or on the books and records of SPHC, Bondex or their agents, or in a letter of transmittal, unless the Debtors or the Reorganized Debtors have been notified in writing of a change of address.

If any mailing to a holder is returned as undeliverable, then no further Distributions to such holder shall be made unless and until the Reorganized Debtors are notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder without

interest.  A Cash Distribution that is not claimed by the expiration of six (6) months from the date that such Distribution would have been first attempted if a valid address were available shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and the Claim of any holder to such Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Reorganized Debtors or their designee to attempt to locate any holder of an Allowed Claim.

      **7.6**      **Time Bar to Cash Payments.**  Checks issued by the Reorganized Debtors in respect of Distributions on Allowed Settled Asbestos PI Claims shall be null and void if not presented for payment within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing to the issuer by the holder of the Allowed Settled Asbestos PI Claim to whom such check originally was issued on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check.  After expiration of the thirty (30) day period, all funds held on account of such void check shall, in the discretion of the issuer become property of the Reorganized Debtors, and the Claim of any holder to such Distributions shall be discharged and forever barred.

      **7.7**      **Record Date for Holders of Claims.**  Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Rule 3001 of the Bankruptcy Rules, on or prior to the Distribution Record Date, shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Rule 3001 of the Bankruptcy Rules for objecting to such transfer has not expired by the Effective Date.  If there is any dispute regarding the identity of the Entity entitled to receive a Distribution in respect of a Claim under the Plan, no Distribution need be made in respect of such Claim until such dispute has been resolved.

      **7.8**      **Transfers of Claims.**  In the event that the holder of a Claim shall transfer such Claim on and after the Distribution Record Date, it shall immediately advise the Reorganized Debtors in writing of such transfer.  The Reorganized Debtors shall be entitled to assume that no transfer of any Claim has been made unless and until written notice of a transfer has been actually received by the Reorganized Debtors.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan, and, except as provided in a notice of transfer, the Reorganized Debtors shall be entitled to assume conclusively that the transferee named in any notice of transfer shall thereafter be vested with all rights and powers of the transferor of such Claim.

      **7.9**      **Distributions after Effective Date.**  Distributions made after the Effective Date shall be deemed to have been made on the Effective Date.

      **7.10**      **Fractional Cents.**  Notwithstanding any other provision in the Plan to the contrary, no payment of fractional cents will be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made will reflect a rounding of such fraction to the nearest whole penny (up or down), with fractions of more than half a penny being rounded up and fractions of half of a penny or less being rounded down.

**7.11    Setoff.**  The Reorganized Debtors may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Settled Asbestos PI Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the applicable Debtor may hold against the holder of such Allowed Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, causes of action, debts or liabilities.

**ARTICLE VIII**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**8.1    General Treatment.**  The Plan constitutes and incorporates a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to (a) assume, as of the Effective Date, all Executory Contracts to which a Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) reject all Executory Contracts identified in the Schedule of Rejected Contracts that will be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date.  Notice of the Confirmation Hearing shall constitute notice of any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection of such Executory Contract and any proposed Cure Amount.

**8.2    Cure of Payments and Release of Liability.**  Except as otherwise provided in a Final Order, pursuant to sections 365(a), (b), (c) and (f) of the Bankruptcy Code, all Cure Amounts that may require payment under section 365(b)(1) of the Bankruptcy Code under any Executory Contract that is assumed pursuant to a Final Order shall be paid within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Amounts that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Amount is Allowed by agreement of the parties or a Final Order.  If a party to an assumed Executory Contract has not filed an appropriate paper on or before the date of the Confirmation Hearing disputing any proposed Cure Amount, the cure of any other defaults, the promptness of the Cure Amount payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.  Any party to an assumed Executory Contract that receives full payment of a Cure Amount shall waive the right to receive any payment on a Class 3 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

**8.3    Bar to Rejection Damages.**  In the event that the rejection of an Executory Contract pursuant to the Plan results in damages to the non-Debtor party or parties to such Executory Contract, a claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtors or their respective properties or interests in property, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for the Plan Proponents on or before (a) if such Executory

Contract is rejected pursuant to Sections 8.1 above, the later of: (i) thirty (30) days after entry of the Confirmation Order; and (ii) thirty (30) days after the non-Debtor party receives notice of the rejection of such Executory Contract pursuant to Section 8.1 above; and (b) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion to reject, thirty (30) days after entry of such order.

