# **EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS : CONSOLIDATED UNDER
LIABILITY LITIGATION (No. VI) : MDL 875
:
:
JOHN SCHUMACHER, : CIVIL ACTION
: NO. 2:10-1627
Plaintiff, :
:
v. :
: Eastern District of
AMTICO, ET AL., : Pennsylvania Case
:
Defendants. :

**O R D E R**

**AND NOW**, this **2nd** day of **November, 2010**, it is hereby

**ORDERED** that Defendants' Motion in Limine to Preclude Expert

Testimony and Argument, filed on July 6, 2010 (doc. no. 25) is

**DENIED**.[1]

---

[1] Plaintiff has offered the opinion testimony of Dr. John C. Maddox, who will testify that Defendants' products caused, or contributed to causing Plaintiff's mesothelioma. Defendants challenge the admissibility of Dr. Maddox's opinion under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

As interpreted by the Third Circuit Court of Appeals, "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003)(citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)). Dr. Maddox's qualifications are not challenged by Defendants in this case. The issue before the Court is whether Dr. Maddox's opinion satisfied the reliability and fit prongs of the Rule 702 analysis.

To determine the reliability of a scientific principle or method, a court may examine numerous factors, including whether

1

the principle or method has been tested or is capable of being tested, whether the potential rate of error in the method can be ascertained, whether it has been subjected to peer review and publication, and whether it is generally accepted within the scientific community. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, at 593-94. The test for reliability is "flexible," and a court has "broad latitude" in how it chooses to determine reliability. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999). The approach to determining reliability of expert testimony is "tied to the facts" of a particular case, and highly dependent on the nature of the expert testimony presented. Id. at 148 (quoting United States v. Downing, 753 F.3d 1224, 1242 (3d Cir. 1985). Similarly, the "fit" requirement of a Daubert analysis has shades of both reliability and relevance, and requires that an expert's analysis fits the facts of the case at hand. See Paoli R.R. Yard PCB Litigation, 35 F.3d 593 (3d Cir. 1994).

The standard for admissibility is "lower than the merits standard of correctness." Id. at 744. Indeed, even if a judge believes that "there are better grounds for an alternative conclusion" and that the experts methods may have "some flaws" these concerns are appropriate fodder for cross examination, but do not render an expert's opinion inadmissible. Heller v. Shaw Industries, 167 F.3d 146, 152-53 (3d Cir. 1999)(internal citations omitted).

In the instant case, the argument revolves around the so-called "every exposure" theory of causation, that is, Dr. Maddox's opinion that, "every exposure to asbestos above background levels contributes to cause mesothelioma." (Expert Report of Dr. John C. Maddox, doc. no. 58-7, at 14). Defendants argue that this is "absurd, extreme, and incorrect science." (Def.'s Mot. at 16)(internal citations omitted). Defendants cite literature stating that, "[f]rom an inability to delineate a lower threshold [at which an exposure to asbestos becomes harmful], one cannot necessarily conclude that no such threshold exists and that asbestos is oncogenic humans at any level of exposure, no matter how small." (Id. at 13-14). Defendants maintain that there is a threshold level below which exposure to asbestos does not cause disease, as the body can expel or process asbestos fibers.

However, Defendants arguments mischaracterize Dr. Maddox's testimony in this case. Dr. Maddox does not assert that a single fiber can cause mesothelioma. (doc. no. 58-7 at 14) ("Without

2

question, I do not believe that exposure to a single asbestos fiber can cause mesothelioma or any other asbestos related disease.") Rather, Dr. Maddox opines that cumulative low-level exposures can result in mesothelioma. Dr. Maddox asserts that "[a]ttempts to define any such a minimum level of exposure [threshold level] above background levels of asbestos have been dismissed as 'logical nonesense.'" (Id. at 20)(internal citations omitted).

Dr. Maddox relies on variety peer-reviewed studies and reports to form his ultimate opinion. One of the studies he relies on to form this opinion is Consensus Report, Asbestos Asbestosis and Cancer: The Helsinki Criteria for Diagnosis and Attribution, Scan J. Work Environ Health, which was published by a consortium of 19 participants from around the world from numerous medical fields, and states that Mesothelioma can occur in cases with low asbestos exposure. Dr. Maddox is prepared to testify that it is the "generally accepted view of the medical community . . . that if someone gets [mesothelioma], any non-trivial exposure to asbestos that is above background levels contributes to causation." (Dr. Maddox Report, doc. no. 17 at 17).

Dr. Maddox's underlying methodology involves reviewing Plaintiff's testimony and Defendant's answers to interrogatories regarding the percent of chrysotile asbestos contained in Defendants' respective products, and to cross-referencing this information to studies conducted by entities such as the Environmental Protection Agency, the United States Navy regarding the amount of fibers released from such products. (Id. at 5-8). Then, Dr. Maddox looks to case studies linking the specific products at issue in the instant case (floor tile, joint compounds, and gaskets and packing, respectively) to incidents of asbestos-related disease. (Id. at 5-14.)

Defendants respond that Dr. Maddox's opinion that "low dose chrysotile asbestos fibers cause mesothelioma is devoid of proof, contrary to epidemiological and pathology research, and is lacking in supportive empirical data." (Def. American Biltrite's Mot. in Limine, doc. no. 25 at 6). Defendants assert that, contrary to Dr. Maddox's opinion, there is a threshold below which exposure to asbestos is "safe," because the body can process and expel asbestos fibers, and their experts will testify to this effect. Defendants also take issue with the fact that state of the science on mesothelioma is such that one cannot tell from a diagnosis of mesothelioma which particular Defendants'

3

AND IT IS SO ORDERED.

_____
EDUARDO C. ROBRENO, J.

_____

products caused the disease.

However, Dr. Maddox will testify that, to a reasonable degree of medical certainty, it is his opinion that Defendants' products, respectively, in the instant case caused Plaintiff's mesothelioma. His opinion is based on numerous studies showing the link between working with the particular product at issue and asbestos-related diseases. Defendants' arguments are fodder for cross-examination, and do not preclude the admissibility of Dr. Maddox's opinion in the instant case. The Third Circuit has held that an expert's causation opinion should not be per se excluded simply because there is no published literature regarding the "level" at which exposure to a harmful element can cause the injury complained of. Heller v. Shaw Industries, Inc., 167 F.3d 146, 154-155 (3d Cir. 1999). In the instant case, there is a wealth of published literature regarding the "level" of exposure to asbestos needed to cause mesothelioma. However, there is a bona fide debate within the scientific community regarding what the threshold level is, and indeed, whether a numeric threshold can be ascertained at all. Simply, Dr. Maddox takes one position, and Defendants' experts take another.

In rendering his opinion that there are no safe levels of exposure above background levels, Dr. Maddox relied on numerous published studies and reports, drawing from the fields of pathology, radiology, epidemiology, and industrial hygienics. He has cited case studies of individuals with occupational histories similar to that of Plaintiff who later developed an asbestos-related disease. He will testify that his conclusions represent those generally accepted by the medical community. Under these circumstances, the Court concludes, in its gatekeeping role, that Dr. Maddox's testimony satisfies the reliability and fit requirements of Federal Rule of Evidence 702 and Daubert.

4