## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPECIALTY PRODUCTS HOLDING CORP., *et al.*,[1] | Case No. 10-11780 (PJW) |
| Debtors. | Jointly Administered |
| | **Related Docket Nos. 4141, 4195, 4196, 4202, 4250, 4374 & 4377** |

### SUPPLEMENT OF THE FUTURE CLAIMANTS' REPRESENTATIVE TO THE JOINT OBJECTION OF THE COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND THE FUTURE CLAIMANTS' REPRESENTATIVE TO THE DEBTORS' CERTIFICATION OF COUNSEL REGARDING ORDER ESTABLISHING BAR DATES FOR FILING PROOFS OF CLAIM AND APPROVING RELATED RELIEF

In light of the objection of the Committee of Asbestos Personal Injury Claimants and the Futures Claimants' Representative [D.I. 4377] (the "Objection")[2] to the Debtors' *Certification of Counsel Regarding the Order Establishing Bar Dates for Filing Proofs of Claim and Approving Related Relief* [D.I. 4374] (the "Debtors' COC"), and several joinders in that Objection, the Court scheduled a hearing on January 7, 2014, regarding the proposed bar date. The Court specifically instructed that it was appropriate to characterize the Objection as a motion for reconsideration and that it planned to treat the Objection as such for purposes of the hearing.[3] As the issues raised in the Objection were limited in scope to the Debtors' COC and the proposed language in the order and exhibits submitted with the Debtors' COC, the FCR files this supplement to address the bases for reconsideration of the Court's determination to impose a bar date upon individuals who were exposed to the Debtors' asbestos-containing products prepetition

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Specialty Products Holding Corp. (0857) and Bondex International, Inc. (4125). The Debtors' address is 4515 St. Clair Avenue, Cleveland, Ohio 44103.

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Objection.

[3] (Hr'g Tr. Dec. 17, 2013 [D.I. 4413] at 30:6-10).

but had not yet manifested any asbestos-related disease as of the commencement of these bankruptcy cases, and who might subsequently assert asbestos-related "demands" (as defined in § 524(g)(5) of the Bankruptcy Code) against the Debtors (collectively, the "<u>Future Claimants</u>").

## PRELIMINARY STATEMENT[4]

A court "should reconsider a prior decision when it appears the court has overlooked facts or precedent which, had they been considered, might reasonably have altered the result." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *aff'd sub nom. United States v. Carper*, 22 F.3d 303 (3d Cir. 1994), *cert. denied*, 413 U.S. 1084 (1995).[5]  As discussed below, in reaching its ruling on the Debtors' proposed bar date order, it appears the Court overlooked key facts and precedent relevant to the imposition of a bar date upon Future Claimants.

The Debtors contend that an asbestos bar date is necessary to advance the chapter 11 plan process.  This is simply untrue.  Both of the competing plans before the Court are premised (at least ostensibly) upon § 524(g) of the Bankruptcy Code, which requires tabulation of votes from all claimants whose claims would be addressed by the asbestos trust, not only those whose claims are allowed.  But even if it were necessary to determine the allowed amount of Future Claims for voting purposes (e.g., under the proposed § 1129(b) cramdown alternative under the Debtors' Plan), *this Court's Estimation Decision already allowed $990 million in Future Claims for purposes of any chapter 11 plan in these cases, without regard for any bar date*.  It is thus too late now to impose additional procedural requirements upon allowance of Future Claims for

---

[4]  Capitalized terms in this preliminary statement have the meanings ascribed to them in the body of this pleading.

