**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| SPECIALTY PRODUCTS HOLDING CORP., | : | Case No. 10-11780 (PJW) |
| et al.,[1] | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | **(Proposed) Hearing: 10/20/14 at 10:00 a.m.** |
| | : | **(Proposed) Obj. Deadline: 10/15/14 at 4:00 p.m.** |

**MOTION OF DEBTORS FOR AN ORDER (I) APPROVING
THE DISCLOSURE STATEMENT, (II) ESTABLISHING PROCEDURES
FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR
REJECT PROPOSED JOINT PLAN OF REORGANIZATION AND
(III) SCHEDULING A HEARING ON CONFIRMATION OF PROPOSED JOINT PLAN
OF REORGANIZATION AND APPROVING RELATED NOTICE PROCEDURES**

The above-captioned debtors (collectively, the "Debtors") hereby move the Court

for the entry of an order, pursuant to sections 105(a), 502, 1125(b), 1126 and 1128 of the

Bankruptcy Code and Rules 2002, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 3017-1 of the Local Rules for the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving the Disclosure

Statement (as defined below) as containing "adequate information", (ii) establishing procedures

for the solicitation and tabulation of votes to accept or reject the Joint Plan of Reorganization of

Specialty Products Holding Corp., Bondex International, Inc., Republic Powdered Metals, Inc.

and NMBFiL, Inc., dated September 26, 2014 [D.I. 5025] (as it may be amended, the "Plan"),[2]

including approval of (a) the forms of ballots for submitting votes on the Plan (collectively, the

---

[1]   The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Specialty Products Holding Corp. (0857); Bondex International, Inc. (4125); Republic Powdered Metals, Inc. (4388); and NMBFiL, Inc. (2441).  The address of Specialty Products Holding Corp. and Bondex International, Inc. is 4515 St. Clair Avenue, Cleveland, Ohio 44103. The address of Republic Powdered Metals, Inc. and NMBFiL, Inc. is 2628 Pearl Road, Medina, Ohio 44256.

[2]   Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

"Ballots"), (b) the deadline for the submission of Ballots, (c) the contents of the proposed

solicitation packages to be distributed to creditors and other parties in interest in connection with

the solicitation of votes on the Plan (collectively, the "Solicitation Packages"), (d) the proposed

record date for Plan voting, and (e) certain related relief; and (iii) scheduling a hearing on

confirmation of the Plan (the "Confirmation Hearing") and approving related notice procedures.

In support of this motion, the Debtors respectfully represent as follows:

## Background

1.      On May 31, 2010, Specialty Products Holding Corp. ("SPHC") and

Bondex International, Inc. ("Bondex" and, together with SPHC, the "Initial Debtors") each

commenced a reorganization case by filing a voluntary petition for relief under chapter 11 of the

Bankruptcy Code.  NMBFiL filed a voluntary petition for relief under chapter 11 of the

Bankruptcy Code on August 15, 2014, and Republic (together with NMBFiL, the

"New Debtors") commenced a chapter 11 case on August 31, 2014.

2.      The Debtors are continuing in possession of their respective properties and

are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.[3]

3.      On June 10, 2010, the United States Trustee for the District of Delaware

(the "U.S. Trustee") appointed a statutory committee of asbestos personal injury claimants

(the "Committee") in the Initial Debtors' cases, pursuant to section 1102 of the Bankruptcy Code.

The U.S. Trustee reconstituted the Committee on October 18, 2010 [D.I. 457] and again on

December 14, 2010 [D.I. 666].  The Court entered an order [D.I. 374] dated October 18, 2010

---

[3]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to
28 U.S.C. §§ 1408 and 1409.

and an order dated September 25, 2014 [D.I. 5017] appointing Professor Eric D. Green as the legal representative for persons who might subsequently asserts demands, as defined in section 524(g) of the Bankruptcy Code, against the Debtors (the "Future Claimants' Representative").

4.    SPHC is a wholly-owned subsidiary of non-debtor RPM International Inc. ("International"), and the holding company parent of Debtor Bondex.  The New Debtors are indirect subsidiaries of International and affiliates of the Initial Debtors.

5.    On July 26, 2014, Republic, the Initial Debtors and International entered into a settlement term sheet (the "Republic Term Sheet") with the Committee, the Future Claimants' Representative and others.

6.    On the same date, NMBFiL and International entered into a settlement term sheet (together with the Republic Term Sheet, the "Term Sheets") with (i) an ad hoc committee of law firms representing asbestos claimants that have pursued and presently are pursuing claims against NMBFiL, and (ii) the Future Claimants' Representative, in his capacity as the future claimants' representative selected by NMBFiL and the ad hoc committee.

7.    Pursuant to the Term Sheets, the parties agreed on a consensual plan of reorganization that will provide for the creation and funding of a trust or trusts for the benefit of holders of Asbestos Personal Injury Claims.

8.    On September 26, 2014, the Debtors filed the Plan and an accompanying disclosure statement [D.I. 5026] (as it may be amended, the "Disclosure Statement").  Pursuant to an order of the Court entered on September 29, 2014 [D.I. 5031], the Court scheduled a hearing for October 20, 2014 at 10:00 a.m. (prevailing Eastern Time) to consider the adequacy of the Disclosure Statement.  Pursuant to the Plan, only Classes 4a (SPHC Asbestos Personal Injury

Claims) and 4b (NMBFiL Asbestos Personal Injury Claim) are impaired and, thus, entitled to vote to accept or reject the Plan. The Plan leaves the remaining classes of Claims and Interests unimpaired and, consequently, they are deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. As a result, the Debtors herein seek approval to solicit votes from only holders of SPHC Asbestos Personal Injury Claims and NMBFiL Asbestos Personal Injury Claims and request that the Court find that all other classes are unimpaired and deemed to accept the Plan.

