**EXHIBIT IV**

**LIQUIDATION ANALYSIS**

## BEST INTEREST ANALYSIS

### INTRODUCTION

Pursuant to section 1129(a)(7) of the Bankruptcy Code,[1] each holder of an impaired Claim or equity interest must either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such non-accepting holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code (often referred to as the "Best Interest Test"). In connection with this requirement, the following hypothetical liquidation analysis (the "Liquidation Analysis") has been prepared so that the Bankruptcy Court may determine that the Plan is in the best interest of creditors or equity holders who reject the Plan.

THE LIQUIDATION ANALYSIS IS AN ESTIMATE OF THE PROCEEDS THAT MAY BE GENERATED AS A RESULT OF A HYPOTHETICAL CHAPTER 7 LIQUIDATION OF THE ASSETS OF THE DEBTORS AND NON-DEBTOR SUBSIDIARIES. UNDERLYING THE LIQUIDATION ANALYSIS ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY SUBJECT TO UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF MANAGEMENT AND ITS ADVISORS. ADDITIONALLY, VARIOUS LIQUIDATION DECISIONS UPON WHICH CERTAIN ASSUMPTIONS ARE BASED ARE SUBJECT TO CHANGE. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE ASSUMPTIONS AND ESTIMATES EMPLOYED IN DETERMINING THE LIQUIDATION VALUES OF THE DEBTORS' AND NON-DEBTOR SUBSIDIARIES' ASSETS WILL PRODUCE THE AMOUNTS OF PROCEEDS ESTIMATED IN THE LIQUIDATION ANALYSIS, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.

### GENERAL ASSUMPTIONS

**Methodology**

The Liquidation Analysis has been presented on an aggregate basis for Debtors Specialty Products Holdings Corp. ("SPHC"), Bondex International, Inc. ("Bondex") and Republic Powdered Metals, Inc. ("Republic"), and on a standalone basis for NMBFiL, Inc. ("NMBFiL"). The recoveries for SPHC, Bondex and Republic have been aggregated because the Plan provides that current and future asbestos claimants of these three Debtors will be paid from a single trust account. In view of the Plan treatment, the aggregation is necessary to compare the results of a hypothetical chapter 7 liquidation to the recoveries under the Plan. Notwithstanding this aggregated analysis, the three Debtors are separate legal entities with their own assets and liabilities. No aggregation is necessary for NMBFiL because, under the Plan, current and future asbestos claims against NMBFiL will be paid from a trust account separate from the account that would be established for SPHC, Bondex and Republic.

---

[1] All capitalized terms used in this Liquidation Analysis that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

SPHC's chapter 7 liquidation is assumed to take the form of an expedited sale of SPHC's operating subsidiary businesses over a six-month period.  In contrast, Republic's chapter 7 liquidation is assumed to take the form of an individual asset liquidation.  This is because Republic's cash flow is approximately breakeven and, as a result, Republic is assumed to have no going concern value in a liquidation.  Bondex and NMBFiL hold no operating assets and therefore no asset sale analysis is necessary.

Value realized from the sale of the SPHC's operating subsidiary businesses is assumed to be reduced by: (i) some level of buyer concern regarding asbestos liability risk given that a channeling injunction would not be available in a chapter 7 liquidation, (ii) the risk of transitioning certain critical business functions in a relatively short time frame, and (iii) the expedited timeline for selling six separate businesses in a potentially unfavorable marketing environment.

Value realized from the sale of Republic's assets is estimated based upon a balance sheet analysis discounted to take into account the salability of the assets and the expedited time frame of six months.  The value is assumed to be reduced by some level of buyer concern regarding asbestos liability risk resulting from the absence of a channeling injunction in a chapter 7 liquidation.

In a liquidation of SPHC's and Republic's assets, it is possible that the proceeds could be further reduced by taxes on the transactions.  The amount of potential taxes would depend on the level of taxable gains, if any, for each transaction (sale proceeds less cost basis and costs of sale), but is subject to the use of any available losses.

**Other Assets**

The Liquidation Analysis assumes that under a hypothetical chapter 7 liquidation, other assets of the Debtors, including cash and minority equity interests, could provide additional value for unsecured creditors.  For purposes of the analysis, it is assumed that 100% of the amounts of such assets will ultimately be collected.  The results of an actual liquidation of these assets could be significantly lower than illustrated in the analysis.

