**ORIGINAL**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SPECIALTY PRODUCTS HOLDING CORP., | : | Case No. 10-11780 (PJW) |
| et al.,[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

# ORDER CONFIRMING THE JOINT PLAN OF
# REORGANIZATION OF SPECIALTY PRODUCTS
# HOLDING CORP., BONDEX INTERNATIONAL, INC.,
# REPUBLIC POWDERED METALS, INC. AND NMBFiL, INC., AS MODIFIED

---

[1]     The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Specialty Products Holding Corp. (0857); Bondex International, Inc. (4125); Republic Powdered Metals, Inc. (4388); and NMBFiL, Inc. (2441). The address of Specialty Products Holding Corp. and Bondex International, Inc. is 4515 St. Clair Avenue, Cleveland, Ohio 44103. The address of Republic Powdered Metals, Inc. and NMBFiL, Inc. is 2628 Pearl Road, Medina, Ohio 44256.

# TABLE OF CONTENTS

**Page**

I.     GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN
AND APPROVAL OF PLAN-RELATED DOCUMENTS .................................. 4

    A.     MODIFICATIONS TO THE PLAN ..................................................... 4

    B.     CONFIRMATION OF THE PLAN ..................................................... 5

    C.     CONDITIONS TO CONFIRMATION AND CONSUMMATION OF
THE PLAN ....................................................................................... 5

    D.     EFFECTS OF CONFIRMATION ....................................................... 5

    E.     APPROVAL, MODIFICATION AND EXECUTION OF PLAN-
RELATED DOCUMENTS ................................................................. 6

II.     CLAIMS BAR DATES AND OTHER CLAIMS MATTERS ........................... 7

    A.     GENERAL BAR DATE FOR ADMINISTRATIVE CLAIMS ............. 7

    B.     BAR DATES FOR CERTAIN ADMINISTRATIVE CLAIMS ............ 7

        1.     Professional Compensation ........................................................ 7

        2.     Ordinary Course Liabilities ....................................................... 8

        3.     DIP Facility Claims .................................................................... 9

    C.     BAR DATE FOR REJECTION DAMAGES CLAIMS ....................... 9

III.    APPROVAL OF EXECUTORY CONTRACT AND UNEXPIRED LEASE
PROVISIONS AND RELATED PROCEDURES ............................................. 9

IV.    MATTERS RELATING TO IMPLEMENTATION OF THE PLAN ............... 10

    A.     ACTIONS IN FURTHERANCE OF THE PLAN ............................... 10

    B.     CREATION OF ASBESTOS PERSONAL INJURY TRUST ............. 11

    C.     TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN
LIABILITIES BY THE ASBESTOS PERSONAL INJURY TRUST ... 12

        1.     Transfer of Books and Records to the Asbestos Personal Injury
Trust .......................................................................................... 12

        2.     Funding the Asbestos Personal Injury Trust ............................. 13

        3.     Assumption of Certain Liability and Responsibility by the
Asbestos Personal Injury Trust ................................................ 13

        4.     Indemnification by the Asbestos Personal Injury Trust ........... 14

    D.     RELEASE OF ENCUMBRANCES ................................................. 15

    E.     EXEMPTIONS FROM TAXATION ................................................ 16

# TABLE OF CONTENTS
### (continued)

Page

| | | | |
|---|---|---|---|
| V. | | SETTLEMENTS, RELEASES AND EXCULPATION PROVISIONS........................ 17 | |
| VI. | | INFORMAL OBJECTIONS TO CONFIRMATION....................................................... 17 | |
| | A. | RESOLUTION OF INFORMAL OBJECTIONS TO CONFIRMATION ......... 17 | |
| | B. | OVERRULING OF CERTAIN OBJECTIONS TO CONFIRMATION ............ 18 | |
| VII. | | DISCHARGE AND INJUNCTIONS ............................................................................ 18 | |
| | A. | DISCHARGE OF CLAIMS .............................................................................. 18 | |
| | B. | INJUNCTIONS................................................................................................. 19 | |
| | | 1. | Issuance of the Asbestos Permanent Channeling Injunctions................. 19 |
| | | 2. | Protected Parties Under the SPHC Asbestos Permanent Channeling Injunction ................................................................................................... 19 |
| | | 3. | Protected Parties Under the NMBFiL Asbestos Permanent Channeling Injunction............................................................................................ 21 |
| | | 4. | SPHC Asbestos Permanent Channeling Injunction .................................. 24 |
| | | 5. | NMBFiL Asbestos Permanent Channeling Injunction ............................. 25 |
| | | 6. | General Injunctions Related to Discharge or Releases Granted Pursuant to the Plan .............................................................................. 26 |
| VIII. | | DISSOLUTION OF THE ASBESTOS PERSONAL INJURY COMMITTEE AND DISCHARGE OF THE FUTURE CLAIMANTS' REPRESENTATIVE............. 27 | |
| IX. | | RETENTION OF JURISDICTION BY THE COURT.................................................. 28 | |
| | A. | RETENTION OF JURISDICTION BY THE COURT........................................ 28 | |
| | B. | JURISDICTION RELATING TO ASBESTOS PERSONAL INJURY CLAIMS ........................................................................................................... 28 | |
| X. | | WAIVER OF THE STAY OF BANKRUPTCY RULE 3020(e) ..................................... 28 | |
| XI. | | NOTICE OF ENTRY OF CONFIRMATION ORDER ................................................. 29 | |
| XII. | | ORDER OF THE COURT............................................................................................ 30 | |

-ii-

## TABLE OF EXHIBITS

| Exhibit | Exhibit Name |
|---------|--------------|
| A | Plan |
| B | Modification |
| C | Confirmation Notice |
| D | Confirmation Notice — Publication Version |

## INTRODUCTION

WHEREAS, Specialty Products Holding Corp., Bondex International, Inc.,

Republic Powdered Metals, Inc. and NMBFiL, Inc., the above-captioned debtors (collectively,

the "Debtors" and, as reorganized entities after emergence, the "Reorganized Debtors"),

proposed the Joint Plan of Reorganization of Specialty Products Holding Corp., Bondex

International, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc., dated October 20, 2014,

as modified by the modification set forth on the blackline of the Plan in Exhibit B attached

hereto and incorporated herein by reference (as it may be amended, the "Plan");[2]

WHEREAS, the Court, on October 20, 2014, signed its Order (I) Approving

the Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to

Accept or Reject Proposed Joint Plan of Reorganization and (III) Scheduling a Hearing on

Confirmation of Proposed Joint Plan of Reorganization and Approving Related Notice

Procedures [D.I. 5112] (the "Disclosure Statement Order"), by which the Court, among other

things, approved the Debtors' proposed disclosure statement (the "Disclosure Statement"),

established procedures for the solicitation and tabulation of votes to accept or reject the Plan and

scheduled a hearing to consider Confirmation of the Plan for December 10, 2014 at 3:30 p.m.

