# **EXHIBIT C**

## **CONFIRMATION NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SPECIALTY PRODUCTS HOLDING CORP., *et al.*,[1] | : | Case No. 10-11780 (PJW) |
| | : | |
| Debtors. | : | (Jointly Administered) |

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION OF SPECIALTY PRODUCTS HOLDING CORP., BONDEX INTERNATIONAL, INC., REPUBLIC POWDERED METALS, INC. AND NMBFiL, INC.; (II) EFFECTIVE DATE AND (III) BAR DATE FOR CERTAIN ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS AND REJECTION DAMAGE CLAIMS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. **Confirmation of the Plan.** On [__] [__], 2014, the United States Bankruptcy Court for the District of Delaware entered an order (the "Confirmation Order") confirming the Joint Plan of Reorganization of Specialty Products Holding Corp., Bondex International, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc., dated October 20, 2014 (as modified by certain modifications referenced in the Confirmation Order, the "Plan") filed by the above-captioned debtors (collectively, the "Debtors"). The Confirmation Order was subsequently affirmed by the United States District Court for the District of Delaware.. Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.

2. **Effective Date.** Pursuant to the Confirmation Order, the Debtors hereby certify and give notice that the Plan became effective in accordance with its terms, and the Effective Date occurred, on [__] [__], 2014.

3. **Settlement of Claims**

   a. Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, any and all claims against the SPHC Released Parties that are or would have been property of any of the SPHC Parties' Estates or

---

[1] The Debtors are the following four entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Specialty Products Holding Corp. (0857); Bondex International, Inc. (4125); Republic Powdered Metals, Inc. (4388); and NMBFiL, Inc. (2441). The address of Specialty Products Holding Corp. and Bondex International, Inc. is 4515 St. Clair Avenue, Cleveland, Ohio 44103. The address of Republic Powdered Metals, Inc. and NMBFiL, Inc. is 2628 Pearl Road, Medina, Ohio 44256.

DLI-266505880v3

could have been brought by any of the SPHC Parties' Estates, including without limitation Recovery Actions and any claims based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, malpractice, breach of fiduciary duty, waste, fraud or conspiracy, except for Intercompany Claims, shall be deemed settled, released and extinguished. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of the SPHC Parties, the Reorganized SPHC Parties and their respective Claim and Interest holders and is fair, equitable and reasonable.

      b. Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, any and all claims against the NMBFiL Protected Parties that are or would have been property of NMBFiL's Estate or could have been brought by NMBFiL's Estate, including without limitation Recovery Actions and any claims based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, malpractice, breach of fiduciary duty, waste, fraud or conspiracy, except for Intercompany Claims, shall be deemed settled, released and extinguished. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of NMBFiL, Reorganized NMBFiL and their respective Claim and Interest holders and is fair, equitable and reasonable.

      c. Pursuant to Bankruptcy Rule 9019 and in consideration for the releases and other benefits provided under the Plan, any and all claims against the holders of Asbestos Personal Injury Claims who received payments in respect of their claims from the SPHC Parties, International, or any predecessor or affiliate of the SPHC Parties or International prior to Petition Date, and their professionals (but only with respect to their representation of or work for such holders in connection with such payments), that are or would have been property of any of the SPHC Parties' Estates or could have been brought by any of the SPHC Parties' Estates or any SPHC Protected Party, including without limitation Recovery Actions, and any claims based upon a legal or equitable theory of liability, in each case arising out of, based upon or resulting from payments to holders of Asbestos Personal Injury Claims from the SPHC Parties, International or any predecessor or affiliate of the SPHC Parties or International prior to Petition Date, shall be deemed settled, released and extinguished. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and the Bankruptcy Court's finding that such compromise or settlement is in the best interest of the SPHC Parties, the Reorganized SPHC Parties and their respective Claim and Interest holders and is fair, equitable and reasonable.

    4. **Releases.**

      a. <u>General Releases of Debtors and Reorganized Debtors.</u> Except as otherwise expressly set forth in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors are released from all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen

or unforeseen, then existing or thereafter arising, in law, equity or otherwise, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date.

        b.      <u>Release by the Debtors and Reorganized Debtors.</u>

        (i)      Without limiting any other provision of the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their respective affiliates, Estates and successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, are deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against each of the present and former directors, officers, employees, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents of the Debtors, and the DIP Lender, in each case acting in such capacity, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date and in any way relating to the Reorganization Cases or the Plan, except for the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

        (ii)      Without limiting any other provision of the Plan, as of the Effective Date, the SPHC Parties, the Reorganized SPHC Parties and International, on behalf of themselves and their respective affiliates, Estates and successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, are deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against holders of Asbestos Personal Injury Claims who received payments in respect of their claims from the SPHC Parties, International, or any predecessor or affiliate of the SPHC Parties or International prior to Petition Date, and their professionals (but only with respect to their representation of or work for such holders in connection with such payments), including without limitation Recovery Actions, in each case arising out of, based upon or resulting from payments to holders of Asbestos Personal Injury Claims from the SPHC Parties, International or any predecessor or affiliate of the SPHC Parties or International prior to Petition Date.