**8.4    Insurance Policies.** All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, if any, to the extent necessary, are treated as executory contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of Claims covered by those insurance policies, subject to all rights, remedies and defenses of the Debtors under any agreements, insurance policies and applicable law.

## ARTICLE IX

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**9.1    Disputed Claims.** All Disputed Claims against SPHC and Bondex shall be subject to the provisions of this Article IX.

**9.2    Objection to Claims.** The Reorganized Debtors shall be entitled to file objections to Settled Asbestos PI Claims that have been or properly should have been brought in the Bankruptcy Court, on or before the first (1st) anniversary of the Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same date may be extended from time to time by the Bankruptcy Court, and shall be authorized to settle, compromise, withdraw or litigate to judgment such objections without further approval of the Bankruptcy Court.

**9.3    Payments and Distributions with Respect to Disputed Claims.** Notwithstanding any other provision hereof, if any portion of a Settled Asbestos PI Claim is a Disputed Claim, no payment or Distribution provided for herein shall be made on account of such Claim, unless and until such Claim becomes an Allowed Claim.

**9.4    Estimation of Claims.** The Debtors, the Reorganized Debtors, or the Plan Proponents (prior to the Effective Date), as the case may be, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim for any reason pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate such Claim at any time, including, without limitation, during the pendency of litigation concerning any objection to any Claim or of any appeal relating thereto. Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism approved by the Bankruptcy Court.

# ARTICLE X

# MEANS FOR IMPLEMENTATION OF THE PLAN

**10.1    Generally.**  On the Confirmation Date, the Debtors will be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement the provisions of the Plan.

**10.2    Transactions on the Effective Date.**  Immediately on the Effective Date, all actions necessary for the Plan to go effective shall be deemed for all purposes to have occurred simultaneously.

# ARTICLE XI

# EFFECT OF CONFIRMATION

**11.1    Preservation of Certain Causes of Action; Defenses.**  The Reorganized Debtors shall retain and may enforce any and all rights, Claims, and Causes of Action accruing to or that are property of the Debtors or their Estates pursuant to the Bankruptcy Code or any statute or legal theory, including any Avoidance Action, any rights to, Claims or Causes of Action for recovery under any policies of insurance issued to or on behalf of the Debtors, and any rights, Claims, and Causes of Action against third parties related to or arising out of Allowed Claims, and the Debtors and Reorganized Debtors shall retain and may enforce all defenses and counterclaims to all Claims asserted against the Reorganized Debtors, the Debtors or their Estates, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

**11.2    Terms of Injunction and Automatic Stay.**  All of the injunctions and/or stays in existence immediately prior to the Confirmation Date provided for or in connection with the Chapter 11 Cases, whether pursuant to section 105, 362, or any other provision of the Bankruptcy Code, the Bankruptcy Rules or other applicable law, including, but not limited to, the relief provided for by the Stay Extension Order shall become null and void.

**11.3    Dissolution of the Committee and Future Claimants' Representative.**  Effective on the Effective Date, each of the Future Claimants' Representative and any committee appointed in the Chapter 11 Cases shall be dissolved automatically, the Future Claimants' Representative and the Committee's respective members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to applications for compensation by Professionals or reimbursement of expenses incurred as a member of an official committee, requests for payment of asserted Administrative Claims, and any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of any other order entered in the Chapter 11 Cases, including any appeal of the Confirmation Order. The Future Claimants' Representative and the Committee may each, at their respective option, participate in any appeals, resolution of asserted Administrative Claim and in Resolution of all Professional Fee Claims.  The Debtors shall pay the reasonable fees and costs incurred by each

of the Future Claimants' Representative and the Committee in connection with these permitted activities.