[5]  The *Karr* court, for example, reconsidered its prior grant of summary judgment for a civil plaintiff based upon an issue that had been addressed and argued in the context of cross-motions for summary judgment, but was "obscured by the many other issues in the case." 768 F. Supp. at 1094.  Finding that "the importance of achieving substantial justice outweigh[ed] the value of finality" under the circumstances, and having the benefit of more focused briefing by the parties, *id.*, the court considered the issue anew and, ultimately, vacated its prior grant of summary judgment for the defendants, *id.* at 1101.

purposes of the plan process.  If a bar date is imposed, it will only lead to increased costs and

mass confusion among the millions of potential Future Claimants, who will be forced to file

"placeholder" proof-of-claim forms even if they have not yet suffered any physical impairment

as a result of their exposure to the Debtors' products prepetition.  The resulting load on this

Court's docket (or rather, on the District Court's docket, since this Court lacks core jurisdiction

to liquidate personal injury tort claims), would be completely unmanageable, which is why an

asbestos trust is the only practical mechanism for determination and allowance of asbestos

claims.  Against this backdrop, it is not surprising that ***no other court that the FCR is aware of***

***has established a bar date for future asbestos claims in a chapter 11 case***.  For these reasons,

and the reasons that follow, the FCR respectfully submits that the Court should reconsider its

decision to establish a bar date applicable to Future Claimants.

## BACKGROUND

### *Nature and Role of the FCR*

By order of this Court [D.I. 449] (the "<u>FCR Order</u>") upon application by the Debtors

[D.I. 374], Eric Green was appointed as the FCR in these cases to protect the rights of Future

Claimants in accordance with § 524(g) of the Bankruptcy Code.  *See* D.I. 449 at p.1; D.I. 374 at

p. 6; 11 U.S.C. § 524(g)(4)(B)(i) (an injunction affecting Future Claimants may only be issued if

"the court appoints a legal representative for the purpose of *protecting the rights of persons* that

might subsequently assert *demands*" (emphasis added)).[6]  As FCR, Mr. Green has standing to be

heard as party in interest, under §§524(g)(4)(B)(i) and 1109(b) of the Bankruptcy Code, to all

matters relating to the Debtors' chapter 11 cases.  (FCR Order ¶ 5).  He also possesses the

powers and duties of a committee under § 1103 of the Bankruptcy Code.  (*Id.*)

---

[6]  The term "demand" is a term of art defined in § 524(g)(5) as "a demand for payment, present or future, *that was not a claim* during the proceedings leading to the confirmation of a plan of reorganization" and is to be paid by a § 524(g) asbestos trust.  11 U.S.C. § 524(g)(5) (emphasis added).

In light of these fiduciary duties to Future Claimants, the FCR is compelled to object to the Debtors' proposed bar date order, which, as worded, would foreclose recovery by any of the potentially millions of Future Claimants who do not respond to publication notice of the bar date.

### The Estimation Decision

Recognizing that the Debtors and the Claimants' Representatives take vastly different positions on the extent of the Debtors' liability for asbestos personal injury claims threatened the progress of these chapter 11 cases, Judge Fitzgerald held proceedings pursuant to § 502(c)(1) of the Bankruptcy Code to estimate the amount of such liability for purposes of these cases. On May 20, 2013, following a six-day trial and for the reasons set forth in a 51-page memorandum opinion [D.I. 3852], Judge Fitzgerald entered an order [D.I. 3853] (together with the opinion, the "Estimation Decision") rejecting the Debtors' claim valuation theory and establishing "*for purposes of Plan confirmation and this bankruptcy proceeding* . . . [t]he total of all estimated present and future asbestos personal injury claims against the Debtors [as] $1.166 billion net present value." [D.I. 3853 (emphasis added)]. Of this amount, approximately $990 million represents future demands against the Debtors as defined in § 524(g)(5) ("Future Claims").[7]

The Debtors have appealed the Estimation Decision, which appeal is pending in the United States District Court for the District of Delaware (subject to the Claimants' Representatives' motion to dismiss the appeal as interlocutory). However, the Debtors' request for a stay of the Estimation Decision pending appeal was denied. [D.I. 4074].

---

[7] This amount is based on (1) the expert opinion of Dr. Thomas Vasquez, whose opinion was adopted, for the most part, by the Court, valuing future claims at $934,000,000 net present value (*see* Estimation Decision at 23), and (2) the addition of $56,040,000 (six percent) to cover non-mesothelioma asbestos personal injury claims in accordance with the stipulation and order dated June 20, 2012 [D.I. 2578], whereby the parties agreed that present-value numbers for mesothelioma claims must be increased by six percent to arrive at an amount that reflects Debtors' total asbestos-related liability.