### Approval of Disclosure Statement

9.      The Debtors request that the Court approve the Disclosure Statement as providing "adequate information" in accordance with section 1125 of the Bankruptcy Code. For the reasons described below, the Debtors submit that such approval is warranted and appropriate.

10.      Under section 1125 of the Bankruptcy Code, a debtor must provide its creditors and interest holders with "adequate information" regarding the debtor's proposed plan:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . . [I]n determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information . . . .

11 U.S.C. § 1125(a)(1).

11.      The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision on whether to vote to accept or reject a plan. See, e.g., Century Glove, Inc. v.

First Am. Bank of New York, 860 F.2d 94, 100 (3rd Cir. 1988) ("§ 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote"); In re Monnier Bros., 755 F.2d 1336, 1341 (8th Cir. 1985); In re Phoenix Petroleum, Co., 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); In re Unichem Corp., 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987).  Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization.  Century Glove, 860 F.2d at 100.

12.    A court has broad discretion in determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code.[4]  Congress intended that courts exercise their grant of discretion to tailor disclosures made in connection with a chapter 11 plan while recognizing the broad range of businesses in which debtors engage and the circumstances accompanying chapter 11 cases.  See H.R. Rep. No. 595, at 408-09 (1977) reprinted in 1978 U.S.C.C.A.N. 5963, 6364-65.  Accordingly, a court's determination of the adequacy of information in a disclosure statement must occur on a case-by-case basis, focusing on the unique facts and circumstances of each case.  See S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 (stating that "the information required will necessarily be governed by the circumstances of the case").

---

[4]    See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.3d 414, 417 (3d Cir. 1988) ("From the legislative history of section 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court."); In re PC Liquidation Corp., 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis . . . with the determination being largely within the discretion of the bankruptcy court."); First Am. Bank of New York v. Century Glove, Inc., 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources).

13.     Here, the Debtors' Disclosure Statement contains ample information, which is sufficient for stakeholders to consider when making informed decisions about whether to vote to accept or reject a plan, including the following types of pertinent information:

a.      Preliminary Statement:  Article I of the Disclosure Statement includes a statement of the Debtors in support of the Plan, the purpose and effect of the Plan, a summary of the terms of the settlement among the Debtors, International, the Committee and the Future Claimants' Representative that forms the basis of the Plan and an overview of the treatment of Claims and Interests under the Plan;

b.      Overview of the Plan:  Article II of the Disclosure Statement (i) contains a detailed summary of the classification and treatment of Claims and Interests under the Plan and the value of distributions to be received by holders of Allowed Claims and Allowed Interests and (ii) sets forth the statutory requirements for confirmation and consummation of the Plan, including a liquidation analysis;

c.      History of the Debtors:  Article III of the Disclosure Statement includes a discussion of the Debtors' corporate history, an overview of their business operations and asbestos personal injury litigation, and certain events leading to the commencement of these chapter 11 cases;

d.      Events During the Reorganization Cases:  Article IV of the Disclosure Statement discusses certain key events that have taken place during the course of these chapter 11 cases;

e.      Risk Factors:  Article V of the Disclosure Statement discusses certain risk factors that may affect the Plan;

f.      Means for Implementation of the Plan:  Articles VI, VII and VIII of the Disclosure Statement describes the means by which the Plan will be implemented including, among other things, distributions under the Plan, procedures for resolving disputed claims, and the treatment of executory contracts and unexpired leases;

g.      Summary of Release and Exculpation Provisions:  In accordance with Bankruptcy Rule 3016(c), Articles VII.R and VII.U of the Disclosure Statement describes in specific and conspicuous language certain releases and related injunctions that are essential components of the Plan;

h.      Certain Federal Income Tax Consequences of the Plan:  Article IX of the Disclosure Statement discusses certain U.S. federal income tax law consequences of the Plan.

14.     Accordingly, the Disclosure Statement contains the information set forth above in a manner that provides holders of claims and interests with "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and otherwise complies with section 1125 of the Bankruptcy Code.

### Notice of the Disclosure Statement Hearing

15.     Bankruptcy Rule 3017(a) provides as follows:

> [A]fter a disclosure statement is filed in accordance with [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in [Bankruptcy] Rule 2002 to consider the disclosure statement and any objections or modifications thereto.  The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the [Bankruptcy] Code, the Securities and Exchange Commission, and any party in interest who requests in writing a copy of the statement or plan.

Fed. R. Bankr  P. 3017(a).  In addition, Bankruptcy Rule 2002(b) requires notice by mail to all creditors and indenture trustees of the time set for filing objections to, and the hearing to consider approval of, a disclosure statement.  Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court.

16.     Pursuant to an order of the Court entered on September 29, 2014 [D.I. 5031], the Court shortened notice of the hearing on the adequacy of the Disclosure Statement and scheduled the hearing for October 20, 2014 at 10:00 a.m. (prevailing Eastern Time).