**Intercompany Accounts**

The Plan provides for reinstatement of all intercompany accounts.  Rather than estimating the amounts of any recovery in a chapter 11 reorganization and a chapter 7 liquidation, which amounts should be the same, the accounts have been excluded from the Liquidation Analysis.

**Estimates of Cost of Liquidation**

Conversion of the chapter 11 cases to chapter 7 would likely result in additional costs to the Debtors' estates.  Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee and other professionals retained by the trustee, including attorneys, financial advisors and consultants; asset disposition expenses; and unpaid expenses incurred by the Debtors in the chapter 11 cases that are allowed in the chapter 7 cases.

In addition, liquidation costs could be higher, and the value of any distributions correspondingly lower, if the asset sales are not completed within the six-month period assumed in the Liquidation Analysis.

## AGGREGATED SPHC, BONDEX AND REPUBLIC LIQUIDATION ANALYSIS

The table below provides a comparison of the recoveries for claims of SPHC, Bondex and Republic under a hypothetical chapter 7 liquidation and in the chapter 11 cases in accordance with the provisions of the Plan. The accompanying footnotes should be read in connection with the table.

*(unaudited, $ in millions)*

| | Note | Chapter 7 Liquidation Low | Chapter 7 Liquidation High | Chapter 11 Case Reorganization |
|---|---|---|---|---|
| **Trust Contributions** | | | | |
| Initial Contribution to Trust Account | A | n/a | n/a | $447.5 |
| Future Contributions to Trust | A | n/a | n/a | 347.5 |
| Total Contributions to Trust | | n/a | n/a | $795.0 |
| **Debtors Cash Contribution** | | | | |
| SPHC Cash Contribution to General Unsecured Creditors | B | n/a | n/a | $2.5 |
| Bondex Cash Contribution to General Unsecured Creditors | C | n/a | n/a | 2.5 |
| Republic Powdered Metals Cash Contribution to General Unsecured Creditors | D | n/a | n/a | – |
| Total Debtors Cash Contribution | | n/a | n/a | $5.0 |
| ***SPHC Assets:*** | | | | |
| Enterprise Value | | | | |
| Estimated Value of Reorganized Debtor and Non-Debtor Operating Subsidiaries | E | $500.0 | $550.0 | n/a |
| Less: Discount Factor (50%) | | (250.0) | (275.0) | n/a |
| Estimated Value of Reorganized Debtor and Non-Debtor Operating Subsidiaries | | $250.0 | $275.0 | n/a |
| Financial / Other Assets | | | | |
| U.S. Cash | F | $25.2 | $25.2 | n/a |
| Foreign Cash | F | 21.6 | 21.6 | n/a |
| Indirect Interest in RPM Holdco | G | – | 110.0 | n/a |
| Total Financial / Other Assets | | $46.9 | $156.9 | n/a |
| ***Republic Powdered Metals Assets:*** | | | | |
| Liquidated Assets | H | | | |
| Accounts Receivable | | $0.8 | $0.8 | n/a |
| Inventories | | 0.7 | 1.0 | n/a |
| PP&E | | 4.0 | 7.3 | n/a |
| Total Liquidated Assets | | $5.5 | $9.1 | n/a |
| Financial / Other Assets | | | | |
| U.S. Cash | I | $3.8 | $3.8 | n/a |
| Fees | | | | |
| Professional Fees | J | (16.8) | (16.8) | n/a |
| Trustee Fees (3.0% of cash and estimated proceeds less other fees) | J | (8.7) | (12.8) | n/a |
| Additional Brokerage Fees (0.5% of estimated proceeds) | J | (1.5) | (2.2) | n/a |
| Total Fees | | ($27.0) | ($31.9) | n/a |
| **Value Available for Distribution to Creditors** | K | **$279.1** | **$412.9** | **$800.0** |

## FOOTNOTES TO LIQUIDATION ANALYSES

A summary of the assumptions used in the SPHC, Bondex and Republic Liquidation Analysis are set forth below.