(prevailing Eastern Time) (the "Confirmation Hearing");

WHEREAS, affidavits of service were executed by Kathleen M. Logan with

respect to the mailing of notice of the Confirmation Hearing and solicitation materials in respect

---

[2]   Capitalized terms and phrases used herein have the meanings given to them in the Plan. The rules of
      interpretation set forth in Section I.B.1 of the Plan apply to the Findings of Fact and Conclusions of Law
      (the "Findings and Conclusions"), which are being entered concurrently herewith, and to this Order
      (this "Confirmation Order"). In addition, in accordance with Section I.A of the Plan, any term used in the
      Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used
      in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy
      Code or the Bankruptcy Rules, as applicable.

      A copy of the Plan (without the exhibits thereto) is attached hereto as Exhibit A and incorporated herein by
      reference.

of the Plan in accordance with the Disclosure Statement Order (collectively, the "Affidavits of Service") and were filed with the Bankruptcy Court on November 6, 2014 [D.I. 5157-5163] and December 4, 2014 [D.I. 5228].

WHEREAS, the Declaration of Lael D. Dowd [D.I. 5249] (the "Publication Declaration") was filed with the Bankruptcy Court on December 9, 2014, regarding the publication of the Notice of (A) Deadline for Casting Votes to Accept or Reject Proposed Joint Plan of Reorganization, (B) Hearing to Consider Confirmation of Proposed Joint Plan of Reorganization and (C) Related Matters and/or the other forms of publication notice approved by the Bankruptcy Court as set forth in the Disclosure Statement Order.

WHEREAS, Logan & Company, Inc., the Bankruptcy Court-appointed solicitation and tabulation agent in respect of the Plan, filed Declaration of Kathleen M. Logan Certifying Voting on, and Tabulation of, Ballots Accepting and Rejecting Joint Plan of Reorganization of Specialty Products Holding Corp., Bondex International, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc. [D.I. 5326] (the "Voting Agent Declaration") on December 8, 2014, attesting to the results of the tabulation of the properly executed and timely received Ballots for the Plan as follows:

**Class 4a Claimants.** The Debtors received 71,995 acceptances out of 72,006 votes from holders of Claims under Class 4a (SPHC Asbestos Personal Injury Claims), with Class 4a claimants who voted in favor of the Plan holding Claims in the amount of $1,356,209,300 for voting purposes only, such acceptances being 99.98 percent in number and 99.99 percent in amount of all ballots received from holders of Class 4a Claims (Voting Agent Decl. ¶¶ 16,17.);

**Class 4b Claimants.** The Debtors received 49,799 acceptances out of 49,810 votes from holders of Claims under Class 4b (NMBFiL Asbestos Personal Injury Claims), with Class 4b claimants who voted in favor of the Plan holding Claims in the amount of $306,072,446 for voting purposes only, such acceptances being 99.99 percent in number and 99.99 percent in amount of all ballots received from holders of Class 4b Claims (Voting Agent Decl. ¶¶ 16,17.)

WHEREAS, 3M Company, the United States Department of Justice and California Franchise Tax Board each raised informal objections to Confirmation of the Plan, which were resolved by the parties by the inclusion of certain language in the Confirmation Order and, in the instance of the California Franchise Tax Board, in the Plan.

WHEREAS, the Debtors filed modifications to the Plan [D.I. 5252], which are set forth in Exhibit B attached hereto (collectively, the "Modifications");

WHEREAS, the Debtors filed a memorandum of law in support of Confirmation of the Plan [D.I. 5234] (the "Memorandum of Law");

WHEREAS, the declarations of Stephen J. Knoop [D.I. 5247], Tracy D. Crandall [D.I. 5247], Edward W. Moore [D.I. 5250], John James O'Connell III [D.I. 5246], Eric D. Green [D.I. 5238] and Peter A. Kraus [D.I. 5245were submitted in support of the Plan (collectively, the "Declarations");

WHEREAS, the Court has reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Agent Declaration, the Affidavits of Service, the Publication Declaration, the Memorandum of Law, the Declarations and the other papers before the Court in connection with the Confirmation of the Plan;

WHEREAS, this Court has reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Agent Declaration, the Affidavits of Service, the

Publication Declaration, the Memorandum of Law, the Declarations and the other papers before this Court in connection with the Confirmation of the Plan;

WHEREAS, this Court and the District Court, sitting jointly together for purposes of the Confirmation Hearing, heard the statements of counsel in support of Confirmation at the Confirmation Hearing, as reflected in the record made at the Confirmation Hearing;

WHEREAS, this Court has considered all evidence presented at the Confirmation Hearing;

WHEREAS, this Court has taken judicial notice of the papers and pleadings on file in these chapter 11 cases – including any related adversary proceedings;

WHEREAS, this Court has separately entered the Findings and Conclusions, including the findings that (i) this Court and the District Court have jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) the Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code and (iv) venue of the Reorganization Cases in the United States Court for the District of Delaware was proper as of the Petition Date, pursuant to 28 U.S.C. § 1408, and continues to be proper; and

WHEREAS, the Findings and Conclusions establish just cause for the relief granted herein;

THE COURT HEREBY ORDERS THAT:

## I.    GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN AND APPROVAL OF PLAN-RELATED DOCUMENTS.

### A.    MODIFICATIONS TO THE PLAN.

The Modifications to the Plan are approved in all respects.  Accordingly, the Debtors are authorized to make the Modifications to the Plan.