        c.      <u>General Releases by Holders of Claims or Interests.</u>  Without limiting any other provision of the Plan or the Bankruptcy Code, as of the Effective Date, in consideration for, among other things, the obligations of the Debtors and the Reorganized Debtors under the Plan, each holder of a Claim or Interest that votes in favor of the Plan or is deemed to accept the Plan is deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter

arising, in law, equity or otherwise, against any of the Parties or any Reorganized Debtor, or any of their respective present or former directors, officers, employees, members, subsidiaries, predecessors, successors, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, or the DIP Lender, in each case acting in such capacity, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date and in any way relating to the Reorganization Cases or the Plan (which release shall be in addition to the discharge of Claims provided in the Plan and under the Confirmation Order and the Bankruptcy Code). Notwithstanding any provision of the Plan to the contrary, any non-asbestos-related indemnity obligations owed by International to 3M Company, pursuant to the asset purchase agreement dated November 2, 2007 among Bondo Corporation, International, 3M Company and 3M Innovative Properties Company, are not released but will remain in full force and effect after the Effective Date of the Plan. Notwithstanding any provision of the Plan to the contrary, no provision of the Plan or the Confirmation Order (i) modifies or affects any pension plan covered by Title IV of the Employment Retirement Income Security Act of 1974, as amended, or (ii) discharges, releases, waives or affects the liabilities or responsibilities of any party with respect thereto, except that claims with respect to the pension plans that arise against the Debtors on or before Confirmation of the Plan will be discharged in accordance with the terms of the Plan and the Confirmation Order. Except with respect to discharged claims as described in the previous sentence, the pension plans and the Pension Benefit Guaranty Corporation are not be enjoined or precluded from enforcing such liabilities or responsibilities as a result of any provision of the Plan or the Confirmation Order.

5. **Discharge of Claims.**

a. Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge and release of all Claims, including any Asbestos Personal Injury Claims (other than Demands) and including any interest accrued on Claims from the Petition Date. Except as provided in the Plan or in the Confirmation Order, as of the Effective Date, the Debtors are discharged from all Claims or other liabilities that arose on or before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of a Claim based on such debt has accepted the Plan.

b. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order is a judicial determination, as of the Effective Date, of a discharge of all Claims, including any Asbestos Personal Injury Claims (other than Demands), and other debts and liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge voids any judgment obtained against a Debtor at any time, to the extent that such judgment relates to a discharged Claim, debt or liability.

c. Notwithstanding any provision of the Plan or the Confirmation Order to the contrary, Confirmation does not discharge the Debtors from any debt of a kind specified in 11 U.S.C. § 1141(d)(6).

6. **Asbestos Permanent Channeling Injunctions.**

    a. <u>SPHC Asbestos Permanent Channeling Injunction.</u> Pursuant to section 524(g) of the Bankruptcy Code, the Plan and the Confirmation Order permanently and forever stay, restrain and enjoin any Entity from taking any actions against any SPHC Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any SPHC Asbestos Personal Injury Claim, all of which will be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related SPHC Asbestos Personal Injury Trust Distribution Procedures, including permanently and forever staying, restraining and enjoining any Entity from any of the following:

        (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any SPHC Protected Party or any property or interests in property of any SPHC Protected Party;

        (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any SPHC Protected Party or any property or interests in property of any SPHC Protected Party;

        (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any SPHC Protected Party or any property or interests in property of any SPHC Protected Party;

        (iv) setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any SPHC Protected Party or any property or interests in property of any SPHC Protected Party; and

        (v) proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in compliance therewith.

    b. <u>NMBFiL Asbestos Permanent Channeling Injunction.</u> Pursuant to section 524(g) of the Bankruptcy Code, the Plan and the Confirmation Order permanently and forever stay, restrain and enjoin any Entity from taking any actions against any NMBFiL Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any NMBFiL Asbestos Personal Injury Claim, all of which will be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related NMBFiL Asbestos Personal Injury Trust Distribution Procedures, including permanently and forever staying, restraining and enjoining any Entity from any of the following:

(i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any NMBFiL Protected Party or any property or interests in property of any NMBFiL Protected Party;

(ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any NMBFiL Protected Party or any property or interests in property of any NMBFiL Protected Party;

(iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any NMBFiL Protected Party or any property or interests in property of any NMBFiL Protected Party;

(iv) setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any NMBFiL Protected Party or any property or interests in property of any NMBFiL Protected Party; and

(v) proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Documents, except in conformity and compliance therewith.