## ARTICLE XII

## EXCULPATION

**12.1    Exculpation.**   None of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of:  (a) the Chapter 11 Cases; (b) pursuit of confirmation of the Plan; (c) consummation of the Plan, or administration of the Plan or the property to be distributed under the Plan; (d) the Plan; or (e) the negotiation, formulation and preparation of the Plan, and any of the terms and/or settlements and compromises reflected in the Plan, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects, each of the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the Plan Documents.

## ARTICLE XIII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**13.1    Conditions Precedent to Confirmation of the Plan.**   The following are conditions precedent to confirmation of the Plan that must be satisfied, unless waived in accordance with Section 13.3 below:

(a)    The Confirmation Order shall be acceptable in form and substance to the Plan Proponents and the Debtors.

(b)    At least two-thirds (2/3) in amount and fifty percent (50%) in number of those holders of Class 4 Settled Asbestos PI Claims actually voting on the Plan shall have voted to accept the Plan.

(c)    The Confirmation Order shall, among other things:

(i)    order that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

(ii)    authorize the implementation of the Plan in accordance with its terms;

(iii)    provide that any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt under section 1146(a) of the Bankruptcy Code from any state, city or other municipality transfer taxes, mortgage recording taxes and any other stamp or similar tax;

(iv)    approve in all respects the other settlements, transactions and agreements to be effected pursuant to the Plan; and

(v)    provide that all Executory Contracts assumed or assumed and assigned by the Debtors during the Chapter 11 Cases or under the Plan shall remain in full force and effect notwithstanding any provision in such contract or lease (including those provisions described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease; and

(d)    in addition to the foregoing, the Confirmation Order shall contain findings of fact and conclusions of law including that the Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, those requiring that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

**13.2    Conditions Precedent to the Effective Date of the Plan.**  The following are conditions precedent to occurrence of the Effective Date of the Plan that must be satisfied, unless waived in accordance with Section 13.3 below:

(a)    The Confirmation Order, in form and substance acceptable to the Plan Proponents, shall have been entered by the Bankruptcy Court and accepted and affirmed by the District Court or issued by the District Court;

(b)    All authorization, consents and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained;

(c)    All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

**13.3    Waiver of Conditions Precedent.**  To the fullest extent permitted by law, any of the conditions precedent set forth in Sections 13.1 and 13.2 above may be waived or modified, in whole or in part, upon agreement of all of the Plan Proponents.  Any such waiver or modification may be effected at any time without leave or order of the Bankruptcy Court or District Court, and without any other formal action.

**13.4    Effect of Failure of the Effective Date of the Plan.**  In the event that the Plan Proponents determine it is appropriate, prior to the Effective Date, upon notification submitted by the Plan Proponents to the Bankruptcy Court:  (A) the Confirmation Order shall be vacated; (B) no Distributions under the Plan shall be made; and (C) the Debtors and all holders of Claims against and Equity Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred. If the Confirmation Order is vacated pursuant to this Section 13.4, nothing contained in the Plan shall:  (A) constitute or be deemed a waiver or release of any Claims or Equity Interests by, against, or in the Debtors or any other Entity; or (B) prejudice in any manner the rights of the Debtors, the Plan Proponents, or any other Entity in the Chapter 11 Cases or any other or further proceedings involving the Debtors.

# ARTICLE XIV

## JURISDICTION OF BANKRUPTCY COURT

**Retention of Jurisdiction.** The Bankruptcy Court shall, to the fullest extent permitted by law, retain and have jurisdiction over all matters arising out of and related to the Chapter 11 Cases and the Plan.