Thus, at present, there are $1.166 billion in the aggregate of asbestos personal injury claims against the Debtors – both present and future –that have been allowed pursuant to § 502(c)(1) of the Bankruptcy Code for purposes of any chapter 11 plan in these cases.

## ARGUMENT

**I.      AS A THRESHOLD MATTER, SUBJECTING FUTURE CLAIMANTS TO A BAR DATE IS IMPROPER UNDER LAW-OF-THE-CASE AND JUDICIAL ESTOPPEL PRINCIPLES**

Now that the FCR has successfully defended the rights of his constituency against the Debtors' attempt to marginalize their liability to Future Claimants, the Debtors should not be permitted to change their entire theory of the case to avoid paying the Future Claimants.  Under the doctrine of the law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)).  It was already settled by the FCR Order and the Estimation Decision that (i) the Debtors will have exposure to future payment demands that are not dischargeable and may only be treated pursuant to § 524(g), and (ii) claims and demands on account of the Debtors' current and future asbestos liability are allowed at $1.166 billion for purposes of any chapter 11 plan in these cases, without regard to any bar date.  The proposed bar date order runs counter to these adjudicative facts and the law, because (i) it is premised upon the position that all rights to payment relating to prepetition exposure to the Debtors' asbestos products can be disallowed under the bar date order and enjoined without full compliance with § 524(g), and (ii) it provides for the disallowance of (and as discussed below, permanent injunction against) claims that have already been allowed by the Estimation Decision for purposes of any chapter 11 plan in these cases.

The doctrine of judicial estoppel provides an independent basis to deny entry of the proposed bar date order.  Judicial estoppel prevents a litigant from asserting a position inconsistent with one previously asserted in the same or another proceeding.  *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.23d 355, 358 (3d Cir. 1996).  "The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."  *Id.* (internal quotations omitted).[8]  For example, in *In re Kindred Healthcare, Inc.*, this Court applied judicial estoppel to require affiliated debtors to account for disbursements on an estate-by-estate basis for purposes of filing monthly operating reports and calculating U.S. Trustee fees, where the debtors had previously represented to the Court that their centralized cash management system would permit such accounting. Case No. 99-3199 (MFW), 2003 Bankr. LEXIS 1308, *7-8 (Oct. 9, 2003).  Similarly, in *Official Committee for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, this Court applied judicial estoppel to preclude a creditors' committee from attacking transfers made by the debtor prepetition under executive employment contracts as fraudulent transfers or breaches of fiduciary duty, where the same contracts had been assumed by the debtor post-petition, with the committee's support, as a sound exercise of the debtor's business judgment.  330 B.R. 67, 70 (Bankr. D. Del. 2005).

Judicial estoppel precludes entry of the Debtors' proposed bar date order because the conceptual underpinning for the imposition of a bar date upon Future Claimants – i.e., that all rights to payment relating to exposure to the Debtors' products prepetition constitute *dischargeable* "claims" under *In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010) – is

---

[8]  The specific elements of judicial estoppel, all of which are present here, are that (i) the Debtors are asserting a position "irreconcilably inconsistent" with a position previously taken, (ii) the Debtors changed position "in a culpable manner threatening to the court's authority or integrity," and (iii) the "use of judicial estoppel is tailored to address the affront to the court's authority or integrity."  *See Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777–78 (3d Cir. 2001).

irreconcilable with the positions previously taken by the Debtors in appointing the FCR and in estimating Future Claims.[9]

The *Grossman's* opinion was issued more than 3.5 years ago, yet the Debtors have never suggested – until their cross-motion filed on October 15, 2013 – that their liability for Future Claims would depend in any way on Future Claimants' compliance with a bar date order. To the contrary, more than four months after *Grossman's* was decided, the Debtors specifically represented to this Court that a bar date was *not* a proper vehicle for delimiting and discharging Future Claims:

> [W]e thought about some of the reservations that [Judge Fitzgerald] had about a bar date, and frankly, we agreed with many of those reservations, and—but, by the same token, there's information that we need and, you know, we noted from prior [asbestos] cases that parties, or *debtors, seemed to be using the bar date primarily as a way to get information, not really for what the purpose of a bar date traditionally is, which is to have claims come in, object to claims, discharge claims, and that sort of thing. And it seemed to us, in some respects, it was like trying to fit a square peg into a round hole* . . . .