17.     The Debtors mailed copies of a notice in the form attached hereto as Exhibit A and incorporated herein by reference (the "Disclosure Statement Notice") by first-class mail to the following parties:  (a) all persons or entities that have filed proofs of claim or interests

in the Debtors' cases that have not been previously withdrawn or previously disallowed by order of this Court and have been docketed on or before the date of the Disclosure Statement Notice;[5] (b) all persons or entities listed in the Debtors' respective schedules of assets and liabilities, and any amendments thereto (collectively, the "Schedules") as holding liquidated, noncontingent, undisputed claims; (c) all persons or entities listed in the Debtors' list of equity security holders; (d) all known attorneys representing holders of Asbestos Personal Injury Claims; (e) any other known holders of claims against, or interests in, the Debtors; and (f) all parties currently included on the general service list maintained by the Debtors pursuant to Bankruptcy Rule 2002 in their chapter 11 cases (the "2002 List").  Among other things, the Disclosure Statement Notice identifies the date, time and place of the hearing to consider the approval of the Disclosure Statement (the "Disclosure Statement Hearing") and the deadline and procedures for asserting objections to the approval of the Disclosure Statement.[6]

18.    The Debtors also served a copy of the Disclosure Statement Notice, together with the Disclosure Statement and the Plan, on counsel to the Committee, counsel to the Futures Claimants' Representative, counsel to the U.S. Trustee, the Securities and Exchange Commission (the "SEC") and the 2002 List.

---

[5]    To the extent that any proof of claim filed in these cases identifies an attorney for the claimant, the Debtors sent the Disclosure Statement Notice only to the attorney and not to the represented claimant, unless the claimant's mailing information also is provided, in which case, both the claimant and the attorney were served with the Disclosure Statement Notice.

[6]    In particular, the Disclosure Statement Notice provides that objections or proposed modifications to the Disclosure Statement, if any, must:  (a) be in writing; (b) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection or proposed modification and provide the specific language of any proposed modification; and (d) be filed with the Court and served on (i) counsel to the Debtors, (ii) counsel to the Committee, (iii) counsel to the Futures Claimants' Representative, (iv) counsel to International and (v) counsel to the U.S. Trustee, so that the objection or proposed modification is received no later than 4:00 p.m. (prevailing Eastern Time) on October 15 2014.

19.      In addition, the Debtors will provide copies of the Disclosure Statement and the Plan to any additional party in interest that makes a request for such documents in the manner specified in the Disclosure Statement Notice and Bankruptcy Rule 3017(a).  The Debtors also have made these documents available on the website of the Debtors' voting agent[7] at www.loganandco.com.

20.      The Debtors submit that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and, accordingly, the Debtors request that the Court approve such notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and Local Rules.

### The Solicitation and Tabulation Procedures

21.      By this motion, the Debtors request approval of the Ballot Solicitation and Tabulation Procedures (collectively, the "Solicitation and Tabulation Procedures") that are attached hereto as Exhibit B and incorporated herein by reference.[8]  The Solicitation and Tabulation Procedures set forth in detail (a) the procedures for the distribution of Solicitation Packages to all known creditors, interest holders and certain other parties in interest and (b) certain procedures and rules regarding the tabulation of votes to accept or reject the Plan. The Debtors submit that the Solicitation and Tabulation Procedures are appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

---

[7]      Pursuant to an order of the Court [D.I. 48],  the Court (a) authorized the Initial Debtors to retain Logan & Company, Inc. ("Logan") as their claims and noticing agent in these cases and (b) among other things, authorized Logan to assist the Debtors with the preparation, mailing and tabulation of ballots for the purpose of voting to accept or reject a plan of reorganization.  An application to authorize Logan to provide those services to the New Debtors is pending.  Accordingly, the Debtors propose to have Logan serve as the Debtors' voting agent (the "Voting Agent") in connection with the preparation, mailing and tabulation of the Ballots.

[8]      The Solicitation and Tabulation Procedures, as approved, will be included in the Solicitation Packages as an exhibit to the Disclosure Statement.

### *The Solicitation Packages*

22.     Bankruptcy Rule 3017(d) identifies the materials that must be provided to

holders of claims and equity interests for purposes of soliciting their votes and providing

adequate notice of the hearing on confirmation of a plan of reorganization:

> Upon approval of a disclosure statement, — except to the extent
> that the court orders otherwise with respect to one or more
> unimpaired classes of creditors or equity security holders — the
> debtor in possession, trustee, proponent of the plan, or clerk as the
> court orders shall mail to all creditors and equity security holders,
> and in a chapter 11 reorganization case shall transmit to the United
> States Trustee,
>
> > (1)     the plan or a court-approved summary of the plan;
> >
> > (2)     the disclosure statement approved by the court;
> >
> > (3)     notice of the time within which acceptances and rejections of such
> > plan may be filed; and
> >
> > (4)     such other information as the court may direct, including any court
> > opinion approving the disclosure statement or a court-approved
> > summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the
> hearing on confirmation shall be mailed to all creditors and equity
> security holders pursuant to [Bankruptcy] Rule 2002(b), and a
> form of ballot conforming to the appropriate Official Form shall be
> mailed to creditors and equity security holders entitled to vote on
> the plan.

Fed. R. Bankr. P 3017(d)

23.     The Solicitation Packages, consisting of the materials required to be

provided to holders of claims and equity interests under Bankruptcy Rule 3017(d), will be mailed

to such parties after the Court has approved the Disclosure Statement.[9]  Specifically, the Debtors

propose to mail, or cause to be mailed, Solicitation Packages, each containing a copy of:  (a) the

---

[9]     The Debtors have used the term "Solicitation Package" herein as a matter of convenience.  As indicated,
however, only claims in Classes 4a and 4b under the Plan will be voting on the Plan.  As a result, all other
classes of Claims and Interests will receive the Solicitation Packages not in connection with the solicitation
of their votes, but rather solely in connection with the hearing on confirmation of the Plan.