**NOTE A – CONTRIBUTIONS TO TRUST ACCOUNT**

Under the Plan, an initial cash payment of $447.5 million would be made to the trust account on the Effective Date. Additionally, future contributions to the trust account would be made in the amounts of $102.5 million, $120.0 million and $125.0 million on or before the second, third and fourth anniversaries of the Effective Date, respectively. The analysis reflects the initial payment and future payments on a nominal basis. The future payments are permitted to be in the form of cash or equity at the Company's option. In a chapter 7 liquidation, none of these amounts would be available to SPHC's asbestos claimants.

**NOTE B – SPHC CASH CONTRIBUTION**

The Plan provides for payment in full of all SPHC general unsecured claims other than asbestos personal injury claims. The SPHC cash contribution in the chapter 11 case reflects payment in full of all its general unsecured claims (other than asbestos claims).

The balance of $2.5 million represents estimated pre-petition accounts payable and estimated pre-petition unpaid professional services. The bar date for the filing of unsecured claims has not yet passed, and actual unsecured claims filed and allowed could be materially different than the amount estimated in the analysis.

**NOTE C – BONDEX CASH CONTRIBUTION**

The Plan provides for payment in full of all Bondex general unsecured claims other than asbestos personal injury claims. The Bondex cash contribution in the chapter 11 case reflects payment in full of all its general unsecured claims (other than asbestos claims).

The balance of $2.5 million represents estimated pre-petition accounts payable and estimated pre-petition unpaid professional services. The bar date for the filing of unsecured claims has not yet passed, and actual unsecured claims filed and allowed could be materially different than the amount estimated in the analysis.

**NOTE D – REPUBLIC CASH CONTRIBUTION**

General unsecured claims of Republic other than asbestos personal injury claims are assumed to be paid in full prior to emergence so that no cash contribution under the Plan is required.

**NOTE E – PROCEEDS FROM SALE OF BUSINESSES OF SPHC (UNDER CHAPTER 7 LIQUIDATION)**

The SPHC liquidation analysis assumes that SPHC's operating subsidiaries are sold as going concerns for cash in separate transactions. The proceeds from these sale transactions are

assumed to equal the range of SPHC's going-concern enterprise value of $500 million to $550 million less a discount factor of 50%, which discount is required due to the following risks:

- **Asbestos Liability Risk:** Unlike a chapter 11 reorganization, a chapter 7 liquidation does not provide for the issuance of an asbestos channeling injunction or a discharge of asbestos claims.  Although SPHC's operating subsidiaries do not have direct asbestos liability exposure, buyers could still have concerns purchasing businesses owned by an entity with asbestos liability exposure.  As a result, a discount is applied to reflect the probability that the businesses could not be sold for fair value or at all because of the perceived risk that the asbestos liability would follow the assets sold.

- **Separation from RPM International:** SPHC's businesses are currently part of an established corporate network in which RPM International provides a number of business critical functions including purchasing, information technology services, environmental health and safety services, benefit plans administration, internal audit services, legal services, and tax services.  The uncertainty of whether multiple transition service agreements could be negotiated and implemented to transition these critical services in a relatively short timeframe is a risk that further contributes to the overall discount factor applied in the analysis. Moreover, buyers may not be willing to pay a value based on an operating subsidiary's current earnings level if critical business functions such as raw material sourcing cannot be adequately replicated after the subsidiary is divested from RPM International.

- **Marketing Environment/Expedited Timeline:** In a chapter 7 liquidation, the Debtors may face a market environment in which buyers seek to capitalize on the forced nature of the divestitures of the operating subsidiaries.  In addition, the Debtors would face the challenge of selling six different businesses in a relatively short timeframe.  These risks further contribute to the discount factor that has been applied to reflect the probability that the full value of the businesses may not be realized.

## NOTE F – CASH AT SPHC

Under the chapter 7 liquidation analysis, U.S. cash represents consolidated U.S. cash available as of July 31, 2014.  Foreign cash represents cash held in non-U.S. accounts as of July 31, 2014 net of an estimated 12% tax to repatriate such cash back to the U.S. for distribution to creditors.