B.    **CONFIRMATION OF THE PLAN.**

The Plan and all exhibits thereto are CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code; provided, however, that if there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. All objections to the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing are either resolved on the terms set forth herein or overruled.

C.    **CONDITIONS TO CONFIRMATION
       AND CONSUMMATION OF THE PLAN.**

Nothing in this Confirmation Order or in the Findings and Conclusions shall in any way affect the provisions of Article VIII of the Plan, which includes provisions regarding (i) the conditions precedent to Confirmation of the Plan and to the Effective Date of the Plan, (ii) the waiver of any such conditions and (iii) the effect that the nonoccurrence of such conditions may have with regard to the Plan and this Confirmation Order. Upon the satisfaction or waiver of the conditions contained in Section VIII.B of the Plan and the occurrence of the Effective Date, substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur.

D.    **EFFECTS OF CONFIRMATION.**

Subject to Section I.C of this Confirmation Order, notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order shall be binding upon all Entities, including the Debtors, the Reorganized Debtors, any and all holders of Claims, Demands or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any

and all nondebtor parties to Executory Contracts and Unexpired Leases with any of the Debtors

and any and all Entities who are parties to or are subject to the settlements, compromises,

releases, waivers, discharges and injunctions described herein and in the Findings and

Conclusions and the respective heirs, executors, administrators, trustees, affiliates, officers,

directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if

any, of any of the foregoing.

### E. APPROVAL, MODIFICATION AND EXECUTION OF PLAN-RELATED DOCUMENTS.

1.     The Plan and all exhibits thereto, substantially in the form as they exist at

the time of the entry of this Confirmation Order, including the documents relating to the

Asbestos Personal Injury Trust, are approved in all respects.

2.     All relevant parties, including the Debtors and the Asbestos Personal

Injury Trustees, shall be authorized, without further action by the Court, to execute the

applicable Plan-Related Documents (as such capitalized term is defined in Section IV.A of this

Confirmation Order) and make modifications to such documents in accordance with the Plan's

terms, including Section XI.C of the Plan, and the terms of the Plan-Related Documents, if

applicable, between the time of entry of this Confirmation Order and the Effective Date of the

Plan.

3.     The Debtors are hereby authorized to amend or modify the Plan at any

time prior to the substantial consummation of the Plan, but only in accordance with section 1127

of the Bankruptcy Code and Section XI.C of the Plan. In addition, without the need for a further

order or authorization of the Court or further notice to any Entities, but subject to the express

provisions of this Confirmation Order and Section XI.C of the Plan, the Debtors shall be

authorized and empowered to make modifications to the documents Filed with the Court,

-6-

including exhibits to the Plan or documents forming part of the evidentiary record at the Confirmation Hearing, consistent with the terms of such documents in their reasonable business judgment as may be necessary.

## II.    CLAIMS BAR DATES AND OTHER CLAIMS MATTERS.

### A.    GENERAL BAR DATE FOR ADMINISTRATIVE CLAIMS.

Except as otherwise provided in Section III.A.1.e.ii of the Plan and Section II.B below, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors at the addresses set forth in Section XI.H of the Plan no later than 60 days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by 120 days after the Effective Date.

### B.    BAR DATES FOR CERTAIN ADMINISTRATIVE CLAIMS.

#### 1.    Professional Compensation.

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Court a Final Fee Application no later than 90 days after the Effective Date; provided, however, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further

Court review or approval, pursuant to the Ordinary Course Professionals Order. A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Objections to any Final Fee Application must be Filed and served on the Reorganized Debtors and the requesting party by the later of (i) 80 days after the Effective Date or (ii) 30 days after the Filing of the applicable Final Fee Application. Final Fee Applications shall be subject to the Order Appointing Fee Auditor and Establishing Related Procedures Concerning (A) the Allowance and Payment of Compensation and Reimbursement of Expenses of Professionals and Members of Official Committees and (B) Consideration of Fee Applications [D.I. 302] (the "Fee Auditor Order"). To the extent necessary, this Confirmation Order shall amend and supersede any previously entered order of the Court, including the Fee Order and Fee Auditor Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

### 2.    Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business, including Administrative Trade Claims, any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes (including Tax audit Claims relating to Tax years or portions thereof commencing after the Petition Date) and Administrative Claims arising from those contracts and leases of the kind described in Section V.E of the Plan, shall not be required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to Section III.A.1.c of the Plan.

-8-

DLI-266503076v4

### 3.    DIP Facility Claims

Holders of DIP Facility Claims shall not be required to File or serve any request for payment of such Claims.  Such Administrative Claims shall be satisfied pursuant to Section III.A.1.d of the Plan.

### C.    BAR DATE FOR REJECTION DAMAGES CLAIMS

Notwithstanding anything in the Court's Order Establishing Bar Dates for Filing Proofs of Claim, Other than Asbestos Personal Injury Claims, and Approving Related Relief [D.I. 5021] to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to Section V.C of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors or their properties unless a Proof of Claim is Filed and served on the Reorganized Debtors at the addresses set forth in Section XI.H of the Plan, on the latter to occur of (1) 60 days after the Effective Date or (2) 30 days after the date of the entry of an Order rejecting such Executory Contract or Unexpired Lease.