7. **General Injunctions.**

a. No Actions on Account of Discharged Claims. In addition to the Asbestos Permanent Channeling Injunctions set forth above, except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged pursuant to the terms of the Plan is permanently enjoined from taking any of the following actions on account of any such discharged Claim, debt or liability: (i) commencing or continuing in any manner any action or other proceeding against any Debtor or Reorganized Debtor, or any of its property, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any Debtor or Reorganized Debtor, or any of its property, other than as permitted pursuant to (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against any Debtor or Reorganized Debtor, or any of its property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Debtor or Reorganized Debtor; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. Notwithstanding any provision in the Plan to the contrary, Section IX.B.1.a.(iv) of the Plan does not apply to the California Franchise Tax Board.

b. No Actions on Account of Released Claims. In addition to the Asbestos Permanent Channeling Injunctions set forth above, as of the Effective Date, all Entities

that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan are permanently enjoined from taking any of the following actions against any released Entity, or any of its property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities:  (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.  Notwithstanding any other provision in the Plan, Section IX.B.1.b.(iv) of the Plan does not apply to the California Franchise Tax Board.

        c.      <u>Recipients of Distributions Deemed to Consent.</u>  By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim receiving Distributions pursuant to the Plan is deemed to have specifically consented to the injunctions set forth in Section IX.B of the Plan.

**8.  Bar Dates.**

        a.      <u>Bar Date for Administrative Claims</u>.  Except as otherwise provided in Section III.A.1.e.ii of the Plan and section [7.b] below, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors at the addresses set forth in Section XI.H of the Plan no later than 60 days after the Effective Date (<u>i.e.</u>, [__] [__], 2015).  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the requesting party by 120 days after the Effective Date (<u>i.e.</u>, [__] [__], 2015).  In accordance with Section III.A.1.e.ii of the Plan, holders of (i) Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business (including Administrative Trade Claims, any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental unites for Taxes (including Tax audit Claims related to Tax years or portions thereof commencing after the Petition Date) and Administrative Claims arising from those contracts and leases of the kind described in Section V.E of the Plan) and (ii) Administrative Claims arising under the DIP Credit Agreement shall not be required to file or serve any request for payment of such Administrative Claims.

        b.      <u>Bar Date for Professional Fee Claims.</u>  With certain limited exceptions, Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and certain other Entities an application for final allowance of such Fee Claim no later than 90 days after the Effective Date (<u>i.e.</u>, [__] [__], 2015); <u>provided</u>, <u>however</u>, that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary

Course Professionals Order. A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Final Fee Applications shall be subject to the Fee Auditor Order. Objections to any Final Fee Application must be Filed and served on the Reorganized Debtors and the requesting party by the later of (1) 80 days after the Effective Date (i.e., [__] [__], 2015) or (2) 30 days after the Filing of the applicable Final Fee Application. To the extent necessary, the Confirmation Order amends and supersedes any previously entered order of the Bankruptcy Court, including the Fee Order and Fee Auditor Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

c. **Rejection Damage Claims**. Notwithstanding anything in the Bankruptcy Court's Order Establishing Bar Dates for Filing Proofs of Claim, Other than Asbestos Personal Injury Claims, and Approving Related Relief [D.I. 5021] to the contrary, if the rejection of an Exectory Contract or Unexpired Lease pursuant to Section V.C of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors or their properties unless a proof of Claim is Filed and served on the Reorganized Debtors at the addresses set forth in Section XI.H of the Plan, on the latter to occur of (1) 60 days after the Effective Date or (2) 30 days after the date of the entry of an Order rejecting such Executory Contract or Unexpired Lease.

9. **Bankruptcy Court Address.** For purposes of Filing requests for payment of Administrative Claims, applications for allowance of Fee Claims or other documents, the address of the Bankruptcy Court is 824 Market Street, Third Floor, Wilmington, Delaware 19801.

10. **Claims Agent Address.** For purposes of Filing proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases, Logan & Company, Inc.'s address is: 546 Valley Road, Upper Montclair, New Jersey 07043 (Attn: Specialty Products Holding Corp. Claims Processing Department).

11. **Copies of Confirmation Order.** Copies of the Confirmation Order may be obtained free of charge at www.loganandco.com or by sending a request, in writing, to Logan & Company, Inc., 546 Valley Road, Upper Montclair, NJ 07043 (Attn: Specialty Products Holding Corp.).

Dated: _____, 2014     BY ORDER OF THE COURT

Daniel J. DeFranceschi (DE 2732)
Paul N. Heath (DE 3704)
Zachary I. Shapiro (DE 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

   -and-

Gregory M. Gordon (TX 08435300)
Dan B. Prieto (TX 24048744)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

ATTORNEYS FOR THE REORGANIZED DEBTORS