(Hr'g Tr. Oct. 18, 2010 at 47:24–48:19 (emphasis added)).

The Debtors later went through the time and expense of a six-day trial, with months of pre- and post-trial briefing, to estimate the amount of their future asbestos liability, *never once* asserting that this liability could be limited in any way by the claimants' non-compliance with a bar date order. It was only five months *after* the Estimation Decision essentially adopted the Claimants' Representatives' position, and allowed all present and future claims in the amount of $1.166 billion for purposes of any chapter 11 plan in these cases, that the Debtors sought to

---

[9] *See Forklift LP Corp. v. iS3C, Inc. (In re Forklift LP Corp.)*, 363 B.R. 388, 396 (Bankr. D. Del. 2007) (debtors were estopped from arguing that they would not be required to pay claims in full when debtors' assertion that plan conformed with § 1129(a)(9)(A) allowed debtors to get plan confirmed); *Finova Capital Corp v. Cote (In re Finova Capital Corp.)*, 358 B.R. 113, 117 (Bankr. D. Del. 2006) (debtors were estopped from arguing that the bankruptcy court should abstain when they had succeeded in getting state-court action dismissed by arguing that bankruptcy court was the proper forum).

impose a bar date upon Future Claimants.  Under these circumstances, the Debtors' proposed bar

date order smacks of a *post hoc* contrivance to collaterally attack the Estimation Decision.  This

is culpable behavior that implicates the integrity of the federal judiciary, which justifies the

application of judicial estoppel.  *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir.

1982) ("Judicial estoppel addresses the incongruity of allowing a party to assert a position in one

tribunal and the opposite in another tribunal.  If the second tribunal adopted the party's

inconsistent position, then at least one court has probably been misled."), *cited with approval by*

*Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2000).

## II.    SUBJECTING FUTURE CLAIMANTS TO A BAR DATE IS POINTLESS AND UNNECESSARY

Proofs of claim are a tool to be used when they would serve some legitimate purpose in

the proceeding.  *See In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985) ("A proof of claim or

interest should be filed only when some purpose would be served."); 4 Collier 501.01[1], at 501-

4 (quoting *Simmons*).  Since this Court has already estimated the value of present and future

asbestos related personal injury claims pursuant to § 502(c) of the Bankruptcy Code, imposition

of a bar date on thousands of asbestos-related personal injury claimants, including millions of

people who have been exposed to the Debtors' asbestos-containing products who have not yet

manifested any illness, fails to serve any legitimate purpose in these proceedings.

### A.    If a Bar Date for Future Claimants Is Established, the FCR Will File a Proof of Claim on Their Behalf in the Amount Previously Allowed By this Court.

As noted above, the Estimation Decision allows Future Claims against the Debtors in the

aggregate amount of approximately $990 million for purposes of any chapter 11 plan in these

cases.  Thus, if a bar date is imposed upon Future Claimants, the FCR, as the statutory fiduciary

appointed by this Court to protect the rights of Future Claimants, will file a proof of claim on

behalf of all Future Claimants in the amount previously allowed by the Estimation Decision for plan purposes.

If the FCR files a proof of claim on account of the Estimation Decision, which was not stayed pending appeal and thus remains in full force and effect, then such proof of claim must be allowed for purposes of confirmation of any chapter 11 plan.  Under these circumstances, the Debtors will gain nothing  by the establishment of a bar date for Future Claimants, other than to impose significant costs upon and cause mass confusion among them.

**B.      Neither of the Competing Chapter 11 Plans Requires a Bar Date to Be Established for Future Claimants**

Neither the Debtors' proposed plan (framed alternatively as a § 524(g) plan and a non-§ 524(g) plan) (the "Debtors' Plan") nor the plan proposed by the Claimants' Representatives (a pure § 524(g) plan) (the "Claimants' Plan") requires the establishment of a bar date.  Numerous courts have confirmed that neither the Bankruptcy Code nor the Bankruptcy Rules require a bar date for asbestos claims.[10]  Under both the Claimants' Plan and the Debtors' Plan, asbestos-related personal injury claims, present and future, will not be liquidated by the Court, but rather by a trust after confirmation and consummation of the plan.