Confirmation Hearing Notice (as such item is defined below); (b) a CD-ROM containing the

Disclosure Statement (together with the exhibits thereto, including the Plan, that have been filed

with the Court before the date of the mailing); (c) letters, including from the Committee,

recommending acceptance of the Plan;[10] and (d) for Solicitation Packages sent to holders of

Asbestos Personal Injury Claims or their attorneys, as applicable, an appropriate form of Ballot,

a Ballot-return envelope, and such other materials as the Court may direct.  Consistent with

sections 1126(f) and 1126(g) of the Bankruptcy Code and Bankruptcy Rule 3017(d), Solicitation

Packages for holders of claims against a Debtor in a class under the Plan that is deemed to accept

the Plan under section 1126(f) of the Bankruptcy Code will not include a Ballot.

24.     As indicated above, the Debtors propose to include in the Solicitation

Packages a CD-ROM containing the Disclosure Statement and the exhibits thereto, including the

Plan.  The Debtors anticipate that the Disclosure Statement, including its exhibits, will exceed

600 pages in length.  Accordingly, to reduce administrative costs associated with printing and

mailing that voluminous document, the Debtors propose to serve it via CD-ROM.  Moreover, all

Plan-related documents, including the Disclosure Statement, will be available via the Court's

website at www.deb.uscourts.gov, and on the website of the Debtors' Voting Agent at

www.loganandco.com.  Any party in interest may obtain a paper copy of the documents

otherwise provided on CD-ROM by sending a request, in writing, to the Voting Agent either

though mail, overnight delivery, or electronic mail to sph@loganandco.com so that such request

is received at least ten business days before the Voting Deadline by the Voting Agent.  The

Solicitation Packages will be mailed not less than 35 days prior to the Voting Deadline to:

(a) holders of Asbestos Personal Injury Claims or the Firms in accordance with the applicable

---

[10]     The Debtors intend to file copies of any letters with the Court prior to the Disclosure Statement Hearing.

Certified Plan Solicitation Directive; (b) potential holders of Asbestos Personal Injury Indirect

Claims; (c) other holders of Claims and Interests as of the Voting Record Date (as defined

below); and (d) to the extent not included in the foregoing, all parties on the 2002 List, counsel to

the Committee, the SEC and counsel to the U.S. Trustee.

25.    To the extent that Disclosure Statement Notices are returned by the United

States Postal Service as undeliverable as a result of incomplete or inaccurate addresses

(the "Undeliverable Addresses"), the Debtors believe that it would be costly and wasteful to mail

Solicitation Packages to the Undeliverable Addresses.  Therefore, the Debtors request that they

be excused from mailing Solicitation Packages to those entities for which the Debtors have only

Undeliverable Addresses unless the Debtors are provided with accurate addresses for such

entities, in writing, on or before the date of the Disclosure Statement Hearing.  If a Solicitation

Package is returned as undeliverable, the Voting Agent will resend such Solicitation Package

only once, provided that the United State Post Office has included a forwarding address at least

five business days before the Voting Deadline.

### *Procedures For Vote Solicitation*

26.    As set forth in the Solicitation and Tabulation Procedures, along with a

copy of this motion, the Debtors are mailing copies of a notice (the "Asbestos Personal Injury

Claims Solicitation Notice") and a Certified Plan Solicitation Directive, substantially in the form

attached hereto as Exhibit C and incorporated herein by reference, by first-class mail to all

known attorneys representing holders of Asbestos Personal Injury Claims (other than holders of

Asbestos Personal Injury Indirect Claims) (collectively, the "Firms").  The Asbestos Personal

Injury Claims Solicitation Notice will:  (a) notify the Firms of the date, time and place of the

Disclosure Statement Hearing and the deadline and procedure for asserting objections to the

approval of the Disclosure Statement or this motion; (b) notify the Firms of the options proposed

for soliciting votes on the Plan in respect of Asbestos Personal Injury Claims; and (c) request that

each Firm complete and return the Certified Plan Solicitation Directive to the Voting Agent on or

before October 13, 2014.

27.     The Certified Plan Solicitation Directive permits each Firm to direct the

Voting Agent with regard to the solicitation of votes on the Plan from individuals, estates or

entities who or which hold Asbestos Personal Injury Claims (collectively, the "Clients")

according to one of the following procedures:

a.      Master Ballot Solicitation Method.  If a Firm certifies that it has the
authority under applicable law to vote on behalf of its Clients, the Firm
may direct the Voting Agent to serve the Firm with one Solicitation
Package and one Master Ballot on which the Firm must record the votes
on the Plan for each of its Clients.  If the Firm elects this procedure, the
Firm may also request that, for informational purposes, the Voting Agent
serve Solicitation Packages (without a Ballot) on its Clients.

b.      Direct Solicitation Method.  If a Firm does not have the authority to vote
on behalf of its Clients, or if a Firm prefers to have each of its Clients cast
their own votes on the Plan, such Firm may direct the Voting Agent to
solicit votes on the Plan directly from its Clients.