## NOTE G – SPHC INDIRECT INTEREST IN RPM HOLDCO

Through three of its operating subsidiaries, SPHC indirectly owns 21.4% of RPM Holdco, an intermediate holding company formed primarily for tax purposes within the RPM International corporate family.  This indirect illiquid minority interest has been valued at a range of zero to $110 million.  The low end of the range represents the recorded book value of this interest on SPHC's financial statements.  The high end of the range represents the maximum potential value attributable to this indirect interest as estimated by SPHC's financial advisor.

**NOTE H – PROCEEDS FROM SALE OF REPUBLIC ASSETS (UNDER CHAPTER 7 LIQUIDATION)**

The Republic Liquidation Analysis assumes that the business of Republic would be shut down and individual assets of Republic sold in an expedited six month process. Below are the assumptions for the estimated recovery value of Republic's assets.

*Accounts Receivable:* All of Republic's accounts receivable are assumed to be paid in full by the completion of the liquidation process.

*Inventories:* Inventories are comprised of raw materials, works in progress, finished goods and in-transit goods. Blended recoveries on the net book value of inventories is assumed at 45%-65%, based on prevailing market prices, estimated transport and handling costs, and potential discounts due to purchaser resizing.

*PP&E:* Property, Plant & Equipment consists of land and improvements, building and improvements, machinery and equipment, construction in progress and other. Blended recoveries on the gross book value of PP&E is estimated at 30%-55%. This range is based on management's estimations of fair market value and recent independent appraisals on certain assets. Additional discounts are also applied to account for the expedited timeline of the sale process.

*Other Assets*: The value of all other assets has been excluded due to immateriality.

*Asbestos Liability Risk:* An asbestos channeling injunction or a discharge of asbestos claims would not exist in a chapter 7 liquidation proceeding. Because Republic has direct asbestos liability exposure, buyers could have concerns purchasing assets owned by an entity with asbestos liability exposure. The discounts that are applied take into account the probability that the assets could not be sold for fair value because of the perceived risk that the asbestos liability would follow the assets sold

**NOTE I – CASH AT REPUBLIC**

Under the chapter 7 liquidation analysis, U.S. cash represents consolidated U.S. cash available as of July 31, 2014.

**NOTE J – COSTS ASSOCIATED WITH CHAPTER 7 LIQUIDATION**

The costs associated with a chapter 7 liquidation of SPHC, Bondex and Republic are assumed to include fees and costs for professionals retained by the chapter 7 trustee, including legal, financial and claims professional advisors. These fees are estimated at $2.5 million per month for six months and $150,000 per month for an additional twelve months. It is also assumed the chapter 7 trustee would receive payments equal to 3.0% of the estimated total proceeds from the sale of the businesses and other assets less other chapter 7 expenses. Additional brokerage fees would be necessary for the expedited sale of the Debtors' businesses and other costs. Brokerage fees are calculated at 0.5% of estimated total proceeds from the sales of assets.

**NOTE K – COSTS ASSOCIATED WITH TRUST IN CHAPTER 11 SCENARIO**

Under the chapter 11 reorganization scenario, Value Available for Distribution to Creditors would be reduced by the operating expenses of the Trust. Based upon a review of asbestos trusts' historical operating expenses, annual operating expenses could be in the range of approximately 0.5-0.7% of total assets in the Trust.

## NMBFiL INC. LIQUIDATION ANALYSIS

*(unaudited, $ in millions)*

|  | Note | Chapter 7 Liquidation | Chapter 11 Case Reorganization |
|---|---|---|---|
| **Amount to be Distributed to Asbestos Claimants** | K | $2.5 | $2.5 |

Under the Plan, representatives of the current and future asbestos claimants agreed to a settlement of $2.5 million for all current and future asbestos claims. Because the representatives agreed to this amount, it is assumed in the hypothetical chapter 7 liquidation scenario that the same amount of cash would be distributed to the asbestos claimants.

General unsecured claims of NMBFiL other than asbestos personal injury claims are assumed to be paid in full prior to emergence so that no cash contribution under the Plan is required.

**NOTE K – CONTRIBUTION TO TRUST ACCOUNT**

The Plan provides for a $2.45 million payment on the Effective Date plus an additional $50,000 payment on the first anniversary of the Effective Date.