## III.    APPROVAL OF EXECUTORY CONTRACT AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES.

A.    The Executory Contract and Unexpired Lease provisions of Article V of the Plan are specifically approved.

B.    This Confirmation Order shall constitute an order of the Court approving the assumptions and rejections described in Sections V.A and V.C of the Plan, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

DLI-266503076v4

## IV. MATTERS RELATING TO IMPLEMENTATION OF THE PLAN.

### A. ACTIONS IN FURTHERANCE OF THE PLAN.

1. Pursuant to section 303 of the Delaware General Corporation Law and section 1701.75 of the Ohio General Corporation Law and other comparable provisions of the laws of the States of Delaware and Ohio or any other state governing corporations or other legal entities (collectively, the "State Reorganization Effectuation Statutes"), as applicable, and section 1142 of the Bankruptcy Code, without further action by the Court or the respective stockholders or directors of any Debtor or Reorganized Debtor, the Debtors, the Reorganized Debtors, as well as the officers of the appropriate Debtor or Reorganized Debtor (the "Responsible Officers"), are authorized to: (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order or the transactions contemplated thereby or hereby, including those transactions identified in Article IV of the Plan; and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases and agreements necessary to implement, effectuate and consummate the Plan (collectively, the "Plan-Related Documents"), including those contracts, instruments, releases and agreements identified in Article IV of the Plan.

2. The Debtors, the Reorganized Debtors, as well as the Responsible Officers are authorized to execute and deliver all documents, agreements and instruments necessary or appropriate to enter into and perform all obligations in order to pay and satisfy in full all DIP Facility Claims under the DIP Credit Agreement, and to take all other actions and execute, deliver, record and file all other agreements, documents, instruments, financing statements, and releases, including without limitation an agreement to terminate the DIP Credit Agreement, in order to fully and finally release DIP Lender.

3.     To the extent that, under applicable non-bankruptcy law, any of the
foregoing actions would otherwise require the consent or approval of the stockholders or
directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant
to section 1142 of the Bankruptcy Code and the State Reorganization Effectuation Statutes,
constitute such consent or approval, and such actions are deemed to have been taken by
unanimous action of the directors and stockholders of the appropriate Debtor or Reorganized
Debtor.

4.     The approvals and authorizations specifically set forth in this
Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or
Reorganized Debtor or Responsible Officer to take any and all actions necessary or appropriate
to implement, effectuate and consummate the Plan, this Confirmation Order or the transactions
contemplated thereby or hereby.  In addition to the authority to execute and deliver, adopt or
amend, as the case may be, the contracts, instruments, releases and other agreements specifically
granted in this Confirmation Order, each of the Debtors and the Reorganized Debtors is
authorized and empowered, without further action by the Court or its directors or stockholders, to
take any and all such actions as any of its Responsible Officers may determine are necessary or
appropriate to implement, effectuate and consummate the Plan, this Confirmation Order or the
transactions contemplated thereby or hereby.

## B.     CREATION OF ASBESTOS PERSONAL INJURY TRUST.

1.     On the Effective Date, the Asbestos Personal Injury Trust shall be created
in accordance with the Plan and the Asbestos Personal Injury Trust Agreement.  The Asbestos
Personal Injury Trust and the Asbestos Personal Injury Trustees are authorized and empowered
to receive the property to be transferred to the Asbestos Personal Injury Trust pursuant to
Section IV.I of the Plan.

2.      Pursuant to the State Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state laws governing corporations or other legal Entities and section 1142(b) of the Bankruptcy Code, without further action by the Court or the directors or stockholders of any Reorganized Debtor, the Reorganized Debtors are authorized and directed to execute, deliver and perform their obligations under the Asbestos Personal Injury Trust Agreement and to execute, deliver, file and record all such other contracts, instruments, agreements or documents and take all such other actions as any of the Responsible Officers of the Reorganized Debtors may determine are necessary, appropriate or desirable in connection therewith. The Asbestos Personal Injury Trust Agreement, as in effect on the Effective Date, shall be substantially in the form of Exhibit I.A.11 to the Plan. The Asbestos Personal Injury Trust Distribution Procedures shall be substantially in the form of Exhibits I.A.66 and I.A.102 to the Plan, respectively.

### C.    TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN LIABILITIES BY THE ASBESTOS PERSONAL INJURY TRUST.

#### 1.    Transfer of Books and Records to the Asbestos Personal Injury Trust.

a.      As described in Section IV.I.1 of the Plan, on the Effective Date or as soon thereafter as is reasonably practicable, at the sole cost and expense of the Asbestos Personal Injury Trust (which cost and expense shall be reasonable) and in accordance with written instructions provided to the Reorganized Debtors by the Asbestos Personal Injury Trust, the Reorganized Debtors shall transfer and assign, or cause to be transferred and assigned, to the Asbestos Personal Injury Trust copies of those books and records that are necessary for the defense of Asbestos Personal Injury Claims including, without limitation, the historical asbestos personal injury claims database maintained by the Debtors, deposition transcripts, product identification evidence, claims settlement and payment information, and indexes and summaries

relating to any such document. These books and records shall not include documents that were made part of the record at the estimation trial because such documents are publicly available.

b.    Pursuant to the Plan and this Confirmation Order, to the extent the Debtors or Reorganized Debtors, as applicable, provide any privileged books and records under Section IV.I.1 of the Plan, such transfer shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records. Further, pursuant to the Plan and this Confirmation Order, none of the Debtors, the Reorganized Debtors, International, or any of International's affiliates shall be liable for violating any confidentiality or privacy protections as a result of transferring the books and records to the Asbestos Personal Injury Trust, and the Asbestos Personal Injury Trust shall, upon receipt of the books and records, take appropriate steps to comply with any such applicable protections.

### 2.    Funding the Asbestos Personal Injury Trust.

The Reorganized Debtors and/or International shall fund the Asbestos Personal Injury Trust in accordance with Section IV.I.2 of the Plan.

### 3.    Assumption of Certain Liability and Responsibility by the Asbestos Personal Injury Trust.

On the Effective Date, upon creation of the Asbestos Personal Injury Trust, the Asbestos Personal Injury Trust, in consideration for the property transferred to the Asbestos Personal Injury Trust pursuant to Section IV.I.2 of the Plan and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan, the Asbestos Personal Injury Trust shall assume all liability and responsibility, financial or otherwise, for all Asbestos Personal Injury Claims, and the Reorganized Debtors and the Protected Parties shall have no liability or responsibility, financial or otherwise, therefor. Except as otherwise provided in the Plan, the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, the

-13-

Asbestos Personal Injury Trust shall have all defenses, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation and similar rights, regarding such Asbestos Personal Injury Claims that the Debtors or the Reorganized Debtors have or would have had under applicable law.