The Bar Date Order acts as an end-run around the Estimation Decision, which has already established a path to a § 524(g) plan.  In the very first sentence of her Estimation Decision, Judge Fitzgerald explained that she was estimating the contingent or unliquidated asbestos claims against the Debtors "*pursuant to section 502(c)(1)*" (Estimation Decision at 1 (emphasis added)), which section explicitly provides that such claims "*shall be estimated for*

---

[10]  *See, e.g., Congoleum*, 2008 WL 314699, at *4 (denying bondholders' motion for bar date covering asbestos claims); *Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*, 277 B.R. 20, 34 n.8 (S.D.N.Y. 2002) (noting that "in many asbestos bankruptcies, no bar date [is] ever set"); *cf. In re Eagle-Picher Indus., Inc.*, 137 B.R. 679, 680 (Bankr. S.D. Ohio 1992) ("After careful consideration, we have reached the conclusion that while such bar dates are commonly set in Chapter 11 cases, upon good cause shown the court may dispense with one in a given case.").

*purpose of allowance*," 11 U.S.C. § 502(c)(1) (emphasis added).  The Estimation Decision thus establishes a $990 million claim on behalf of Future Claimants for purposes of any chapter 11 plan in these cases.  Pursuant to § 1126(a) and Bankruptcy Rule 3018, this claim is allowed "for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).  An asbestos-claims bar date is also unnecessary because both the Debtors and the Claimants' Representatives will need to solicit asbestos claimants' votes for purposes of § 524(g) in any event, regardless of whether their claims may be subject to an objection or whether such claims are ultimately allowed.  The voting requirements of § 524(g) are distinct from the voting requirements of § 1126.  *Compare* 11 U.S.C. § 1126(a) ("The holder of a claim or interest *allowed under section 502* of this title may accept or reject a plan." (emphasis added)) *with* 11 U.S.C. § 524(g)(2)(b)(ii)(IV)(bb) (for a debtor to receive the benefit of a channeling injunction under § 524(g), the court must determine that "a separate class or classes of the claimants *whose claims are to be addressed by a trust . . .* is established and votes, by at least 75 percent of those voting, in favor of the plan" (emphasis added)).  Thus, while in a non-asbestos case it is common for voting procedures to provide that, if a claim is subject to an objection as of the voting record date, the holder of such claim does not have the right to vote on the chapter 11 plan, the same does not hold true in an asbestos case.

A bar date will not further the Debtors' plan.  If the Debtors receive adequate votes in support of their plan, a bar date will be unnecessary because, under their § 524(g) plan, all asbestos-related claims will be channeled to a trust for resolution whether or not a proof of claim was filed.  If the Debtors do not receive adequate votes and attempt a § 1129(b) cram-down of their plan, a bar date will still be unnecessary because the Debtors will have to show how the $990 million in Future Claims established by the Estimation Decision will be satisfied in full

before International can recover anything on account of its equity interest.[11]  At a minimum, the

Court should thus wait until after voting to evaluate whether a bar-date and claims-allowance

process is necessary.

      **C.**     **Establishment of a Bar Date for Future Claimants
                 Would Have Numerous Unintended Consequences**

      No previous asbestos bankruptcy has ever purported to discharge future claims pursuant

to a bar date order—notwithstanding that the definition of "claim" recently adopted by the Third

Circuit has long been the law in other circuits—because imposing a bar date in asbestos

bankruptcies has significant negative consequences:

- **Individuals whose disease will not manifest for decades will be left without
  recourse when their diseases manifest.**  Future Claimants would be left to suffer
  and die from asbestos-related diseases without recompense.  This is not only
  manifestly unfair to those individuals, but also contrary to the Bankruptcy Code's
  animating principle of equal distribution to similarly situated creditors.
  "Congress created the § 524(g) trust mechanism in order to protect the due
  process rights of people who had been exposed but not yet affected, and who
  might not manifest injury until a time when all available compensation had been
  paid out to people who got sick faster."  *In re W.R. Grace & Co.*, 729 F.3d 332,
  341 (3d Cir. 2013) (citation omitted).