c.      Indirect Solicitation Method.  If a Firm does not have the authority to vote
on behalf of its Clients or the attorney prefers to have the Clients cast their
own votes on the Plan, the attorney may direct the Voting Agent to deliver
the Solicitation Packages to the Firm, which will, in turn, deliver the
Solicitation Packages to its Clients.  If the Firm selects this method: (i) the
Voting Agent will cause the requested number of Solicitation Packages,
including appropriate Ballots, to be served on the Firm; (ii) the Firm must
deliver the Solicitation Packages to the Clients within three Business Days
after receipt; and (iii) the Firm must file an affidavit of service with the
Bankruptcy Court, and send a copy of such affidavit to the Voting Agent,
within three Business Days of such service.  The names and addresses of
the Clients served, however, do not need to be listed on the affidavit of
service.  The affidavit of service only needs to state that service was
completed, the date(s) that service was completed and the attorney has
provided or will provide the Voting Agent with the required lists of
clients, as described in the Solicitation and Tabulation Procedures.

d.      Hybrid Solicitation Method.  If a Firm certifies that it has the authority
under applicable law to vote, and intends to exercise that power, only for
certain of the Clients (collectively, the "Master Ballot Clients"), the Firm

may direct the Voting Agent to serve the Firm with one Solicitation Package and one Master Ballot on which the Firm must record the votes with respect to the Plan for the Master Ballot Clients.  The Firm also may request that, for informational purposes, the Voting Agent serve Solicitation Packages (without a Ballot) on the Master Ballot Clients. With respect to such Firm's other Clients that are not Master Ballot Clients (collectively, the "<u>Individual Ballot Clients</u>"), the Firm must elect the procedure under either the Direct Solicitation Method (subsection (b) above) or the Indirect Solicitation Method (subsection (c) above).

28.    To facilitate the timely delivery of Solicitation Packages, the Debtors are requesting that each Firm submit the Certified Plan Solicitation Directive to the Voting Agent by October 13, 2014.  If a Firm fails to return the Certified Plan Solicitation Directive by October 13, 2014, the Firm shall be deemed to have directed the Voting Agent to solicit votes on the Plan from its Client according to the Master Ballot Solicitation Method described above.

29.    The Debtors are also requesting that each Firm submit to the Voting Agent on CD-ROM a list (the "<u>Client List</u>") that contains the name and last four digits of each Client's social security number (and, if the Firm is requesting that the Voting Agent directly serve a Solicitation Package on the Client, the address) of each holder of an Asbestos Personal Injury Claim that the Firm represents.  The Client List must be in Excel or a comparable electronic format unless the Firm has fewer than 100 Clients, in which case the Firm may provide the Client List in hard copy by sending it to the Voting Agent through mail or overnight delivery.

30.    The Debtors are requesting that the Client Lists be submitted by (a) the Voting Deadline for those Clients for whom the Firm will vote on a Master Ballot; and (b) October 20, 2014 for any Clients on whom the Firm (i) is requesting that the Voting Agent serve a Solicitation Package or (ii) will serve a Solicitation Package.

***Procedures for Vote Tabulation***

31.    Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been
> accepted by creditors, other than any entity designated under
> subsection (e) of this section, that hold at least two-thirds in
> amount and more than one-half in number of the allowed claims of
> such class held by creditors, other than any entity designated under
> subsection (e) of this section, that have accepted or rejected such
> plan.

11 U.S.C. § 1126(c).  In addition, section 524(g) of the Bankruptcy Code requires that:

> [A]s part of the process of seeking confirmation of such plan [the
> court must determine that] a separate class or classes of claimants
> whose claims are to be addressed by a trust described in
> [section 524(g)(2)(B)(i)]  is established and votes by at least
> 75 percent of those voting, in favor of the plan.

11 U.S.C. § 524(g)(2)(B)(ii)(IV).  Further, Bankruptcy Rule 3018(a)  provides that the "court

after notice and hearing may temporarily allow the claim or interest in an amount which the court

deems proper for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).

      32.    Solely for purposes of voting to accept or reject the Plan — and not for the

purpose of the allowance, distribution or any other purpose, and without prejudice to the rights of

the Debtors in any other context — the Debtors propose that each Asbestos Personal Injury

Claim entitled to vote to accept (i.e., vote in favor of) or reject (i.e., vote against) the Plan be

temporarily allowed in accordance with the following tabulation rules, which are set forth in

greater detail in section 8 of the Solicitation and Tabulation Procedures (collectively,

the "Tabulation Rules"):

      a.    Each holder of an Asbestos Personal Injury Claim will have a single vote
in the amount, for voting purposes only, that corresponds to such
claimant's level of disease (the "Disease Category"), as indicated on a
Ballot cast by such holder or on a Master Ballot cast on behalf of such
Client.[11]  If a holder of an Asbestos Personal Injury Claim or a Firm is
unable to certify on a Ballot that the claimant meets the medical and

---

[11]    In bankruptcy cases with mass tort issues, courts often have approved the temporary allowance of tort claims in varying amounts based on matrix values for trust distribution procedures for voting purposes. See In re Kaiser Aluminum Corporation, Case No. 02-10429 (JKF) (Bankr. D. Del. Sept. 8, 2005); In re Pittsburgh Corning Corporation, Case No. 00-22876 (Bankr. W.D. Pa.. Nov. 26, 2003).

exposure criteria for any of the Disease Categories but otherwise certifies on the Ballot that the claimant has been exposed to an asbestos-containing product such that the claimant holds an Asbestos Personal Injury Claim as defined in the Plan, the claimant will, for voting purposes only, be considered to have a claim in the amount of $1.00.

b.    (i)    The Disease Categories applicable to SPHC Asbestos Personal Injury Claims other than Asbestos Personal Injury Indirect Claims and the allowed amount for such Claims for voting purposes are as follows:

- Other Asbestos Disease (Level I), the Claim amount for voting purposes only will be $1.