The Asbestos Personal Injury Trust establishes two separate series pursuant to 12 Del. C. § 3806, being the "SPHC Series" and the "NMBFiL Series". Only assets associated with the SPHC Series shall be available for application against SPHC Asbestos Personal Injury Claims, SPHC Asbestos Personal Injury Indirect Claims, and SPHC Protected Parties Indemnification Claims. Only assets associated with the NMBFiL Series shall be available for application against NMBFiL Asbestos Personal Injury Claims, NMBFiL Asbestos Personal Injury Indirect Claims, and NMBFiL Protected Parties Indemnification Claims.

### 4.    Indemnification by the Asbestos Personal Injury Trust.

a.      To the fullest extent provided in the Plan, the Asbestos Personal Injury Trust shall protect, defend, indemnify and hold harmless each NMBFiL Protected Party from and against any NMBFiL Asbestos Personal Injury Claim; provided, however, payment of any and all NMBFiL Protected Party Indemnification Claims, which include defense and other related fees and costs, may only be made from funds in the NMBFiL Trust Account. Notwithstanding the foregoing, International and its direct and indirect subsidiaries may not assert any claim against the Asbestos Personal Injury Trust or the NMBFiL Trust Account for contribution, reimbursement, subrogation or indemnification on account of or with respect to (i) any NMBFiL Asbestos Personal Injury Claim or NMBFiL Asbestos Personal Injury Indirect Claim paid by the Debtors or International, and its direct and indirect subsidiaries, prior to NMBFiL's Petition Date, or (ii) the funding of the Asbestos Personal Injury Trust or NMBFiL Trust Account by the Debtors or International.

b.      To the fullest extent provided in the Plan, the Asbestos Personal

Injury Trust shall protect, defend, indemnify and hold harmless each SPHC Protected Party from

and against any SPHC Asbestos Personal Injury Claim; provided, however, payment of any and

all SPHC Protected Party Indemnification Claims, which include defense and other related fees

and costs, may only be made from funds in the SPHC Trust Account. Notwithstanding the

foregoing, International and its direct and indirect subsidiaries may not assert any claim against

the Asbestos Personal Injury Trust or the SPHC Trust Account for contribution, reimbursement,

subrogation or indemnification on account of or with respect to (i) any SPHC Asbestos Personal

Injury Claim or SPHC Asbestos Personal Injury Indirect Claim paid by the Debtors or

International, and its direct and indirect subsidiaries, prior to the SPHC Parties' Petition Date, or

(ii) the funding of the Asbestos Personal Injury Trust or SPHC Trust Account by the Debtors or

International.

## D.      RELEASE OF ENCUMBRANCES.

Except as otherwise provided in the Plan or in any contract, instrument, release or

other agreement or document entered into or delivered in connection with the Plan, on the

Effective Date and concurrently with the applicable Distributions made pursuant to Article III of

the Plan, all Encumbrances against the property of any Estate shall be fully released and

discharged, and all of the right, title and interest of any holder of such Encumbrances, including

any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its

successors and assigns.

Notwithstanding the entry of this Confirmation Order, (a) the Final Order

(A) Authorizing Debtors to Obtain Post-Petition Financing and Grant Security Interests and

Superpriority Administrative Expense Status (B) Modifying the Automatic Stay and

(C) Authorizing Debtors to Enter into Agreements with Wachovia Capital Finance Corporation

-15-

(New England) [D.I. 156] (the "DIP Financing Order"), (b) the DIP Credit Agreement and (c) all of the claims, liens, interests, rights, priorities, protections and remedies afforded to the DIP Lender under the DIP Financing Order or DIP Credit Agreement, shall each remain in full force and effect and shall constitute, and continue to constitute, legal, valid, binding and enforceable obligations of the Debtors and the non-debtor Borrowers (as defined in the DIP Credit Agreement), which obligations shall not be impaired, prejudiced or modified in any way (without the express prior written consent of the DIP Lender) at any time prior to the Effective Date. Any loans, advances, letters of credit accommodations or other financial or credit accommodations made or provided by the DIP Lender at any time after the entry of this Confirmation Order, but prior to the Effective Date, shall be fully protected and entitled to the rights, claims, priorities, liens, remedies and protections afforded under the DIP Financing Order and the DIP Credit Agreement

## E.     EXEMPTIONS FROM TAXATION.

Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp Tax or similar Tax: (i) the creation of any Encumbrances; (ii) the making or assignment of any lease or sublease; (iii) the execution and implementation of the Asbestos Personal Injury Trust Agreement, including the creation of the Asbestos Personal Injury Trust and any transfers to or by the Asbestos Personal Injury Trust; (iv) any Restructuring Transaction; or (v) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan.

## V.    SETTLEMENTS, RELEASES AND EXCULPATION PROVISIONS.

A.      The Plan settlement, release, exculpation and injunction provisions as set forth in, among others, Sections IV.J.2, IV.J.3 and XI.B of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Plan without further action by the Court, any of the parties to such releases or any other party..

B.      On the Effective Date, the DIP Lender shall be released from any and all liability, responsibility, and/ or obligation to hold, reserve for, or otherwise fund or ensure the funding of any Professional fees or disbursements or Carve-Out Expenses (as such term is defined in the DIP Financing Order) and from any obligation, responsibility or liability to the Debtors, any of the Professionals or any other third party to pay, fund or otherwise satisfy the fees and expenses of such Professionals.

## VI.    INFORMAL OBJECTIONS TO CONFIRMATION.

### A.    RESOLUTION OF INFORMAL OBJECTIONS TO CONFIRMATION.

The informal objections to Confirmation to the extent not satisfied by the Plan Modifications, are hereby resolved on the terms and subject to the conditions set forth below. The compromises and settlements contemplated by each resolution to an objection are fair, equitable and reasonable, are in the best interests of the Debtors and their respective Estates and creditors and are expressly approved pursuant to Bankruptcy Rule 9019.