- **Future Claimants will have their due process rights violated.**  If the claims
  held by unwitting asbestos claimants who have already been injured by the
  Debtors but whose entitlement to damages will not materialize for years, if not
  decades, could permissibly be eliminated by means of the Bar Date Order,
  Congress would never have needed to enact (in the form of § 524(g)) legislation
  taking "account of the due process implications of discharging future claims of
  individuals whose injuries were not manifest at the time of the bankruptcy
  petition."  *Grossman's*, 607 F.3d at 127.  "By enacting § 524(g)," the Third
  Circuit reasoned in *Grossman's*, "Congress took account of the due process
  implications of discharging future claims of individuals whose injuries were not
  manifest at the time of the bankruptcy petition."  *Grossman's*, 607 F.3d at 127.
  Yet such a discharge is precisely what the Bar Date Order purports to allow.

---

[11] The Court's Estimation Decision provides the basis for any cram-down analysis.  *See In re Eagle-Picher
Indus., Inc.*, 189 B.R. 681, 682 (Bankr. S.D. Ohio 1995) (identifying one of "the purposes of estimation of asbestos
claims" as determining "*whether there is any equity available for equity security holders*" (emphasis added)), *aff'd*,
No. C-1-96-2-6, 1996 U.S. Dist. LEXIS 22742 (S.D. Ohio Sept. 25, 1996).

- **The Court will face an impossible claims-allowance process with tens of thousands of claims that it cannot liquidate filed by tens of thousands of individuals who are entitled to jury trials.**  The Court does not have core jurisdiction to make threshold determinations of the validity of asbestos personal injury claims.  *See* 28 U.S.C. § 157(b)(2).  In *Babcock & Wilcox*, the district court judge for the Eastern District of Louisiana was highly critical of the debtor's arguments that its proposed claims-objections procedures could be used to eliminate entire categories of claims.  The judge pronounced herself "awe-struck" when the debtor suggested that the court could dispose of the *first* 95,000 summary-judgment motions on asbestos personal-injury proofs of claim in only three months.  Hr'g Tr. Jan. 25, 2002, at 14, *In re Babcock & Wilcox Co.*, No. 00-cv-558 (E.D. La.).  The court in the *Congoleum* asbestos bankruptcy similarly concluded that an asbestos proof-of-claim resolution process was not feasible.  *See In re Congoleum Corp.*, No. 03-51524, 2008 WL 314699, at *3-4 (Bankr. D.N.J. Feb. 4, 2008) ("Moreover, the potential filing of thousands of proofs of claim will likely defeat the interests of judicial economy. . . . In light of the potentially large number of claims in this case, therefore, if a bar date is set it is likely that the Court will face a staggering volume of hearings upon objection of a particular claim.").

- **Millions of people will incur needless burden.**  Judge Fitzgerald estimated that as many as 40 million people may have been exposed to the Debtors' asbestos-containing products.  The Bar Date Order purports to require *every one of those individuals* to file a proof of claim form and an 18-page questionnaire by May 9, 2014, in order to protect his or her rights, including those who have no current disease symptoms and who may never develop any illness.  The Debtors' form questionnaire also requires irrelevant and very private medical information, such as information on all doctor visits a claimant has made in the last five years, even though Future Claimants are not yet alleging an asbestos-related disease.  Even in those questions that arguably may apply to Future Claimants, the Debtors' questionnaire seeks information such claimants cannot be expected to know without the benefit of formal and informal discovery of the Debtors—which the automatic stay of § 362 prohibits—and requires Future Claimants to certify that their submission is accurate.  For example, Future Claimants are asked to name the Debtors' products to which they were exposed and the products of other companies to which they may have been exposed, to identify the locations where they may have been exposed, and to provide similar information that, unlike a current claimant, an as-yet-healthy person cannot be expected to have spent the time to compile.