- Asbestosis/Pleural Disease (Level II), the Claim amount for voting purposes only will be $1,200.

- Asbestosis/Pleural Disease (Level Ill), the Claim amount for voting purposes only will be $3,700.

- Severe Asbestosis (Level IV), the Claim amount for voting purposes only will be $10,000.

- Other Cancer (Level V), the Claim amount for voting purposes only will be $25,000.

- Lung Cancer 2 (Level VI), the Claim amount for voting purposes only will be $9,250.

- Lung Cancer I (Level VII), the Claim amount for voting purposes only will be $50,000.

- Mesothelioma (Level VIII), the Claim amount for voting purposes only will be $120,000.

(ii)    The Disease Categories applicable to NMBFiL Asbestos Personal Injury Claims other than Asbestos Personal Injury Indirect Claims and the allowed amount for such Claims for voting purposes are as follows:

- Other Asbestos Disease (Level I), the Claim amount for voting purposes only will be $1.

- Asbestosis/Pleural Disease (Level II), the Claim amount for voting purposes only will be $1,200.

- Asbestosis/Pleural Disease (Level Ill), the Claim amount for voting purposes only will be $3,700.

- Severe Asbestosis (Level IV), the Claim amount for voting purposes only will be $10,000.

- Other Cancer (Level V), the Claim amount for voting purposes only will be $25,000.

- Lung Cancer 2 (Level VI), the Claim amount for voting purposes only will be $9,250.

- Lung Cancer I  (Level VII), the Claim amount for voting purposes only will be $50,000.

- Mesothelioma (Level VIII), the Claim amount for voting purposes only will be $120,000.

c.      For purposes of computing votes, each holder of an Asbestos Personal Injury Claim shall be deemed to have voted the full amount of such Asbestos Personal Injury Claim according to the Disease Category specified for such Asbestos Personal Injury Claim.

d.      If no disease category is selected for an Asbestos Personal Injury Claim, the Voting Agent shall treat the vote cast in respect of such Asbestos Personal Injury Claim as Other Asbestos Disease (Level I).

e.      If more than one Disease Category is selected for an Asbestos Personal Injury Claim, the Voting Agent shall count the vote cast in respect of such Asbestos Personal Injury Claim in the amount corresponding to the Disease Category with the highest allowed amount from those Disease Categories selected.

f.      Each holder of an Asbestos Personal Injury Indirect Claim will, for voting purposes only, be considered to hold a Claim in the amount of $1.00.

In addition, the Debtors also will be tabulating votes from holders of Asbestos

Personal Injury Claims by headcount for purposes of section 524(g) of the Bankruptcy Code.

33.      In tabulating the Ballots, the Debtors request that the following additional

procedures be applied:

a.      only Ballots cast by those entitled to vote as set forth in section 8.a of the Solicitation and Tabulation Procedures, will be counted as votes to accept or votes to reject the Plan;

b.      only those Ballots that are received by the Voting Agent in the manner set forth in section 7.b of the Solicitation and Tabulation Procedures by the Voting Deadline will be counted as votes to accept or reject the Plan;

c.      any Ballot that (i) is incomplete (including, without limitation, a Master Ballot with respect to a holder of an Asbestos Personal Injury Claim on which the Firm fails (a) to make the required certification or (b) to include the required exhibit, (ii) is unsigned, (iii) is illegible or (iv) contains insufficient information to identify the claimants, will not be counted as a vote to accept or reject the Plan with respect to those claimants for whom the information is deficient or incomplete;

d.      any Ballot that is properly completed, executed and timely returned to Voting Agent but does not indicate an acceptance or rejection of the Plan will not be counted as either a vote to accept or a vote to reject the Plan;

e.      multiple Master Ballots may be completed and delivered to the Voting Agent, and votes reflected by multiple Master Ballots will be counted except to the extent that they are duplicative of other Master Ballots;

f.      if two or more Master Ballots are inconsistent, in vote or disease asserted, the latest dated Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Court;

g.      if more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s), rather than supersede(s), the earlier Master Ballot(s), the Firm submitting such Master Ballot should mark the subsequent Master Ballot(s) as "Supplement" and clearly mark which of the votes reflected thereon are additional votes;

h.      if two or more Master Ballots are received from separate Firms, each of which purports to represent the same holder of an Asbestos Personal Injury Claim, the vote by such holder will be counted only once at the higher selected Disease Category, to the extent the Disease Categories are inconsistent, and only if such votes to accept or reject are consistent (if the votes are not consistent, none of the votes will be counted);

i.      if the holder of an Asbestos Personal Injury Claim casts more than one Ballot voting an Asbestos Personal Injury Claim before the Voting Deadline, the latest Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus will supersede any prior Ballots;

j.      if Ballots are received from each of a holder of an Asbestos Personal Injury Claim and a Firm or agent, the Ballot received from the holder of the Asbestos Personal Injury Claim will be the Ballot that is counted, and the vote of the purported Firm or agent will not be counted.