1.      Informal Objection of 3M Company. Notwithstanding (a) anything to the contrary in the Disclosure Statement, the Plan, any other Plan document, including supplements to the Plan, or this Confirmation Order and (b) NMBFiL's rejection of the asset purchase agreement dated November 2, 2007 among Bondo Corporation, International, 3M Company and 3M Innovative Properties Company and  certain other agreements to which NMBFiL, Inc.,

International and 3M Company are parties (collectively, the "3M Agreements"), any non-asbestos-related contractual obligations owed between International and 3M Company and/or International and 3M Innovative Properties Company and contained in the 3M Agreements shall not be released but shall remain in full force and effect after the Effective Date of the Plan..

      2.    Informal Objection of the United States Department of Justice. Nothing in this Order or the Plan discharges, releases, precludes or enjoins: (i) any environmental liability of the Debtors or the Reorganized Debtors to a governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a Claim or, if it is a Claim, would not be subject to discharge or release under applicable law; (ii) any environmental Claim of a Governmental Unit against the Debtors or the Reorganized Debtors based upon the Debtors' or the Reorganized Debtors' status as the owner or operator of property; or (iii) any environmental liability of any Entity other than the Debtors or the Reorganized Debtors to a Governmental Unit.

      3.    Informal Objection of the California Franchise Board. Notwithstanding any provision in the Plan or this Confirmation Order to the contrary, (a) Confirmation shall not discharge the Debtors from any debt of a kind specified in 11 U.S.C. § 1141(d)(6) and (b) Sections IX.B.1.a.(iv) and IX.B.1.b.(iv) of the Plan shall not apply to the California Franchise Tax Board.

## B.    OVERRULING OF CERTAIN OBJECTIONS TO CONFIRMATION.

      All objections not otherwise addressed herein or previously withdrawn are hereby overruled for the reasons set forth on the record at the Confirmation Hearing.

## VII.    DISCHARGE AND INJUNCTIONS.

### A.    DISCHARGE OF CLAIMS.

      1.    The Plan discharge provisions as set forth in Section IX.A of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be

-18-

immediately effective on the Effective Date of the Plan without further action by the Court or any other party.

2.       Except as specifically set forth in Section IX.A of the Plan, as of the Effective Date, pursuant to sections 524 and 1141 of the Bankruptcy Code, the Reorganized Debtors shall be discharged of all Claims and other debts and liabilities against the Debtors, in accordance with Section IX.A of the Plan.

**B.       INJUNCTIONS.**

**1.       Issuance of the Asbestos Permanent Channeling Injunctions.**

In connection with the creation of the Asbestos Personal Injury Trust, the SPHC Asbestos Permanent Channeling Injunction and the NMBFiL Asbestos Permanent Channeling Injunction shall be, and hereby are, issued as of the Effective Date, pursuant to section 524(g) of the Bankruptcy Code.

**2.       Protected Parties Under the SPHC Asbestos Permanent Channeling Injunction.**

In connection with the SPHC Asbestos Permanent Channeling Injunction, "SPHC Protected Party" means any of the following parties:

            a.       the SPHC Parties;

            b.       the Reorganized SPHC Parties;

            c.       the SPHC Protected Affiliates;

            d.       International;

            e.       current and former directors, officers and employees of the SPHC Parties, the Reorganized SPHC Parties and the SPHC Protected Affiliates, including without limitation International, solely in their capacity as such;

f.     as of July 26, 2014, current and former shareholders of the SPHC Parties, the Reorganized SPHC Parties and the SPHC Protected Affiliates, including without limitation International, solely in their capacity as such;

g.     current and former in-house and outside legal, accounting, financial and tax professionals and advisors of the SPHC Parties, the Reorganized SPHC Parties and the SPHC Protected Affiliates, including without limitation International, solely in their capacity as such;

h.     Entities that, pursuant to the Plan or on or after the Effective Date, become a direct or indirect transferee of, or successor to, any assets of any SPHC Parties or Reorganized SPHC Parties, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of such Entity becoming such a transferee or successor;

i.     Entities that, pursuant to the Plan or on or after the Effective Date, make a loan to any SPHC Parties or Reorganized SPHC Parties, or the Asbestos Personal Injury Trust or to a successor to, or transferee of, any assets of any SPHC Parties or Reorganized SPHC Parties, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of it becoming such a lender;

j.     Entities that are alleged to be directly or indirectly liable for the conduct of, claims against, or Demands on any SPHC Parties or Reorganized SPHC Parties, or the Asbestos Personal Injury Trust, to the extent that such alleged liability arises by reason of one or more of the following:

> (i)     such Entity's ownership of a financial interest in any SPHC Parties or Reorganized SPHC Parties, or any past or present affiliate of any of them, or any predecessor in interest of any of them;

(ii)     such Entity's involvement in the management of any SPHC Parties or Reorganized SPHC Parties, or any predecessor in interest of any of them;

(iii)    such Entity's service as an officer, director or employee of any SPHC Parties or Reorganized SPHC Parties, any past or present affiliate of any of them, or any predecessor in interest of any of them, or any Entity that owns or at any time has owned a financial interest in any SPHC Parties or Reorganized SPHC Parties, any past or present affiliate of any of them, or any predecessor in interest of any of them;

(iv)    such Entity's provision of insurance to any SPHC Parties or Reorganized SPHC Parties, any past or present affiliate of any of them, or any predecessor in interest of any of them, or any Entity that owns or at any time has owned a financial interest in any SPHC Parties or Reorganized SPHC Parties, any past or present affiliate of any of them, or any predecessor in interest of any of them; and

(v)     such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of any SPHC Parties or Reorganized SPHC Parties, any past or present affiliate of any of them, any predecessor in interest of any of them, or any Entity that owns or at any time has owned a financial interest in any SPHC Parties or Reorganized SPHC Parties, any past or present affiliate of any of them, or any predecessor in interest of any of them, including (A) involvement in providing financing (debt or equity) or advice to an Entity involved in such a transaction or (B) acquiring or selling a financial interest in any Entity as part of such transaction.