- **The Debtors' bar-date process would needlessly require the submission of meaningless " placeholder" claims filed by individuals who are not yet entitled to compensation.**  This is precisely what asbestos defendants have criticized for the past two decades, railing against unimpaired individuals making such claims in bankruptcy cases.  *See, e.g.*, David C. Landin *et al.*, Lessons Learned from the Front Lines, 16 J.L. & Pol'y 589, 595–96 & n.18 (2008) (collecting examples).  Here, the Debtors are *insisting* upon such a procedure, safe

in the knowledge that many unimpaired individuals are unlikely to bother to assert claims.

### III. THE PROPOSED BAR DATE ORDER IS IMPROPER BECAUSE IT CONTAINS INJUNCTIVE PROVISIONS THAT CAN ONLY BE OBTAINED THROUGH A CONFIRMED CHAPTER 11 PLAN

The relief afforded the Debtors under their proposed bar date order exceeds the scope of the relief authorized under Bankruptcy Rule 3003(c)(2). The Rule speaks only to voting on and receiving a distribution under a plan: "The clear provisions of Bankruptcy Rule 3003(c)(2) limit the rights of a creditor failing to file a proof of claim *only with respect to voting and distribution under the plan*. Bar orders issued pursuant to this rule have *no other effect*." *Grynberg v. U.S. (In re Grynberg)*, 986 F.2d 367, 371 (10th Cir. 1993) (emphases added).

The Bar Date Order goes well beyond what Rule 3003(c)(2) permits, by imposing a discharge injunction that purports to "*forever bar[], estop[] and enjoin[]*" future asbestos claims against the Debtors. (Bar Date Order, ¶ 7 (emphasis added)). Enjoining unscheduled claims that are not filed by the bar date, as the Bar Date Order purports to do, grants relief substantially beyond that contemplated by Bankruptcy Rule 3003. As the Court has recognized, "[d]isallowance and dischargeability are different issues," and "disallowing [a] claim does not make it disappear." *In re Zandford*, No. 05-13305, 2006 Bankr. LEXIS 1398, at *4 (Bankr. D. Del. July 18, 2006) (citations omitted).

To obtain an injunction such as that purportedly provided under the Bar Date Order, Bankruptcy Rule 7001(7) requires the Debtors to commence an adversary proceeding. *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("Rule 7001 of the Federal Rules of Bankruptcy Procedure . . . requires the commencement of an adversary proceeding (as opposed to proceeding by motion pursuant to Rule 9014) if injunctive relief is sought."). When seeking to extend the stay to International on the first day of these cases, the Debtors

"commenced [an] adversary proceeding in accordance with Bankruptcy Rule 7001." *See*

[Docket No. 9]. But when seeking an injunction under the aegis of the proposed bar date order,

the Debtors did not. Nor did they, in their cross-motion, address the standard for obtaining an

injunction or make any evidentiary showing that they are entitled to an injunction. Under these

circumstances, including the proposed injunctive language in a bar date order would be

manifestly improper. *See In re Catholic Diocese of Wilmington, Inc.*, 484 B.R. 629, 638-40 (D.

Del. 2012) (Robinson, J.) (overturning bankruptcy court order that "imposed a permanent

injunction on third parties without referring to any evidentiary requirements . . . and without

requiring the [movant] to bear any burden of proof in that regard").

## **CONCLUSION**

For all of the foregoing reasons, the FCR respectfully requests that the Court:

(i) sustain the Objection; (ii) enter a bar date order substantially in the form proposed by the

Claimants' Representatives; and (iii) grant such other and further relief as justice may require.

Dated: January 2, 2014

Young Conaway Stargatt & Taylor, LLP


/s/ *Edwin J. Harron*
James L. Patton, Jr., Esquire
Edwin J. Harron, Esquire
Edmon Morton, Esquire
Sharon Zieg, Esquire
Erin Edwards, Esquire
Rodney Square
1000 North King Street
Wilmington, DE  19801
302-571-6600 (Phone)

*Counsel to the Future Claimants'
Representative*