34.     The Debtors believe that the Tabulation Rules will establish a fair and equitable voting process.  Nevertheless, if any claimant seeks to challenge the allowance of its claim for voting purposes in accordance with the Tabulation Rules, the Debtors propose that such claimant be required to file a motion, pursuant to Bankruptcy Rule 3018(a), for an order temporarily allowing such claim in a different amount for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion") and serve such motion on the Debtors so that it is received on or before November 3, 2014.  Such motion will, to the extent necessary, be heard at the Confirmation Hearing.  In accordance with Bankruptcy Rule 3018, the Debtors further propose that any Ballot submitted by a creditor that files a Rule 3018 Motion will be counted solely in accordance with the Debtors' proposed Tabulation Rules and the other applicable procedures contained in the Solicitation and Tabulation Procedures unless and until the underlying claim is temporarily allowed by the Court for voting purposes in a different amount, after notice and a hearing.

### Additional Procedures Regarding Plan
### Voting, Related Deadlines and Notices Thereof

#### *Approval of Forms of Ballots*

35.     Bankruptcy Rule 3017(d)  requires the Debtors to mail a form of ballot that substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan."  Fed. R. Bankr. P. 3017(d).  As part of the Solicitation Packages, the Debtors propose to distribute to holders of Asbestos Personal Injury Claims or the Firms, as applicable pursuant to the Certified Plan Solicitation Directives, and holders of Asbestos Personal Injury Indirect Claims, one or more Ballots substantially in the forms attached hereto as Exhibit D.  The Ballots are based on Official Form No. 14, but have been modified to address the

particular terms of the Plan and the specific Tabulation and Solicitation Procedures proposed by the Debtors.

36.    The Debtors propose that the appropriate form of Ballot will be distributed to holders of Asbestos Personal Injury Claims, the Firms and potential holders of Asbestos Personal Injury Indirect Claims as follows:

Ballot No. 1    Individual Ballot for Class 4a SPHC Asbestos Personal Injury Claims

Ballot No. 2    Individual Ballot for Class 4b NMBFiL Asbestos Personal Injury Claims

Ballot No. 3    Master Ballot for Class 4a SPHC Asbestos Personal Injury Claims

Ballot No. 4    Master Ballot for Class 4b NMBFiL Asbestos Personal Injury Claims

Ballot No. 5    Individual Ballot for Class 4a SPHC Asbestos Personal Injury Indirect Claims

Ballot No. 6    Individual Ballot for Class 4b NMBFiL Asbestos Personal Injury Indirect Claims

37.    The remaining Classes under the Plan are unimpaired and, therefore, are conclusively presumed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code.  For this reason, the Debtors are not required to solicit holders of claims or interests in any Classes other than Classes 4a (SPHC Asbestos Personal Injury Claims) and 4b (NMBFiL Asbestos Personal Injury Claims), and no Ballots have been proposed for creditors and interest holders in those classes.

### *The Voting Record Date*

38.    Bankruptcy Rule 3017(d) provides that the "date [an] order approving the disclosure statement is entered," or such other date established by the court, is the record date for determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to

receive the materials specified in Bankruptcy Rule 3017(d), including ballots for voting on a plan

of reorganization.  See Fed. R. Bankr. P. 3017(d).  Accordingly, the Debtors propose that the

Court establish October 20, 2014 as the record date, pursuant to Bankruptcy Rule 3017(d), for

purposes of determining which creditors and interest holders are entitled to receive Solicitation

Packages and, where applicable, vote on the Plan (the "Voting Record Date").

### *The Voting Deadline for Receipt of Ballots*

39.    Bankruptcy Rule 3017(c) provides that, on or before approval of a

disclosure statement, the court may fix a time within which the holders of claims or equity

interests may accept or reject a plan.  To accommodate the timeline contemplated by the

agreement reached among the Debtors, the Committee and the Futures Claimants'

Representative, the Court has scheduled a hearing to consider the Disclosure Statement for

October 20, 2014 and the Court has scheduled a hearing to consider confirmation of the Plan

(the "Confirmation Hearing") for December 10, 2014.  The Debtors will commence mailing the

Solicitation Packages as soon as possible following the Court's entry of an order approving the

Disclosure Statement (the "Disclosure Statement Order").

40.    Based on this schedule, the Debtors propose that, to be counted as votes to

accept or reject the Plan, all Ballots must be properly executed, completed and delivered to the

Debtors' Voting Agent either (a) by mail in the return envelope provided with each Ballot, (b) by

overnight courier or (c) by personal delivery so that, in each case, such Ballots are received by

the Voting Agent no later than 5:00 p.m., prevailing Eastern Time, on December 2, 2014 (the

"Voting Deadline").

### *The Confirmation Hearing Notice*

41.    The Debtors propose that objections, if any, to the confirmation of the

Plan must:  (a) be in writing; (b) state the name and address of the objecting party and the nature

of the claim or interest of such party; (c) state with particularity the basis and nature of any objection to the confirmation of the Plan; and (d) be filed with the Court and served on (i) counsel to the Debtors, (ii) counsel to the Committee, (iii) counsel to the Future Claimants' Representative, (iv) counsel to the Debtors' postpetition lenders, and (v) the U.S. Trustee so that they are received no later than 5:00 p.m., prevailing Eastern Time, on the Voting Deadline (the "Confirmation Objection Deadline").