### 3.     Protected Parties Under the NMBFiL Asbestos Permanent Channeling Injunction.

In connection with the NMBFiL Asbestos Permanent Channeling Injunction,

"NMBFiL Protected Party" means any of the following parties:

a.     NMBFiL;

b.     Reorganized NMBFiL;

c.     NMBFiL Protected Affiliates;

-21-

d.      International;

e.      current and former directors, officers and employees of NMBFiL, Reorganized NMBFiL and the NMBFiL Protected Affiliates, including without limitation International, solely in their capacity as such;

f.      as of July 26, 2014, current and former shareholders of NMBFiL, Reorganized NMBFiL and the NMBFiL Protected Affiliates, including without limitation International, solely in their capacity as such;

g.      current and former in-house and outside legal, accounting, financial and tax professionals and advisors of NMBFiL, Reorganized NMBFiL and the NMBFiL Protected Affiliates, including without limitation International, solely in their capacity as such;

h.      3M Company, and its directors, officers, employees, affiliates, stockholders, agents, attorneys, representatives, successors, and assigns solely to the extent of liability and other costs in any way related to products manufactured or sold by NMBFiL prior to November 9, 2007;

i.      Insurers of NMBFiL, solely in their capacity as such, a non-exclusive schedule of which is attached to the Plan as Exhibit I.A.75.i;

j.      Entities that, pursuant to the Plan or on or after the Effective Date, become a direct or indirect transferee of, or successor to, any assets of NMBFiL or Reorganized NMBFiL, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of such Entity becoming such a transferee or successor;

-22-

k.      Entities that, pursuant to the Plan or on or after the Effective Date, make a loan to NMBFiL or Reorganized NMBFiL, or the Asbestos Personal Injury Trust or to a successor to, or transferee of, any assets of NMBFiL or Reorganized NMBFiL, or the Asbestos Personal Injury Trust, but only to the extent that liability is asserted to exist by reason of it becoming such a lender;

l.      Entities that are alleged to be directly or indirectly liable for the conduct of, claims against, or Demands on NMBFiL or Reorganized NMBFiL, or the Asbestos Personal Injury Trust to the extent that such alleged liability arises by reason of one or more of the following:

(i)     such Entity's ownership of a financial interest in NMBFiL or Reorganized NMBFiL, or any past or present affiliate of NMBFiL or Reorganized NMBFiL, or any predecessor in interest of NMBFiL or Reorganized NMBFiL;

(ii)    such Entity's involvement in the management of NMBFiL or Reorganized NMBFiL, or any predecessor in interest of NMBFiL or Reorganized NMBFiL;

(iii)   such Entity's service as an officer, director or employee of NMBFiL or Reorganized NMBFiL, any past or present affiliate of NMBFiL or Reorganized NMBFiL, or any predecessor in interest of NMBFiL or Reorganized NMBFiL, or any Entity that owns or at any time has owned a financial interest in NMBFiL or Reorganized NMBFiL, any past or present affiliate of NMBFiL or Reorganized NMBFiL, or any predecessor in interest of NMBFiL or Reorganized NMBFiL;

(iv)    such Entity's provision of insurance to NMBFiL, Reorganized NMBFiL, any past or present affiliate of NMBFiL or Reorganized NMBFiL, or any predecessor in interest of NMBFiL or Reorganized NMBFiL, or any Entity that owns or at any time has owned a financial interest in NMBFiL, Reorganized NMBFiL, any past or present affiliate of NMBFiL or Reorganized NMBFiL, or any predecessor in interest of NMBFiL or Reorganized NMBFiL; and

(v)     such Entity's involvement in a transaction changing the
corporate structure, or in a loan or other financial
transaction affecting the financial condition, of NMBFiL,
Reorganized NMBFiL, any past or present affiliate of
NMBFiL or Reorganized NMBFiL, any predecessor in
interest of NMBFiL or Reorganized NMBFiL, or any
Entity that owns or at any time has owned a financial
interest in NMBFiL, Reorganized NMBFiL, any past or
present affiliate of NMBFiL or Reorganized NMBFiL, or
any predecessor in interest of NMBFiL or Reorganized
NMBFiL, including (A) involvement in providing
financing (debt or equity) or advice to an Entity involved in
such a transaction or (B) acquiring or selling a financial
interest in any Entity as part of such transaction.

## 4.     SPHC Asbestos Permanent Channeling Injunction.

Pursuant to section 524(g) of the Bankruptcy Code, all Entities shall be

permanently and forever stayed, restrained and enjoined from taking any actions against any

SPHC Protected Party for the purpose of, directly or indirectly, collecting, recovering or

receiving payment of, on or with respect to any SPHC Asbestos Personal Injury Claim, all of

which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the

Asbestos Personal Injury Trust Agreement and the related SPHC Asbestos Personal Injury Trust

Distribution Procedures, including:

a.     commencing, conducting or continuing in any manner, directly or
indirectly, any suit, action or other proceeding (including a judicial, arbitral,
administrative or other proceeding) in any forum against any SPHC Protected Party or
any property or interests in property of any SPHC Protected Party;

b.     enforcing, levying, attaching (including any prejudgment
attachment), collecting or otherwise recovering by any means or in any manner, whether
directly or indirectly, any judgment, award, decree or other order against any SPHC
Protected Party or any property or interests in property of any SPHC Protected Party;

c. creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any SPHC Protected Party or any property or interests in property of any SPHC Protected Party;

d. setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any SPHC Protected Party or any property or interests in property of any SPHC Protected Party; and

e. proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in compliance therewith.