42.     Bankruptcy Rule 2002(b) requires at least 28 days' notice by mail to all creditors and indenture trustees of the time set for filing objections to confirmation of a chapter 11 plan and the hearing to consider confirmation of a chapter 11 plan.  Bankruptcy Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner and the form directed by the Court.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to serve on all creditors and equity security holders, as part of the Solicitation Packages and not less than 35 days prior to the Confirmation  Objection Deadline, a copy of a notice, substantially in the form attached hereto as Exhibit E (the "Confirmation Hearing Notice"), setting forth:  (a) the Voting Deadline for the submission of Ballots to accept or reject the Plan; (b) the Confirmation Objection Deadline for filing objections to the Plan; and (c) the time, date and place of the Confirmation Hearing.

43.     In addition to mailing the Confirmation Hearing Notice as part of the Solicitation Packages, the Debtors propose to publish a notice in an abbreviated form of the Confirmation Hearing Notice, substantially in the form attached hereto as Exhibit F the "General Publication Notice"), not less than 25 days before the Confirmation Objection Deadline once in *Cleveland Plain Dealer, St. Louis Post-Dispatch* and the national editions of *The New York Times, The Wall Street Journal*, and *USA Today*.

44.     In addition, on a date not less than 20 days prior to the Confirmation Objection Deadline, the Debtors propose publishing a version of the Confirmation Hearing Notice that is specifically directed to holders of Asbestos Personal Injury Claims, substantially in the form attached hereto as Exhibit G (the "Asbestos Publication Notice"), in those newspapers, magazines, websites, mailings and press releases set forth in the plan confirmation notice plan designed by The Garden City Group, Inc. ("GCG"), the Debtors' plan notice consultant.[12]  A copy of the notice plan is attached hereto as Exhibit H.

45.     The foregoing procedures for providing notice of the Confirmation Hearing, the Confirmation Objection Deadline and related matters fully comply with Bankruptcy Rules 2002 and 3017.  Accordingly, the Debtors request that the Court approve such procedures as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**Request for Authority to File Consolidated
Reply to Any Objections to the Disclosure Statement or the Solicitation
and Tabulation Procedures and Any Objections to Confirmation of the Plan**

46.     The Debtors submit that the issues raised in any objections to (a) the Disclosure Statement or the Solicitation and Tabulation Procedures or (b) confirmation of the Plan, and any proposed resolutions to those issues, can more efficiently and effectively be considered by the Court and parties in interest if parties are permitted to file a consolidated response to any such objections, setting forth responses to the issues raised, and, if appropriate, proposed modifications to the Plan to address those issues.  Accordingly, the Debtors request authority for themselves, the Committee and the Futures Claimants' Representative to each file,

---

[12]     On April 17, 2014, the Court entered an order approving the retention of GCG as claims notice consultant to design and help implement a program for publishing notice of the bar date [D.I. 4672].  The Debtors will file an application to amend CGC's retention to reflect its work with respect to the plan confirmation notice plan.

if necessary, a consolidated reply to any objections to the Disclosure Statement or this motion by

no later than October 19, 2014. The Debtors also request authority for themselves, the

Committee and the Futures Claimants' Representative to each file, if necessary, a consolidated

reply to any objections to the Plan no later than December 8, 2014.

## **Notice**

47.    No trustee or examiner has been appointed in these chapter 11 cases.

Notice of this motion has been provided to: (a) counsel to the U.S. Trustee; (b) counsel to the

Committee; (c) counsel to the Futures Claimants' Representative; (d) counsel to International;

(e) the SEC; and (f) the 2002 List. In addition, the Debtors will serve notice of this motion, the

Asbestos Solicitation Notice and the Certified Plan Solicitation Directive on the Firms. In light

of the nature of the relief requested herein, the Debtors submit that no other or further notice is

required.

## **No Prior Request**

48.    No prior request for the relief sought in this motion with respect to the

Debtors has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as <u>Exhibit I</u>:  (i) approving the Disclosure Statement as

having "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) approving

the Solicitation and Tabulation Procedures, which establish the procedures for the solicitation

and tabulation of votes to accept or reject the Plan, as described therein, including approval of

(a) the contents of the Solicitation Packages and (b) the vote tabulation and solicitation

procedures described therein; (iii) approving the form of the Ballots for submitting votes on the

Plan attached hereto as <u>Exhibit D</u> (including the proposed instructions attached to each Ballot);

(iv) setting the Voting Record Date for Plan Voting and the Voting Deadline for the submission

of Ballots; (v) scheduling the Confirmation Hearing and approving related deadlines and notice

procedures; (vi) authorizing the Debtors, the Committee and the Future Claimants'

Representative to file consolidated replies to any objections to the Disclosure Statement and to

any objections to confirmation of the Plan; and (vii) granting the other relief requested in this

motion and such other and further relief as the Court may deem proper.

Dated:  October 3, 2014                              Respectfully submitted,

                                                     /s/ *Zachary I. Shapiro*
                                                     Daniel J. DeFranceschi (DE 2732)
                                                     Paul N. Heath (DE 3704)
                                                     Zachary I. Shapiro (DE 5103)
                                                     RICHARDS, LAYTON & FINGER, P.A.
                                                     One Rodney Square
                                                     920 North King Street
                                                     Wilmington, Delaware 19801
                                                     Telephone:  (302) 651-7700
                                                     Facsimile:  (302) 651-7701

                                                     -and-

                                                     Gregory M. Gordon (TX 08435300)
                                                     Dan B. Prieto (TX 24048744)
                                                     JONES DAY
                                                     2727 N. Harwood Street
                                                     Dallas, Texas  75201
                                                     Telephone:  (214) 220-3939
                                                     Facsimile:  (214) 969-5100

                                                     ATTORNEYS FOR DEBTORS