## 5. NMBFiL Asbestos Permanent Channeling Injunction.

Pursuant to section 524(g) of the Bankruptcy Code, all Entities shall be permanently and forever stayed, restrained and enjoined from taking any actions against any NMBFiL Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any NMBFiL Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related NMBFiL Asbestos Personal Injury Trust Distribution Procedures, including:

a. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any NMBFiL Protected Party or any property or interests in property of any NMBFiL Protected Party;

b. enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether

DLI-266503076v4                                                       -25-

directly or indirectly, any judgment, award, decree or other order against any NMBFiL

Protected Party or any property or interests in property of any NMBFiL Protected Party;

      c.      creating, perfecting or otherwise enforcing in any manner, directly

or indirectly, any Encumbrance against any NMBFiL Protected Party or any property or

interests in property of any NMBFiL Protected Party;

      d.      setting off, seeking reimbursement of, contribution from or

subrogation against, or otherwise recouping in any manner, directly or indirectly, any

amount against any liability owed to any NMBFiL Protected Party or any property or

interests in property of any NMBFiL Protected Party; and

      e.      proceeding in any manner in any place with regard to any matter

that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents,

except in compliance therewith.

### 6.      General Injunctions Related to Discharge or Releases Granted Pursuant to the Plan.

      a.      In addition to the Asbestos Permanent Channeling Injunctions set

forth above, except as provided in the Plan or this Confirmation Order, as of the Effective Date,

all Entities that have held, currently hold or may hold a Claim or other debt or liability that is

discharged pursuant to the terms of the Plan shall be permanently enjoined from taking any of

the following actions on account of any such discharged Claim, debt or liability: (i) commencing

or continuing in any manner any action or other proceeding against any Debtor, Reorganized

Debtor or any of its property, other than to enforce any right to a Distribution pursuant to the

Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award,

decree or order against the Debtors, the Reorganized Debtors or their respective property, other

than as permitted pursuant to (i) above; (iii) creating, perfecting or enforcing any lien or

DLI-266503076v4

-26-

encumbrance against any Debtor or Reorganized Debtor, or any of its property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor or Reorganized Debtor; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

                b.        In addition to the Asbestos Permanent Channeling Injunctions set forth above, except as provided in the Plan or this Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan shall be permanently enjoined from taking any of the following actions against any released Entity, or any of its property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

## VIII.   DISSOLUTION OF THE ASBESTOS PERSONAL INJURY COMMITTEE AND DISCHARGE OF THE FUTURE CLAIMANTS' REPRESENTATIVE.

In accordance with Section XI.A of the Plan, on the Effective Date, the Asbestos Personal Injury Committee shall dissolve and the members of the Committee shall be released and discharged from all duties and obligations arising from or related to the Reorganization Cases. Similarly, on the Effective Date, the Future Claimants' Representative shall be deemed released and discharged from all duties and obligations from or related to the Reorganization

-27-

Cases. Subjection to Sections IV.K.2 and IV.L.3 of the Plan, the Professionals retained by the Asbestos Personal Injury Committee and the members thereof or by the Future Claimants' Representative shall not be entitled to assert any Fee Claim for any services rendered or expenses incurred by them in their capacity as such after the Effective Date, except for services rendered and expenses incurred in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.e.ii.A.

## IX.    RETENTION OF JURISDICTION BY THE COURT.

### A.    RETENTION OF JURISDICTION BY THE COURT.

Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, pursuant to Article X of the Plan, the Court shall retain such jurisdiction over the Reorganization Cases after the Effective Date as is legally permissible, including jurisdiction over the matters described in Sections X.1 through X.16 of the Plan.

### B.    JURISDICTION RELATING TO ASBESTOS PERSONAL INJURY CLAIMS.

Notwithstanding anything to the contrary in Article X of the Plan, the allowance of Asbestos Personal Injury Claims and the forum in which such allowance will be determined shall be governed by and in accordance with the Asbestos Personal Injury Trust Distribution Procedures.

## X.    WAIVER OF THE STAY OF BANKRUPTCY RULE 3020(e).

Pursuant to Bankruptcy Rule 3020(e), this Confirmation Order shall not be stayed and shall be immediately effective upon entry on the docket of the Court.

## XI.   NOTICE OF ENTRY OF CONFIRMATION ORDER.

A.     Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors or the Reorganized Debtors are directed to serve, within 20 business days after the occurrence of the Effective Date, a notice of the entry of this Confirmation Order, which shall include notice of the bar dates established by the Plan and this Confirmation Order and notice of the Effective Date, substantially in the form of Exhibit C attached hereto and incorporated herein by reference (the "Confirmation Notice"), on all parties that received notice of the Confirmation Hearing; *provided, however*, that, with respect to Asbestos Personal Injury Claims, the Reorganized Debtors shall be obligated to serve the Confirmation Notice only to counsel to holders of Asbestos Personal Injury Claims, to the extent that the holders of such claims are represented by known counsel, unless such counsel requests otherwise in writing within 10 days of service of the Confirmation Notice.

B.     As soon as practicable after the entry of this Confirmation Order, the Reorganized Debtors shall make copies of this Confirmation Order and the Confirmation Notice available on Logan's website.

C.     No later than 20 Business Days after the Effective Date, the Reorganized Debtors are directed to publish the version of the Confirmation Notice attached hereto as Exhibit D once in (i) the national editions of *The Wall Street Journal, The New York Times, USA Today, The Globe & Mail* and *National Post* and (ii) the following regional newspapers: *The Plain Dealer (Cleveland), St. Louis Post-Dispatch* and *Atlanta Journal-Constitution*. The Reorganized Debtors are authorized to pay all fees associated with the publication program described in this paragraph to GCG, Inc., which will coordinate publication of the Confirmation Notice for the Reorganized Debtors.

## XII.   ORDER OF THE COURT

The Plan is hereby confirmed in its entirety pursuant to section 1129 of the

Bankruptcy Code, and the Asbestos Permanent Channeling Injunctions are hereby issued

pursuant to section 524(g) of the Bankruptcy Code.

> THIS ORDER IS HEREBY DECLARED TO BE IN
> RECORDABLE FORM AND SHALL BE ACCEPTED BY ANY
> RECORDING OFFICER FOR FILING AND RECORDING
> PURPOSES WITHOUT FURTHER OR ADDITIONAL
> ORDERS, CERTIFICATIONS OR OTHER SUPPORTING
> DOCUMENTS.

Dated:  December ____, 2014
Wilmington, Delaware

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE